1  **DOLL AMIR & ELEY LLP**
   GREGORY L. DOLL (SBN 193205)
2  gdoll@dollamir.com
   MARY TESH GLARUM (SBN 175181)
3  mglarum@dollamir.com
   1888 Century Park East
4  Suite 1106
   Los Angeles, California 90067
5  Telephone: (310) 557-9100
   Facsimile: (310) 557-9101
6
   Attorneys for Defendants
7  AUTONOMY CORPORATION PLC

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 GA ESCROW, LLC, a Delaware limited         CASE NO. C08-01784-JL
   liability company, a Representative for the
   Escrow Participants,
12
                  Plaintiff,
13                                             **DEFENDANT AUTONOMY
        v.                                     CORPORATION PLC'S MOTION TO
14                                             DISMISS PURSUANT TO RULE 12(b)(6)
   AUTONOMY CORPORATION PLC, a                 OF THE FEDERAL RULES OF CIVIL
15 corporation formed under the laws of        PROCEDURE**
   England and Wales
16
                  Defendants.                  Date: June 25, 2008
17                                             Time: 9:30 a.m.

18

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

III. SUMMARY OF RELEVANT FACTS ............................................................................. 2

    A. The Merger Transaction............................................................................................. 3

    B. The Indemnity Escrow Fund...................................................................................... 3

    C. Autonomy's September 11, 2007, Payment Request................................................. 5

IV.  CONTROLLING LEGAL STANDARDS ........................................................................ 6

V.   THE MERGER AND ESCROW AGREEMENTS BAR EACH OF GA ESCROW'S CLAIMS FOR RELIEF ..................................................................................................... 7

    A. GA Escrow's Breach of Contract Claim Fails as a Matter of Law............................ 8

    B. GA Escrow's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails as a Matter of Law........................................................................................... 10

    C. GA Escrow's Fraud Claims Fail as a Matter of Law............................................... 11

    D. GA Escrow's Unjust Enrichment Claim Fails as a Matter of Law, and It Is Not Entitled To an Accounting....................................................................................... 12

VI.  CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson,* 355 F.3d 1179 (9th Cir. 2004) .................................................................... 6

*Barton v. Elexsys Intern Inc.*, 62 Cal. App.4th 1182 (1998) ................................................. 8, 9

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ........................................................................ 6

*Brea v. McGlashan*, 3 Cal.App.2d 454, 39 P.2d 877 (1934) .................................................. 13

*Britschgi v. McCall,* 41 Cal.2d 138 (1953) ............................................................................... 9

*Durning v. First Boston Corp.,* 815 F.2d 1265 (9th Cir. 1987) ......................................... 8, 11

*Goehring v. Chapman University*, 121 Cal.App.4th 353 (2004) ..................................... 11, 12

*Guz v. Bechtel National, Inc.*, 24 Cal.4th 317 (2000) ........................................................ 10, 11

*In re GlenFed Sec. Litig.,* 42 F.3d 1541 (9th Cir. 1994) ......................................................... 12

*Manshardt v. Fed. Judicial Qualifications Comm.*, 401 F.3d 1014 (9th Cir. 2005) ............... 6

*Marina Tenants Assn'n v.*
    *Deauville Marina Development Co., Ltd.,* 181 Cal.App.3d 122 (1986) .................... 12

*Parrino v. FHP, Inc.,* 146 F.3d 699 (9th Cir. 1998) .............................................................. 6, 7

*Rubke v. Capitol Bancorp, Ltd.,* 460 F.Supp.2d 1124 (N.D. Cal. 2006) ........................... 6, 12

*Schreiber Distributing Co. v.*
    *Serv–Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986) .................................. 13

*Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir. 2001) ......................................... 6

*State Farm Mutual Automobile Ins. v. Allstate Ins.,* 9 Cal.App.3d 508 (1970) ................... 10

*Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293 (9th Cir. 1998) .................................. 6, 8, 11

*Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090 (9th Cir. 2004) ................................. 6

*Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999) ............................................ 12

**Statutes and Rules**

Federal Rule of Civil Procedure 9(b) ....................................................................................... 12

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 6, 7

/ / /

/ / /

**Treatises**

14A Cal.Jur.3d Contracts § 372 (2008)..................................................................................................9

5 Charles Alan Wright & Arthur R. Miller,

    *Federal Practice & Procedure* § 1327 (2d ed. 1990) ................................................................ 6

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFF GA ESCROW, LLC AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Wednesday, June 25, 2008 at 9:30 a.m., or as soon thereafter as counsel may be heard, before the honorable James Larson, Defendant Autonomy Corporation PLC ("Autonomy") will move, and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing plaintiff GA Escrow, LLC's ("GA Escrow") Complaint for failure to state a claim on which relief can be granted. Autonomy respectfully requests that GA Escrow's Complaint be dismissed without leave to amend.

GA Escrow asks this Court to compel the return of $8 million properly paid to Autonomy pursuant to the clear and unambiguous terms of agreements between the parties arising out of a merger transaction. Those agreements, however, provide not only for unfettered discretion in making such payments, but also the procedure for contesting such payments, including formal objections timely made. GA Escrow failed to follow such procedures, and on that basis cannot contest the payments by this lawsuit. As such, GA Escrow's complaint should be dismissed.

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

As a matter of federal pleading practice, a plaintiff cannot avoid dispositive relief by strategically failing to attach the documents it references and relies upon in its complaint. That, however, is precisely what Plaintiff GA Escrow, LLC ("GA Escrow") seeks to do in this case. GA Escrow asks this Court to force the return of $8 million properly paid to defendant Autonomy Corporation plc ("Autonomy") pursuant to the clear and unambiguous terms of agreements between the parties arising out of a merger transaction. GA Escrow has failed to attach any of the relevant agreements to its Complaint, even though they are referenced throughout the pleading. GA Escrow's motive for omitting these documents is transparent: the agreements demonstrate that GA Escrow is barred as a matter of contract and tort law from seeking the relief that it asks the Court to grant here today.

In particular, the agreements set forth a detailed procedure for when and how certain

1  payments to Autonomy were to be made.  The payments to Autonomy were made in *precisely*
2  the manner set forth in the agreements.  Under the language of the agreements, the payments to
3  Autonomy are thus "conclusively" deemed proper.  Most significantly for the purposes of this
4  motion:  the agreements provided GA Escrow the *absolute and unfettered right to stop the*
5  *payment to Autonomy simply by objecting Autonomy's request for payment within a specified*
6  *timeframe*.  Neither GA Escrow, nor its sophisticated counsel, tendered any objection to these
7  payments within the specified timeframe.  U.S Bank properly sent Autonomy the money it was
8  conclusively owed, precisely as it should have done.  GA Escrow, by its silence, has waived
9  any right to object to the payments or to seek return of these funds.

10       GA Escrow was well aware at the time it filed this lawsuit that it failed to make a timely
11 objection to the payment.  It tries to avoid the consequence of its conduct by omitting the
12 documents that are fatal to its claims.  The agreements referenced in GA Escrow's Complaint,
13 however, make it clear that GA Escrow's claims cannot survive as a matter of law.  Moreover,
14 there are no factual allegations that GA Escrow can make in good faith to "plead around" the
15 effect of these relevant agreements.  As such, Autonomy respectfully requests that GA
16 Escrow's Complaint be dismissed without leave to amend.

17 **II.    STATEMENT OF ISSUES TO BE DECIDED**

18       Autonomy hereby submits the following statement of issues to be decided by the instant
19 motion:

20       Whether the express terms of the Merger Agreement and Escrow Agreement between
21 the parties, both of which are central to GA Escrow's claims and are referenced throughout its
22 Complaint, bar each of the claims for relief asserted by GA Escrow in this action.

23 **III.   SUMMARY OF RELEVANT FACTS**

24       The following facts are based on the allegations contained in the Complaint (which
25 allegations are accepted as true only for the purposes of this motion) and documents referenced
26 in the Complaint, but which GA Escrow failed to attach thereto.  As set forth below in Section
27 III, such documents may be considered by the Court in ruling on this motion.
28 / / /

### A. The Merger Transaction

Zantaz, Inc. ("Zantaz") provides data archiving software services.[1] On or about July 3, 2007, Autonomy Corporation plc ("Autonomy") – through its wholly owned subsidiary Antelope Acquisition Corp. – acquired Zantaz. Autonomy paid a net purchase price of approximately $375,000,000 to acquire Zantaz.[2] As part of the merger transaction, the parties entered into several agreements, including a Merger Agreement and an Escrow Agreement.[3]

### B. The Indemnity Escrow Fund

Pursuant to Section 2.6(c)(i) of the Merger Agreement, $20,500,000 was withheld from the merger consideration and placed in escrow to indemnify Autonomy in the event that it incurred certain losses listed in the Merger Agreement.[4] Under the terms of the Escrow Agreement, Autonomy has the right to make claims for indemnification until approximately mid-2008.[5] To the extent any of the escrow funds are not needed to indemnify Autonomy for the enumerated losses, those funds ultimately will be paid to Zantaz's former shareholders.[6] Plaintiff GA Escrow is the escrow representative for those shareholders.[7] U.S. Bank is the escrow agent under the Escrow Agreement, and thus is responsible for holding and disbursing funds in accordance with the provisions of the Escrow Agreement.[8] U.S. Bank is the sixth

---

[1] Complaint, ¶ 8.

[2] Complaint, ¶ 9.

[3] *Id*. Plaintiff neglected to attach copies of the Merger Agreement or the Escrow Agreement to the Complaint. However, as discussed *infra* in Section III, these documents may be considered by the Court in ruling on the instant motion.

[4] Complaint, ¶ 10; Merger Agreement, Section 2.6(c)(i), attached as Exhibit A to the Declaration of Andrew Kanter ("Kanter Decl.") filed concurrently herewith.

[5] Escrow Agreement, Section 3(a)(iii), attached as Exhibit B to the Kanter Decl.

[6] Escrow Agreement, Section 3(b)(x).

[7] Complaint, ¶ 2.

[8] Complaint, ¶ 5; Merger Agreement, Section 8.3(a); Escrow Agreement, Section 1.

largest commercial bank in the United States and has extensive escrow experience in mergers and acquisitions.

The Escrow Agreement contains detailed procedures regarding the handling of indemnity claims. In particular, Section 3(b)(ii) sets forth the procedures to be followed by Autonomy in making a claim for indemnification:

> In accordance with Article VIII of the Merger Agreement, [Autonomy] may deliver to the Escrow Participant's Representative and the Escrow Agent a written request (a "Payment Request") for the payment of a claim (a "Claim") for indemnification for Losses under Article III of the Merger Agreement. Any Payment Request shall be deemed to be duly delivered if given in accordance with Section 11 hereof. The Payment Request shall set forth the amount requested and, in reasonable detail, the specific basis for the determination of the amount of the Claim as to why [Autonomy] is entitled to payment of such amount (to the extent then known by [Autonomy]), provided that the Escrow Agent shall not be required to make any assessment as to whether the foregoing has been satisfied.

Section 3(b)(iii) of the Escrow Agreement gives GA Escrow the right to object to a payment request within 10 business days of receiving a claim from Autonomy:

> [GA Escrow] may deliver to Parent and the Escrow Agent a written objection to all or any portion of the applicable Payment Request (an "Objection") on or prior to 5:00 P.M., Pacific Time, on the date that is 10 Business Days after a Payment Request is duly given in accordance with Section 11 hereof (which respect to a particular Payment Request, the "Objection Period")."

Section 3(b)(v) of the Escrow Agreement provides that if GA Escrow delivers an objection prior to the termination of the Objection Period, then U.S. Bank shall not disburse the funds requested unless either: (1) the parties jointly request disbursement; or (ii) it receives a final, non-appealable order from a court of competent jurisdiction stating that Autonomy is entitled to disbursement of the funds.

Both the Escrow Agreement and the Merger Agreement, however, contain explicit provisions regarding the consequences of a failure by GA Escrow to object to a claim within the mandatory objection period:

Section 3(b)(iv) of the Escrow Agreement provides that if GA Escrow fails to deliver an objection within the objection period, U.S. Bank shall pay to Autonomy the amount requested.

Section 8.6 of the Merger Agreement provides that:

> [I]f [GA Escrow] does not timely give notice to [Autonomy] and [U.S. Bank] in accordance with the terms of the Escrow Agreement that it disputes the claim for

4
MOTION TO DISMISS

1    indemnity that is the subject of the Notice of Claim, <u>the Losses specified in such
2    Notice of Claim will be conclusively deemed Losses subject to indemnification
     hereunder and the Escrow Agreement.</u>

(emphasis added).  Thus, if GA Escrow fails to object within 10 business days to a payment request, it may not thereafter challenge Autonomy's right to indemnification for the amounts paid pursuant to that payment request, which are "conclusively deemed Losses subject to indemnification hereunder and the Escrow Agreement."

### C.    Autonomy's September 11, 2007, Payment Request

On September 11, 2007, Autonomy sent to GA Escrow and U.S. Bank a payment request pursuant to Section 3(b)(ii) of the Escrow Agreement (the "Payment Request").[9] Autonomy also simultaneously sent a copy of the Payment Request to GA Escrow's counsel at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP, a leading corporate firm with more than 500 lawyers.  The Payment Request specifically stated that it was "a Payment Request with respect to indemnification for Losses under Article VII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement."[10]  The payment request requested payment of $8 million and included a description of the basis for that request.[11]

Pursuant to Section 3(b)(iii) of the Escrow Agreement, GA Escrow was required to make any objection to the payment request within ten business days – or by September 25, 2007.  GA Escrow did not timely object to the Payment Request.  Instead, Thomas J. Murphy, Managing Director of GA Escrow, sent a Notice of Objection on October 2, 2007, one week <u>after</u> the objection period expired.[12]  Because GA Escrow did not object to the Payment Request

/ / /

---

[9]   Complaint, ¶18; September 11, 2007 Payment Request, attached as Exhibit C to the Kanter Decl.

[10]  September 11, 2007 Payment Request, paragraph 2.

[11]  September 11, 2007 Payment Request, p. 3.

[12]  Complaint, ¶ 23; October 2, 2007 Notice of Objection, attached as Exhibit D to the Kanter Decl.

prior to September 25, 2007, U.S. Bank released the funds to Autonomy in accordance with Section 3(b)(iv) of the Escrow Agreement.[13]

## IV. CONTROLLING LEGAL STANDARDS

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate when it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim. *Manshardt v. Fed. Judicial Qualifications Comm.,* 401 F.3d 1014, 1016 (9th Cir. 2005). Although the court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) (citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

While a motion to dismiss generally is based on the allegations of the complaint, "defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim." *Rubke v. Capitol Bancorp, Ltd.,* 460 F.Supp.2d 1124, 1130 (N.D. Cal. 2006); *see also Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). Defendant also may include with its motion "documents crucial to plaintiff's claims, but not explicitly incorporated in his complaint." *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds.

Indeed, if the allegations of the complaint are contradicted by evidence that is properly before the Court, however, the latter controls. *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1096 (9th Cir. 2004); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) (a court "need not accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); 5 Charles Alan Wright & Arthur R. Miller, *Federal*

---

[13] Complaint, ¶ 27.

*Practice & Procedure* § 1327 at 766-67 (2d ed. 1990). The purpose of this rule is to prevent "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claim is based." *Parrino,* 146 F.3d at 706.

It appears that this is precisely what GA Escrow has attempted to do by failing to attach to its Complaint the critical documents on which its claims necessarily are based. GA Escrow's Complaint makes repeated explicit references to the Merger Agreement, the Escrow Agreement and the September 11, 2007 Payment Request.[14] The Complaint also makes reference to the October 2, 2007 Notice of Objection,[15] although GA Escrow deliberately omits the date of that objection. The reason for this omission is readily apparent: GA Escrow is well aware that it failed to timely object to the Payment Request, and that the agreements between the parties preclude it from now challenging that request now. Given that the agreements, the Payment Request and the belated objection are integral to GA Escrow's claims, these documents should be considered by the Court in ruling on this motion.

## V. THE MERGER AND ESCROW AGREEMENTS BAR EACH OF GA ESCROW'S CLAIMS FOR RELIEF

By the express terms of Section 3(b)(iii) of the Escrow Agreement, GA Escrow was required to tender any objection to the Payment Request on or before September 25, 2007. Paragraph 23 of the Complaint (which references the objection but omits the date of that objection) and the October 2, 2007 Notice of Objection demonstrate that GA Escrow did not object to the Payment Request until October 2, 2007 – one week after the Objection Period provided by Section 3(b)(ii) expired. GA Escrow's failure to object triggered Section 8.6 of the Merger Agreement, which provides that if GA Escrow fails to timely object the Payment

---

[14] *See, e.g.*, paragraphs 9, 10, 11, 12 (Merger Agreement); paragraphs 15, 16, 17 (Escrow Agreement) and paragraphs 18, 19, 20, 21, 22 (September 11, 2007 Payment Request.)

[15] Paragraph 23 of the Complaint states" "Following receipt of the Notice of Claim, GA Escrow informed Autonomy and the Escrow Agent that it considered the Notice of Claim deficient in that it failed to meet the requirements of a Payment Request under Section 3(b)(ii) of the Escrow Agreement."

Request, "the Losses specified in the Notice of Claim will be <u>conclusively</u> deemed Losses subject to indemnification hereunder and the Escrow Agreement."[16] Thus, GA Escrow's failure to timely object to the Payment Request is fatal to each of its claims for relief.

### A. <u>GA Escrow's Breach of Contract Claim Fails as a Matter of Law.</u>

The allegations of GA Escrow's claim for breach of contract are entirely inconsistent with documents on which its claim is based, and thus that claim must fail as a matter of law. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987) (court may disregard allegations of the complaint that are contradicted by attached exhibits); *Steckman. supra,* 143 F.3d at 1295 (court may disregard allegations that are contradicted by documents referenced in a complaint.) In particular, GA Escrow alleges that "Defendant breached the Merger Agreement and the Escrow Agreement by, among other things, failing to provide a proper Payment Request to GA Escrow and the Escrow Agent."[17] Based on this allegation, GA Escrow seeks as damages the $8 million paid to Autonomy under the Escrow Agreement. There are a number of flaws in GA Escrow's claim:

<u>First</u>, GA Escrow's claim for breach of contract is nothing more than a thinly disguised attempt to belatedly object to the September 11, 2007 Payment Request. The problem is that GA Escrow expressly agreed in the Escrow Agreement that <u>any</u> objections to the Payment Request would be made within 10 business days. GA Escrow further agreed in the Merger Agreement that failure to timely object to a payment request would result in a conclusive determination that Autonomy was entitled to indemnification for the amount sought by the payment request. GA Escrow cannot now make an end-run around the contract by repackaging its belated objection as a claim for breach of contract.

This is precisely the conclusion reached by the court in *Barton v. Elexsys Intern Inc.*, 62 Cal. App.4th 1182 (1998). In that case, a terminated executive sued former employer for breach of contract after it refused to allow him to exercise stock options a year after termination. The

---

[16]   Merger Agreement, Section 8.6 (emphasis added).

[17]   Complaint, ¶ 30.

court squarely rejected the executive's breach of contract claim, holding that it was inconsistent with the stock options agreements on which it was based. In particular, the court stated that:

> Those agreements, which Barton read and understood, clearly set forth the terms under which his stock options terminated and cease to vest. All three provided that the stock options would not continue to vest after termination. They also provided that the options ceased to be exercisable or had to exercised within 30 days of termination. Under the terms of these written stock option contracts, Barton had no right to exercise his options a year after his employment terminated. Accordingly, Elexsys cannot be liable for breach of contract based on these written agreements.

*Id*. at 1188. So it is here. The agreements between the parties are clear that any right that GA Escrow had to object to the Payment Request or the disbursement of funds to Autonomy expired on September 25, 2007. Autonomy cannot now be liable for breach of contract based on GA Escrow's failure to timely exercise its right to object under the Escrow Agreement.

Second, GA Escrow's breach of contract claim is based on a fundamental misunderstanding of contract law. In particular, a breach of contract occurs only "when a party to a contract deliberately refused to do that which he or she has agreed and is required to do under the contract." 14A Cal.Jur.3d Contracts § 372 (2008). Thus, a claim for breach of contract "requires that the defendant have failed to perform a material covenant or promise." 1 Witkin, Summary 10th, Contracts, § 849, p. 936 (2005). By contrast, a cause of action for breach of contract does not lie where the matter at issue was merely a condition rather than an express covenant. *Britschgi v. McCall,* 41 Cal.2d 138, 144 (1953).

Nowhere in either the Escrow Agreement or the Merger Agreement did Autonomy promise to provide a "proper" payment request. Rather, the Section 3(b)(ii) of Escrow Agreement simply outlines the specific conditions that Autonomy is required to satisfy in order to secure indemnification. It bears repeating that Section 3(b)(iii) of the Escrow Agreement gives GA Escrow the absolute right to object to a payment request on any grounds, including that it is not a "proper" payment request. Indeed, under Section 3(b)(v), any objection by GA Escrow, even a frivolous one, automatically prevents disbursement of the requested amount.

Third, GA Escrow's claim for breach of contract fails as a matter of law because Section 8.6 of the Merger Agreement prevents GA Escrow from claiming that it was damaged by the $8

9
MOTION TO DISMISS

1  million payment to Autonomy.  As set forth in detail above, Section 8.6 clearly provides that
2  failure of GA Escrow to timely object to the Payment Request means that the specified losses
3  "will be <u>conclusively</u> deemed Losses subject to indemnification."[18]  Thus, because it failed to
4  timely object to the Payment Request, GA Escrow may not now allege that Autonomy was
5  improperly indemnified for the losses specified in the Payment Request.

6      <u>Fourth,</u> GA Escrow's damages claim fails as a matter of law for another reason:  lack of
7  causation.  As GA Escrow is no doubt aware, it can only recover those damages that were
8  caused by the alleged breach of contract.  *State Farm Mutual Automobile Ins. v. Allstate Ins.*, 9
9  Cal.App.3d 508, 528 (1970) (contract damages limited to those proximately caused by breach).
10  The $8 million in damages sought by GA Escrow in the Complaint was not, however, caused
11  by any "improper" payment request by Autonomy.  Rather, these purported damages were a
12  direct consequence of GA Escrow's failure to object to the Payment Request.  Had it objected
13  in a timely manner, the payment never would have been made.  Thus, it is GA Escrow's own
14  intervening conduct that caused the alleged harm, not any breach of contract by Autonomy.

### B. **GA Escrow's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails as a Matter of Law.**

17      GA Escrow's claim for breach of the covenant of good faith and fair dealing is based on
18  the allegation that Autonomy breached the covenant by "putting forth claims for approximate
19  amounts of Losses without having any reasonable factual basis to support such Losses."[19]  GA
20  Escrow once again seeks as damages return of the $8 million paid to Autonomy under the
21  Escrow Agreement.[20]  The problem with this claim is that it is inconsistent with both the
22  Escrow Agreement and the Merger Agreement, and therefore it cannot survive.  California law
23  is clear that the covenant of good faith and fair dealing exists only to protect a "party's right to
24  receive the *benefits of the contract actually made.*"  *Guz v. Bechtel National, Inc.*, 24 Cal.4th

---

[18]    Merger Agreement, Section 8.6 (emphasis added).

[19]    Complaint, ¶ 36.

[20]    Complaint, ¶ 37.

317, 349-350 (2000) (emphasis original).  The covenant cannot therefore "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Id.*

The parties' agreements here define GA Escrow's right to challenge a payment request by Autonomy.  By its claim for breach of the covenant of good faith and fair dealing, GA Escrow seeks to nullify the provisions of the agreements that define these rights by expanding the timeframe for an objection and by invalidating Section 8.6 of the Merger Agreement.  This effort must necessarily fail in light of the clear statement by the California Supreme Court that such a claim cannot survive.  *Guz*, 24 Cal.4th at 349-350.

### C.    GA Escrow's Fraud Claims Fail as a Matter of Law.

GA Escrow's claims for fraud and negligent misrepresentation are yet another belated attempt to object to the Payment Request.  In particular, those claims are based on the allegation that Autonomy "submitted to U.S. Bank claims for approximate amounts of Losses without having any factual basis to support such Losses," and seek as damages the $8 million paid to Autonomy.[21]  Of course, this allegation is directly at odds with Section 8.6 of the Merger Agreement, which clearly provides that as of close of business on September 25, 2007, the losses specified in the Payment Request were conclusively deemed to be losses subject to indemnification.  GA Escrow's allegation to the contrary, therefore, should be disregarded. *Durning,* 815 F.2d at 1267; *Steckman, supra,* 143 F.3d at 1295.

GA Escrow's fraud claims also fail because it cannot allege any facts that will support a finding that any purported fraud by Autonomy caused it to suffer any damages.  GA Escrow must allege and prove as part of its fraud claims that Autonomy's purported misrepresentations caused it to suffer damages.  *Goehring v. Chapman University*, 121 Cal.App.4th 353, 365 (2004).  Even assuming that Autonomy lacked a factual basis for its claims when it submitted the Payment Request, it was GA Escrow's failure to timely object to the Payment Request that caused its alleged harm.  Again, if GA Escrow had believed that the factual basis for the

---

[21]    Complaint, ¶¶ 40, 46.

1  Payment Request was insufficient, it needed only to object within the specified timeframe to
2  prevent the payment from being made.  It did not do so, and it cannot now recover damages
3  from Autonomy.  *See Goehring,* 121 Cal.App.4th at 365 (rejecting fraud claim where plaintiff
4  student's damages were caused by academic dismissal due to poor academic performance,
5  rather than defendant's alleged misrepresentations on consequences of its lack of accreditation).

6    GA Escrow's fraud claims fails for an additional reason:  GA Escrow had failed to
7  allege fraud with requisite specificity required to survive a motion to dismiss.  Federal Rule of
8  Civil Procedure 9(b) requires a plaintiff alleging fraud to state with particularity "the
9  circumstances constituting fraud."  Thus, the complaint must allege specific facts regarding the
10  fraudulent activity, such as the time, date, place and content of the allegedly fraudulent
11  misrepresentation, and how or why the representation was false or misleading.  *In re GlenFed*
12  *Sec. Litig.,* 42 F.3d 1541, 1547-49 (9th Cir. 1994).  "Because a plaintiff must set forth what is
13  false or misleading about a particular statement, it must do more than simply allege the neutral
14  facts necessary to identify the transaction; he must also explain why the disputed statement was
15  untrue or misleading, at the time it was made." *Rubke, supra,* 460 F.Supp. at 1130, relying on
16  *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999).

17    GA Escrow's fraud claims fail to meet these standards.  It merely has alleged in the most
18  conclusory terms that Autonomy "falsely" submitted claims to U.S. Bank.  There are no
19  specific facts showing when these false claims were purportedly made or how they were made.
20  More problematic is the lack of any specific facts whatsoever showing why the claims
21  submitted by Autonomy were false.  Instead, GA Escrow merely has alleged the neutral fact
22  that a claim was made and tacked on the term "falsely" in an attempt to make a claim for fraud.
23  As set forth in *Rubke, supra*, such a lack of specificity is fatal to GA Escrow's claim.

24    **D.    GA Escrow's Unjust Enrichment Claim Fails as a Matter of Law,**
25    **and It Is Not Entitled to an Accounting.**

26    Both GA Escrow's claim for unjust enrichment and its request for an accounting require
27  it to allege and prove that Autonomy had received money to which it is not entitled.  *See*
28  *Marina Tenants Ass'n v. Deauville Marina Development Co., Ltd.,* 181 Cal.App.3d 122, 134

(1986) (unjust enrichment requires that the defendant obtain a benefit which may not justly be retained); *Brea v. McGlashan*, 3 Cal.App.2d 454, 39 P.2d 877 (1934) (cause of action for accounting requires a statement that there is a balance due to the plaintiff).  Section 8.6 of the Merger Agreement precludes any allegation that Autonomy was not entitled to the funds paid pursuant to the payment request.  Therefore, GA Escrow cannot state claims for either unjust enrichment or accounting.

## VI.   CONCLUSION

As set forth above, each of GA Escrow's claims fails as a matter of law when the plain language of the parties' agreements is taken into account.  The Complaint should be dismissed.  Because the agreements conclusively preclude GA Escrow from challenging the propriety of the payment to Autonomy, there are no factual allegations that GA Escrow can make that would save any of its claims.  As a result, Autonomy respectfully requests that GA Escrow's Complaint be dismissed in its entirety without leave to amend.  *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend should be denied if the court determines that "allegation(s) of other facts consistent with the challenged pleading could not possibly cure the deficiency.")

Dated: April 9, 2008                              Respectfully submitted,

                                                  DOLL AMIR & ELEY


                                                  By _____/s /_____.
                                                          Gregory L. Doll
                                                  Attorneys for Defendant Autonomy Corporation plc

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, California 90067.

On April 9, 2008, I served the foregoing document(s) described as **DEFENDANT AUTONOMY CORPORATION PLC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the parties in this action by serving:

> Arthur J. Shartsis, Esq.
> Gregg S. Farano, Esq.
> Shartsis Friese LLP
> One Maritime Plaza, 18th Floor
> San Francisco, CA  94111

( )   **By Envelope**: by placing ( ) the original ( **X** ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

( )   **By Mail:** As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )   **By Personal Service:** I delivered such envelope by hand to the offices of the addressee(s).

( )   **By Facsimile Transmission:** On April 9, 2008, I caused the above-named document to be transmitted by facsimile transmission to the offices of the addressee(s) at the facsimile number(s) so indicated above. The transmission was reported as complete and without error.

( )   **By Electronic Mail:** I scanned and submitted an electronic versions of the document via electronic mail to the attached Service List and confirmed receipt of the e-mail.

(**X**)   **By Electronic Filing:** Based upon my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this Document, upon its submission to the Court, will be electronically served on the addressees.

Executed on April 9, 2008 at Los Angeles, California.

( )   **STATE**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(**X**)   **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

> _____/s/_____.
> Susan Reimers