# ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Agreement") is dated as of July 20, 2007, by and among Autonomy Corporation plc, a corporation formed under the laws of England and Wales ("Parent"), GA Escrow, LLC (the "Escrow Participants' Representative"), and U.S. Bank National Association, a national banking association (the "Escrow Agent"), as escrow agent. Parent and the Escrow Participants' Representative are sometimes referred to herein, collectively, as the "Interested Parties."

WHEREAS, Parent, Antelope Acquisition Corp., a California corporation ("Merger Sub"), Zantaz, Inc., a California corporation (the "Company"), and the Escrow Participants' Representative have entered into that certain Agreement and Plan of Merger, dated July 3, 2007 (the "Merger Agreement"), pursuant to which certain amounts have been withheld and are to be placed in escrow pursuant to the terms and conditions set forth in the Merger Agreement and this Agreement;

WHEREAS, the Escrow Participants' Representative is acting as the representative of the persons and entities set forth on Schedule 1 attached hereto (the "Escrow Participants") pursuant to the Merger Agreement and the Representative Agreement contemplated by the Merger Agreement; and

WHEREAS, Parent and the Escrow Participants' Representative wish to engage the Escrow Agent to act, and the Escrow Agent is willing to act, as escrow agent hereunder and, in that capacity, to hold, administer and distribute the amounts deposited in escrow hereunder in accordance with, and subject to, the terms of this Agreement.

NOW THEREFORE, for valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.     Appointment of Escrow Agent. Parent and the Escrow Participants' Representative hereby appoint and designate the Escrow Agent as escrow agent hereunder, and the Escrow Agent hereby agrees to act as escrow agent hereunder, to hold and release the Escrow Funds (as defined herein) in accordance with the terms hereof.

2.     Deposit of Escrow Funds. At the Effective Time or as soon as practicable thereafter, Parent shall deposit with the Escrow Agent, and upon such deposit the Escrow Agent shall acknowledge receipt of, in cash by wire transfer of immediately available funds (i) $20,500,000 (the "Indemnity Escrow Fund"); provided, however, that notwithstanding anything herein to the contrary, $500,000 of the Indemnity Escrow Fund (the "Representative Reserve Amount") shall not be payable to Parent Indemnitees and rather shall be reserved to reimburse the Escrow Participants' Representative for all reasonable, documented out-of-pocket expenses and the reasonable fees and disbursements of counsel (including expenses to be paid pursuant to this Agreement) incurred by the Escrow Participants' Representative as a result of acting as the Escrow Participants' Representative under the Merger Agreement and hereunder and losses, liabilities, and expenses that are incurred by the Escrow Participants' Representative as a result of acting as the Escrow Participants' Representative in respect of any claims made against the

1-SF/7558515.9

Indemnity Escrow Fund or the Working Capital Escrow Fund, and (ii) $4,000,000 (the "Working Capital Escrow Fund"). The Escrow Agent shall hold the Indemnity Escrow Fund and the Working Capital Escrow Fund (together with the Indemnity Escrow Fund, the "Escrow Funds") in segregated accounts established with the Escrow Agent (respectively, the "Indemnity Escrow Account" and the "Working Capital Escrow Account"), and to administer the Escrow Funds in accordance with the terms of this Agreement.

      3.     Claims and Payment; Release from Escrow.

      (a)     Certain Definitions. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Merger Agreement. For purposes of this Agreement, the following terms shall have the meanings defined below:

      (i)     "Business Day" shall mean a regular business day of the Escrow Agent. Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday or bank holiday, such time shall be extended to the Escrow Agent's next Business Day.

      (ii)     "Escrow Account" shall mean, collectively, the Indemnity Escrow Account and the Working Capital Escrow Account.

      (iii)     "Indemnification Period" shall mean the period commencing on the date hereof and ending on the earlier of (A) sixty (60) days following the completion of Parent's audit for the fiscal period ending December 31, 2007 and (B) May 31, 2008. For purposes of the Escrow Agent's obligations hereunder, the Indemnification Period shall be deemed to have ended pursuant to clause (B) above unless the Escrow Agent receives prior written notice from Parent and the Escrow Participants' Representative that the Indemnification Period ended pursuant to clause (A) above.

      (b)     Claims and Payment; Release from Indemnity Escrow Fund.

      (i)     Notwithstanding any other provisions of this Agreement, if at any time the Escrow Agent shall receive joint written instructions executed by each of Parent and the Escrow Participants' Representative ("Joint Written Instructions"), to release all or a portion of the Indemnity Escrow Fund from the Indemnity Escrow Account, then on the fifth Business Day following receipt of such Joint Written Instructions, subject to Section 6, the Escrow Agent shall release from the Indemnity Escrow Account all or such portion of the Indemnity Escrow Fund in accordance with such Joint Written Instructions. The Escrow Participants' Representative and Parent will cooperate in good faith in executing such Joint Written Instructions wherever reasonably necessary to ensure distributions of escrowed funds to the party entitled thereto under the terms of this Agreement or the Merger Agreement.

      (ii)     In accordance with Article VIII of the Merger Agreement, Parent may deliver to the Escrow Participants' Representative and the Escrow Agent a written request (a "Payment Request") for the payment of a claim (a "Claim") for indemnification for Losses under Article VIII of the Merger Agreement. Any Payment Request shall be deemed to be duly delivered if given in accordance with Section 11 hereof. The Payment Request shall set forth the amount requested and, in reasonable detail, the specific basis for the determination of the amount

- 2 -

of the Claim and as to why such Parent Indemnitee is entitled to the payment of such amount (to the extent then known by the Parent Indemnitee), provided that the Escrow Agent shall not be required to make any assessment as to whether the foregoing has been satisfied.

(iii)    The Escrow Participants' Representative may deliver to Parent and the Escrow Agent a written objection to all or any portion of the applicable Payment Request (an "Objection") on or prior to 5:00 P.M., Pacific Time, on the date that is ten (10) Business Days after a Payment Request is duly given in accordance with Section 11 hereof (with respect to a particular Payment Request, the "Objection Period").

(iv)    If the Escrow Participants' Representative fails to deliver an Objection to a particular Payment Request prior to termination of the Objection Period with respect to such Payment Request, the Escrow Agent is hereby authorized to and shall pay to the applicable Parent Indemnitee out of the Indemnity Escrow Account (other than the Representative Reserve Amount) an amount equal to the amount requested in such Payment Request (or if the Escrow Participants' Representative disputes only a portion of such Payment Request in accordance with Section 3(b)(v), an amount equal to the undisputed portion of such Payment Request). Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the expiration of the Objection Period. The Escrow Agent shall continue to hold any amounts remaining in the Indemnity Escrow Account following the payment of such Payment Request in accordance with the terms and conditions of this Agreement.

(v)    If the Escrow Participants' Representative delivers an Objection prior to the termination of the Objection Period with respect to all or any portion of a Payment Request, the Escrow Agent shall not disburse, and shall continue to hold in the Indemnity Escrow Account, the disputed portion of the Payment Request (but shall distribute the undisputed portion thereof in accordance with Section 3(b)(iv)), pending receipt of either (i) Joint Written Instructions, specifying the agreement of Parent and the Escrow Participants' Representative as to the action to be taken by the Escrow Agent in respect of such Payment Request and the specific amount of payment to be made to the applicable Parent Indemnitee (the "Payment Instructions") or (ii) a notice from either Parent or the Escrow Participants' Representative stating that such Payment Request has been submitted to a State or Federal court of competent jurisdiction for judgment (a "Court Filing") and that a judgment with respect to such matters has been rendered (a "Judgment Notice") which is accompanied by a copy of a final, non-appealable order of such court (an "Order"), pursuant to which such court has determined whether and to what extent the Parent Indemnitee is entitled to the amount requested in the Payment Request. Upon receipt of Payment Instructions or a Judgment Notice and Order, as applicable, the Escrow Agent shall thereafter act in accordance with Section 3(b)(vi) or Section 3(b)(vii) below, as applicable.

(vi)    Upon receipt by the Escrow Agent of Payment Instructions, if such Payment Instructions indicate that the Parent Indemnitee is entitled to payment in respect of all or any portion of the applicable Payment Request, then the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account (other than the Representative Reserve Amount) and pay to the Parent Indemnitee the amount indicated in such Payment Instructions. Any payment made in accordance with the preceding sentence shall be made by the Escrow

- 3 -

Agent within five (5) Business Days following the date on which such Payment Instructions are received by the Escrow Agent. If such Payment Instructions indicate that the Parent Indemnitee is not entitled to all or any portion of the amount claimed in such Payment Request, then the Escrow Agent is hereby authorized to and shall (i) pay to the Parent Indemnitee out of the Indemnity Escrow Account (other than the Representative Reserve Amount) that portion, if any, of the amount claimed in the Payment Request to which such Parent Indemnitee is entitled as indicated in such Payment Instructions, and (ii) continue to hold the remaining Indemnity Escrow Fund in the Indemnity Escrow Account in accordance with the terms of this Agreement.

(vii)    Upon receipt by the Escrow Agent of a Judgment Notice and an Order with respect to any Payment Request, then the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account (other than the Representative Reserve Amount) and pay to the applicable Parent Indemnitee the amount that is specifically set forth in such Order to be paid to such Parent Indemnitee. Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the date on which the Escrow Agent receives a copy of such Judgment Notice and Order.

(viii)    Upon receipt by the Escrow Agent of a written request from the Escrow Participants' Representative for reimbursement for documented out-of-pocket expenses (including expenses to be paid pursuant to this Agreement) or reasonable fees and disbursements of counsel ("Expenses") incurred by the Escrow Participants' Representative (a "Reimbursement Request"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants' Representative from the Indemnity Escrow Fund such amounts as are necessary to reimburse the Escrow Participants' Representative for such Expenses to a maximum amount equal to the unpaid Representative Reserve Amount.    In the event that the Escrow Participants' Representative has submitted Reimbursement Requests requesting reimbursement for Expenses that in the aggregate are in excess of the Representative Reserve Amount ("Excess Expenses"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants' Representative, from the amounts that are otherwise to be released to the Escrow Participants pursuant to Section 3(b)(x) of this Agreement, such amounts as are necessary to reimburse the Escrow Participants' Representative for any such Excess Expenses.

(ix)    As promptly as practicable following each disbursement of any portion of the Indemnity Escrow Fund, the Escrow Agent shall send a written statement to each of the Escrow Participants' Representative and Parent stating the amount of the disbursement and the amount of funds then remaining in the Indemnity Escrow Account.

(x)    On the first Business Day following the expiration of the Indemnification Period (the "Release Date"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants all amounts remaining in the Indemnity Escrow Fund on the Release Date after payment of all Excess Expenses; provided, however, if the Escrow Agent shall have received before 5:00 P.M., Pacific Time on the Business Day immediately prior to the Release Date any one or more Payment Requests which have not been paid in accordance with this Section 3 (any such Payment Request being referred to as an "Outstanding Claim"), the Escrow Agent shall retain and continue to hold in the Indemnity Escrow Account in accordance with the terms hereof an amount equal to the aggregate maximum amount requested in all such Outstanding Claims (the "Retained Amount") until fully resolved; provided, further, that,

- 4 -

following payment of any Excess Expenses, the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account to the Escrow Participants all or such portion of the Retained Amount that was withheld due to an Outstanding Claim within five (5) Business Days of receipt by the Escrow Agent of a copy of a Judgment Notice and Order pursuant to which a court has determined that the Parent Indemnitee was not entitled under the Merger Agreement to the amount requested in the Payment Request for such Outstanding Claim. Any amounts to be paid by the Escrow Agent to the Escrow Participants shall be paid according to the percentage set forth besides each Escrow Participant's name on Schedule 1 hereto.

(c)    Release from Working Capital Escrow Fund. Upon receipt by the Escrow Agent of Joint Written Instructions regarding the release of funds from the Working Capital Escrow Fund from the Working Capital Escrow Account, then the Escrow Agent is hereby authorized to and shall release funds from the Working Capital Escrow Account to the persons and in the amounts set forth in such Joint Written Instructions. Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the date on which the Escrow Agent receives a copy of such Joint Written Instructions.

4.    Investment of Funds.

(a)    Eligible Investments. The Escrow Agent shall invest any cash in the Escrow Funds in such Eligible Investments (as defined below) as Parent and the Escrow Participants' Representative from time to time direct by written notice to the Escrow Agent. For purposes of this Agreement, an "Eligible Investment" means investment in (i) obligations issued or guaranteed by the United States of America or any agency or instrumentality thereof (provided that the full faith and credit of the United States is pledged in support thereof) that, in each case, mature within one (1) year from the date of its acquisition by the Escrow Funds, (ii) obligations (including certificates of deposit and banker's acceptances) of any domestic commercial bank having capital and surplus in excess of $1,000,000,000 that, in each case, matures within one (1) year from the date of its acquisition by the Escrow Funds, (iii) repurchase obligations for underlying securities of the type described in clause (i), or (iv) a U.S. Bank Money Market Account, as further described in Exhibit A hereto. If otherwise qualified, obligations of the Escrow Agent or any of its affiliates shall qualify as Eligible Investments. Notwithstanding the foregoing, Eligible Investments shall be limited to those instruments readily obtainable and routinely offered by the Escrow Agent's Corporate Trust Services. In the absence of written notice from Parent and the Escrow Participants' Representative to the contrary, the Escrow Funds shall be invested pursuant to clause (iv) of this Section 4(a).

(b)    Escrow Agent Not Responsible For Investment Decisions. All earnings received from the investment of the Escrow Funds (the "Escrow Earnings") shall be remitted to the Escrow Participants in accordance with Section 4(c) below. The Escrow Agent shall have no liability for any investment losses, including without limitation any market loss on any investment liquidated prior to maturity in order to make a payment required hereunder.

(c)    Tax Treatment. The parties hereto agree that, for U.S. tax reporting purposes, all Escrow Earnings shall be treated as earned by Parent and as paid by Parent to the Escrow Participants in accordance with the percentages set forth beside the Escrow Participants' names on Schedule 1 hereto. The Escrow Agent shall report such Escrow Earnings in a manner

- 5 -

consistent therewith and shall distribute to the Escrow Participants out of the Escrow Funds, prior to December 31st of each year during the Indemnification Period, a distribution equal to the amount of the Escrow Earnings in accordance with the percentages set forth beside the Escrow Participants' names on Schedule 1 hereto. The payment of such Escrow Earnings to the Escrow Participants represents interest for the deferral of payment of a portion of the merger consideration resulting from the escrow arrangement, which represents an installment obligation of Parent, and Parent shall report such distributions for U.S. income tax purposes as interest paid on such installment obligation. Additional interest shall be imputed to distributions from the Escrow Funds to the Escrow Participants to the extent necessary to comply with the provisions of Sections 483, 1274 and 1275 of the Code and the regulations thereunder ("Imputed Interest").

(d)    Certification of Taxpayer Identification Number. Parent agrees to provide the Escrow Agent with its tax identification number upon the execution and delivery of this Agreement. In addition, each Escrow Participant shall have signed and returned Forms W-9 (or original Forms W-8 BEN, in case of non-U.S. persons) to the Escrow Agent (or to the Escrow Agent in its capacity as the Paying Representative under the Merger Agreement) prior to any of the Escrow Funds or Escrow Earnings being released to such Escrow Participant. The Interested Parties understand that, in the event that the appropriate tax identification numbers are not certified to the Escrow Agent, the Internal Revenue Code, as amended from time to time, may require withholding of a portion of the Escrow Earnings or any other payment made out of the Escrow Funds to the Interested Parties or the Escrow Participants. Each of the Interested Parties agrees to instruct the Escrow Agent in writing with respect to the Escrow Agent's responsibility for reporting, withholding any additional taxes, assessments or other governmental charges, and to instruct the Escrow Agent with respect to any certifications and governmental reporting that may be required under any laws or regulations that may be applicable in connection with its acting as Escrow Agent under this Agreement (including with respect to Imputed Interest, for which instructions shall be provided by Parent); provided that the Escrow Agent shall make all required withholdings for distributions to Interested Parties and/or Escrow Participants that have not signed and returned Forms W-9 (or original Forms W-8 BEN, in case of non-U.S. persons) to the Escrow Agent (or to the Escrow Agent in its capacity as the Paying Representative under the Merger Agreement) without further instruction from the Interested Parties.

5.    Concerning the Escrow Agent.

(a)    Each Interested Party acknowledges and agrees that the Escrow Agent (i) shall not be responsible for any of the agreements referred to or described herein (including without limitation the Merger Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, (ii) shall be obligated only for the performance of such duties as are expressly and specifically set forth in this Agreement on its part to be performed, each of which is ministerial (and shall not be construed to be fiduciary) in nature, and no implied duties or obligations of any kind shall be read into this Agreement against or on the part of the Escrow Agent, (iii) shall not be obligated to take any legal or other action hereunder which might in its judgment involve or cause it to incur any expense or liability unless it shall have been furnished with acceptable indemnification, (iv) may rely on and shall be protected in acting or refraining from acting upon any written notice, instruction (including, without limitation, wire transfer instructions, whether incorporated herein or provided in a separate written instruction), instrument, statement, certificate, request or other document

- 6 -

furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper person, and shall have no responsibility or duty to make inquiry as to or to determine the genuineness, accuracy or validity thereof (or any signature appearing thereon), or of the authority of the person signing or presenting the same, and (v) may consult counsel satisfactory to it, including in-house counsel, and the opinion or advice of such counsel in any instance shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with the opinion or advice of such counsel.

(b)     The Escrow Agent shall not be liable to anyone for any action taken or omitted to be taken by it hereunder except in the case of the Escrow Agent's gross negligence, bad faith or willful misconduct in breach of the terms of this Agreement. In no event shall the Escrow Agent be liable for indirect, punitive, special or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Escrow Agent has been informed of the likelihood of such loss or damage and regardless of the form of action.

(c)     The Escrow Agent shall have no more or less responsibility or liability on account of any action or omission of any book-entry depository, securities intermediary or other subescrow agent employed by the Escrow Agent than any such book-entry depository, securities intermediary or other subescrow agent has to the Escrow Agent, except to the extent that such action or omission of any book-entry depository, securities intermediary or other subescrow agent was caused by the Escrow Agent's own gross negligence, bad faith or willful misconduct in breach of this Agreement.

(d)     The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or such affiliate is acting as a subagent of the Escrow Agent or for any third person or dealing as principal for its own account.

(e)     Notwithstanding any term appearing in this Agreement to the contrary, in no instance shall the Escrow Agent be required or obligated to distribute any Escrow Funds (or take other action that may be called for hereunder to be taken by the Escrow Agent) sooner than two (2) Business Days after (i) it has received the applicable documents required under this Agreement in good form, or (ii) passage of the applicable time period (or both, as applicable under the terms of this Agreement), as the case may be.

(f)     Unless and except to the extent otherwise expressly set forth herein, all deposits and payments hereunder, or pursuant to the terms hereof (including without limitation all payments to the Escrow Agent pursuant to Section 6), shall be in U.S. dollars.

6.     Compensation, Expense Reimbursement and Indemnification.

(a)     Each of Parent and the Escrow Participants' Representative (on behalf of the Escrow Participants and not individually) agrees, jointly and severally to (i) pay or reimburse the Escrow Agent for its attorney's fees and expenses incurred in connection with the preparation of this Agreement and (ii) reimburse the Escrow Agent on demand for all costs and expenses incurred in connection with the administration of this Agreement or the escrow created hereby or

- 7 -

the performance or observance of its duties hereunder which are in excess of its compensation for normal services hereunder, including without limitation, payment of any legal fees and expenses incurred by the Escrow Agent in connection with resolution of any claim by any party hereunder.

(b)    Parent shall pay the Escrow Agent's compensation for its normal services hereunder in accordance with the fee schedule attached hereto as <u>Exhibit B</u> and made a part hereof, which may be subject to change hereafter by the Escrow Agent on an annual basis.

(c)    Each of Parent and the Escrow Participants' Representative (on behalf of the Escrow Participants and not individually) covenants and agrees, jointly and severally, to indemnify the Escrow Agent (and its directors, officers and employees) and hold it (and such directors, officers and employees) harmless from and against any loss, liability, damage, cost and expense of any nature incurred by the Escrow Agent arising out of or in connection with this Agreement or with the administration of its duties hereunder, including but not limited to attorney's fees, tax liabilities (other than income tax liabilities associated with the Escrow Agent's fees), any liabilities or damages that may result from any inaccuracy or misrepresentation made in any tax certification provided to the Escrow Agent, and other costs and expenses of defending or preparing to defend against any claim of liability unless and except to the extent such loss, liability, damage, cost and expense shall be caused by the Escrow Agent's gross negligence, bad faith or willful misconduct. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement.

(d)    Notwithstanding anything herein to the contrary, the Escrow Agent shall have and is hereby granted a possessory lien on and security interest in the Escrow Funds, and all proceeds thereof, to secure payment of all amounts owing to it from time to time hereunder, whether now existing or hereafter arising. The Escrow Agent shall have the right to deduct from the Escrow Funds, and proceeds thereof, any such sums, upon one (1) Business Day's notice to the Interested Parties of its intent to do so.

7.    <u>Resignation</u>. The Escrow Agent may at any time resign as escrow agent hereunder by giving thirty (30) days' prior written notice of resignation to Parent and the Escrow Participants' Representative. Prior to the effective date of the resignation as specified in such notice, Parent will issue to the Escrow Agent a written instruction authorizing redelivery of the Escrow Funds to a bank or trust company that it selects as successor to the Escrow Agent hereunder subject to the consent of the Escrow Participants' Representative (which consent shall not be unreasonably withheld or delayed). If, however, Parent shall fail to name such a successor escrow agent within twenty (20) days after the notice of resignation from the Escrow Agent, the Escrow Participants' Representative shall be entitled to name such successor escrow agent. If no successor escrow agent is named by Parent or Escrow Participants' Representative, the Escrow Agent may apply to a court of competent jurisdiction for appointment of a successor escrow agent.

8.    <u>Dispute Resolution</u>. It is understood and agreed that, should any dispute arise with respect to the delivery, ownership, right of possession, and/or disposition of the Escrow Funds, or should any claim be made upon the Escrow Agent or the Escrow Funds by a third party, the Escrow Agent upon receipt of notice of such dispute or claim is authorized and shall be

- 8 -

entitled (at its sole option and election) to retain in its possession without liability to anyone, all or any of the Escrow Funds until such dispute shall have been settled either by the mutual written agreement of the parties involved or by a final order, decree or judgment of a court in the United States of America, the time for perfection of an appeal of such order, decree or judgment having expired. The Escrow Agent may, but shall be under no duty whatsoever to, institute or defend any legal proceedings which relate to the Escrow Funds.

9.    <u>Consent to Jurisdiction and Service</u>. Each of the Interested Parties and each other party hereto hereby irrevocably and unconditionally submits to the exclusive jurisdiction of either (a) the state courts located in San Francisco, California or (b) any Federal court of the United States of America sitting in the Northern District of California, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby (and each agrees that no such action, suit or proceeding relating to this Agreement shall be brought by it or any of its affiliates except in such courts). Each of the parties further agrees that, to the fullest extent permitted by applicable law, service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth below shall be effective service of process for any action, suit or proceeding in California with respect to any matters to which it has submitted to jurisdiction as set forth above in the immediately preceding sentence. Each of the parties irrevocably and unconditionally waives (and agrees not to plead or claim) any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in (a) the state courts located in San Francisco, California or (b) any Federal court of the United States of America sitting in the Northern District of California, or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

10.    <u>Force Majeure</u>. The Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, governmental regulations superimposed after the fact, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters.

11.    <u>Notices; Wiring Instructions</u>.

(a)    All notices, requests, claims, demands and other communications under this Agreement shall be in writing and shall be deemed given if delivered personally, by facsimile (which is confirmed) or sent by overnight courier (providing proof of delivery) to the parties hereto at the following addresses (or at such other address for a party hereto as shall be specified by like notice):

If to Parent or Merger Sub, to:

Autonomy Corporation plc
Cambridge Business Park
Cowley Rd
Cambridge, CB4 0WS
United Kingdom
Facsimile: +44 (0) 1223 448041

- 9 -

Attention: Chief Executive Officer

with a copy (which shall not constitute notice) to:

Morgan, Lewis & Bockius LLP
One Market Street, Spear Tower
San Francisco, California 94105
Facsimile: (415) 442-1001
Attention: William A. Myers, Esq.

If to Escrow Participants' Representative:

c/o General Atlantic Service Company, LLC
3 Pickwick Plaza
Greenwich, CT 06830
Attention: Christopher G. Lanning
Fax: (203) 302-3044

with a copy (which shall not constitute notice) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attention:    Matthew W. Abbott
              Douglas A. Cifu
Fax: (212) 757-3990

If to Escrow Agent:

U.S. Bank National Association
One California Street
Suite 2100
San Francisco, CA 94111
Tel:    (415) 273-4547
Fax:    (415) 273-4591

Notwithstanding the foregoing, notices addressed to the Escrow Agent shall be effective only upon receipt. If any notice or document is required to be delivered to the Escrow Agent and any other person, the Escrow Agent may assume without inquiry that each notice or document was received by such other person when it is received by the Escrow Agent.

(b)    Wiring Instructions. Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions (or by such method of payment and pursuant to such instruction as may have been given in advance and in writing to or by the Escrow Agent, as the case may be, in accordance with Section 11(a) above):

If to Autonomy Corporation plc:

- 10 -

Bank: *[name, city, state]*
ABA #: _____
Acct. #: _____
Attn: _____
Ref: _____

If to the Escrow Agent:

Bank:  U.S. Bank National Association
ABA : 091000022
BNF:  U.S. Bank Trust N.A.
A/C: 1801 2116 7365
OBI: Corporate Trust Services
Ref: *[escrow customer name and SEI #]*
Attn: Michael P. Susnow, Corporate Trust, SF

12.    Miscellaneous.

(a)    Binding Effect; Successors. This Agreement shall be binding upon the respective parties hereto and their heirs, executors, successors and assigns. If the Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Agreement) to, another corporation, the successor corporation without any further act shall be the successor Escrow Agent.

(b)    Modifications. This Agreement may not be altered or modified without the express written consent of the parties hereto. No course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion. Notwithstanding any other provision hereof, consent to an alteration or modification of this Agreement may not be signed by means of an e-mail address.

(c)    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICT OF LAWS RULES OR PROVISIONS (WHETHER OF THE STATE OF CALIFORNIA OR ANY OTHER JURISDICTION).

(d)    Reproduction of Documents. This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, and (b) certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, optical disk, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was

- 11 -

made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

(e)    <u>Counterparts and Facsimile Execution.</u> This Agreement may be executed in several counterparts, each of which shall be deemed to be one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

(f)    <u>Customer Identification Program.</u> Each of the Interested Parties acknowledge receipt of the notice set forth on <u>Exhibit C</u> attached hereto and made part hereof that information may be requested to verify their identities.

[Signature Page to Follow]

1-SF/7558515.9

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC

By: _____
Name: Andrew Kanter
Title: Chief Operating Officer


GA ESCROW, LLC


By: _____
Name:
Title:


U.S. BANK NATIONAL ASSOCIATION


By: _____
Name:
Title:

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC


By:_____
 Title:
 Name:


GA ESCROW, LLC


By:_____
Name:        Matthew Nimetz
Title:         A Managing Director


U.S. BANK NATIONAL ASSOCIATION


By:_____
Name:
Title:

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC

By:_____
 Title:
 Name:

GA ESCROW, LLC

By:_____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION

By:_____
Name:
Title:     ANDREW FUNG
           VICE PRESIDENT

**EXHIBIT A**

**U. S. BANK MONEY MARKET ACCOUNTS**
**ACCOUNT DESCRIPTION AND TERMS**

U.S. Bank money market accounts are U.S. Bank National Association ("U.S. Bank") deposit accounts designed to meet the needs of Corporate Escrow and other Corporate Trust customers of U. S. Bank. Accounts pay competitive variable interest rates, which are determined upon the customer's aggregated balance. Customer deposits are insured up to $100,000 per depositor pursuant to the Federal Deposit Insurance Corporation's insurance rules.

Interest rates currently offered on the accounts are determined at U. S. Bank's discretion and may change daily. U. S. Bank National Association uses the daily balance method to calculate interest on these accounts. This method applies a daily periodic rate to the principal in the accounts each day of the month and divides that figure by the number of days in the period. Interest on customer deposits begins to accrue on the business day funds are credited to a U.S. Bank deposit account. Interest is compounded on a monthly basis.

The owner of the accounts is U. S. Bank National Association as agent for its customers. All account deposits and withdrawals are performed by U.S. Bank National Association.

1-SF/7558515.9

**EXHIBIT B**

**ESCROW AGENT FEE SCHEDULE**

**EXHIBIT C**

**CUSTOMER IDENTIFICATION PROGRAM NOTICE**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions (which includes the Escrow Agent) to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

Any capitalized term used without definition in this Exhibit C is used with the meaning assigned to such term in the Escrow Agreement of which this Exhibit C is a part.

1-SF/7558515.9

# ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Agreement") is dated as of July 20, 2007, by and among Autonomy Corporation plc, a corporation formed under the laws of England and Wales ("Parent"), GA Escrow, LLC (the "Escrow Participants' Representative"), and U.S. Bank National Association, a national banking association (the "Escrow Agent"), as escrow agent. Parent and the Escrow Participants' Representative are sometimes referred to herein, collectively, as the "Interested Parties."

WHEREAS, Parent, Antelope Acquisition Corp., a California corporation ("Merger Sub"), Zantaz, Inc., a California corporation (the "Company"), and the Escrow Participants' Representative have entered into that certain Agreement and Plan of Merger, dated July 3, 2007 (the "Merger Agreement"), pursuant to which certain amounts have been withheld and are to be placed in escrow pursuant to the terms and conditions set forth in the Merger Agreement and this Agreement;

WHEREAS, the Escrow Participants' Representative is acting as the representative of the persons and entities set forth on Schedule 1 attached hereto (the "Escrow Participants") pursuant to the Merger Agreement and the Representative Agreement contemplated by the Merger Agreement; and

WHEREAS, Parent and the Escrow Participants' Representative wish to engage the Escrow Agent to act, and the Escrow Agent is willing to act, as escrow agent hereunder and, in that capacity, to hold, administer and distribute the amounts deposited in escrow hereunder in accordance with, and subject to, the terms of this Agreement.

NOW THEREFORE, for valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.      Appointment of Escrow Agent. Parent and the Escrow Participants' Representative hereby appoint and designate the Escrow Agent as escrow agent hereunder, and the Escrow Agent hereby agrees to act as escrow agent hereunder, to hold and release the Escrow Funds (as defined herein) in accordance with the terms hereof.

2.      Deposit of Escrow Funds. At the Effective Time or as soon as practicable thereafter, Parent shall deposit with the Escrow Agent, and upon such deposit the Escrow Agent shall acknowledge receipt of, in cash by wire transfer of immediately available funds (i) $20,500,000 (the "Indemnity Escrow Fund"); provided, however, that notwithstanding anything herein to the contrary, $500,000 of the Indemnity Escrow Fund (the "Representative Reserve Amount") shall not be payable to Parent Indemnitees and rather shall be reserved to reimburse the Escrow Participants' Representative for all reasonable, documented out-of-pocket expenses and the reasonable fees and disbursements of counsel (including expenses to be paid pursuant to this Agreement) incurred by the Escrow Participants' Representative as a result of acting as the Escrow Participants' Representative under the Merger Agreement and hereunder and losses, liabilities, and expenses that are incurred by the Escrow Participants' Representative as a result of acting as the Escrow Participants' Representative in respect of any claims made against the

- 1 -

Indemnity Escrow Fund or the Working Capital Escrow Fund, and (ii) $4,000,000 (the "Working Capital Escrow Fund"). The Escrow Agent shall hold the Indemnity Escrow Fund and the Working Capital Escrow Fund (together with the Indemnity Escrow Fund, the "Escrow Funds") in segregated accounts established with the Escrow Agent (respectively, the "Indemnity Escrow Account" and the "Working Capital Escrow Account"), and to administer the Escrow Funds in accordance with the terms of this Agreement.

     3.     Claims and Payment; Release from Escrow.

     (a)     Certain Definitions. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Merger Agreement. For purposes of this Agreement, the following terms shall have the meanings defined below:

     (i)     "Business Day" shall mean a regular business day of the Escrow Agent. Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday or bank holiday, such time shall be extended to the Escrow Agent's next Business Day.

     (ii)     "Escrow Account" shall mean, collectively, the Indemnity Escrow Account and the Working Capital Escrow Account.

     (iii)     "Indemnification Period" shall mean the period commencing on the date hereof and ending on the earlier of (A) sixty (60) days following the completion of Parent's audit for the fiscal period ending December 31, 2007 and (B) May 31, 2008. For purposes of the Escrow Agent's obligations hereunder, the Indemnification Period shall be deemed to have ended pursuant to clause (B) above unless the Escrow Agent receives prior written notice from Parent and the Escrow Participants' Representative that the Indemnification Period ended pursuant to clause (A) above.

     (b)     Claims and Payment; Release from Indemnity Escrow Fund.

     (i)     Notwithstanding any other provisions of this Agreement, if at any time the Escrow Agent shall receive joint written instructions executed by each of Parent and the Escrow Participants' Representative ("Joint Written Instructions"), to release all or a portion of the Indemnity Escrow Fund from the Indemnity Escrow Account, then on the fifth Business Day following receipt of such Joint Written Instructions, subject to Section 6, the Escrow Agent shall release from the Indemnity Escrow Account all or such portion of the Indemnity Escrow Fund in accordance with such Joint Written Instructions. The Escrow Participants' Representative and Parent will cooperate in good faith in executing such Joint Written Instructions wherever reasonably necessary to ensure distributions of escrowed funds to the party entitled thereto under the terms of this Agreement or the Merger Agreement.

     (ii)     In accordance with Article VIII of the Merger Agreement, Parent may deliver to the Escrow Participants' Representative and the Escrow Agent a written request (a "Payment Request") for the payment of a claim (a "Claim") for indemnification for Losses under Article VIII of the Merger Agreement. Any Payment Request shall be deemed to be duly delivered if given in accordance with Section 11 hereof. The Payment Request shall set forth the amount requested and, in reasonable detail, the specific basis for the determination of the amount

- 2 -

of the Claim and as to why such Parent Indemnitee is entitled to the payment of such amount (to the extent then known by the Parent Indemnitee), provided that the Escrow Agent shall not be required to make any assessment as to whether the foregoing has been satisfied.

(iii)     The Escrow Participants' Representative may deliver to Parent and the Escrow Agent a written objection to all or any portion of the applicable Payment Request (an "Objection") on or prior to 5:00 P.M., Pacific Time, on the date that is ten (10) Business Days after a Payment Request is duly given in accordance with Section 11 hereof (with respect to a particular Payment Request, the "Objection Period").

(iv)     If the Escrow Participants' Representative fails to deliver an Objection to a particular Payment Request prior to termination of the Objection Period with respect to such Payment Request, the Escrow Agent is hereby authorized to and shall pay to the applicable Parent Indemnitee out of the Indemnity Escrow Account (other than the Representative Reserve Amount) an amount equal to the amount requested in such Payment Request (or if the Escrow Participants' Representative disputes only a portion of such Payment Request in accordance with Section 3(b)(v), an amount equal to the undisputed portion of such Payment Request). Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the expiration of the Objection Period. The Escrow Agent shall continue to hold any amounts remaining in the Indemnity Escrow Account following the payment of such Payment Request in accordance with the terms and conditions of this Agreement.

(v)     If the Escrow Participants' Representative delivers an Objection prior to the termination of the Objection Period with respect to all or any portion of a Payment Request, the Escrow Agent shall not disburse, and shall continue to hold in the Indemnity Escrow Account, the disputed portion of the Payment Request (but shall distribute the undisputed portion thereof in accordance with Section 3(b)(iv)), pending receipt of either (i) Joint Written Instructions, specifying the agreement of Parent and the Escrow Participants' Representative as to the action to be taken by the Escrow Agent in respect of such Payment Request and the specific amount of payment to be made to the applicable Parent Indemnitee (the "Payment Instructions") or (ii) a notice from either Parent or the Escrow Participants' Representative stating that such Payment Request has been submitted to a State or Federal court of competent jurisdiction for judgment (a "Court Filing") and that a judgment with respect to such matters has been rendered (a "Judgment Notice") which is accompanied by a copy of a final, non-appealable order of such court (an "Order"), pursuant to which such court has determined whether and to what extent the Parent Indemnitee is entitled to the amount requested in the Payment Request. Upon receipt of Payment Instructions or a Judgment Notice and Order, as applicable, the Escrow Agent shall thereafter act in accordance with Section 3(b)(vi) or Section 3(b)(vii) below, as applicable.

(vi)     Upon receipt by the Escrow Agent of Payment Instructions, if such Payment Instructions indicate that the Parent Indemnitee is entitled to payment in respect of all or any portion of the applicable Payment Request, then the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account (other than the Representative Reserve Amount) and pay to the Parent Indemnitee the amount indicated in such Payment Instructions. Any payment made in accordance with the preceding sentence shall be made by the Escrow

- 3 -

Agent within five (5) Business Days following the date on which such Payment Instructions are received by the Escrow Agent. If such Payment Instructions indicate that the Parent Indemnitee is not entitled to all or any portion of the amount claimed in such Payment Request, then the Escrow Agent is hereby authorized to and shall (i) pay to the Parent Indemnitee out of the Indemnity Escrow Account (other than the Representative Reserve Amount) that portion, if any, of the amount claimed in the Payment Request to which such Parent Indemnitee is entitled as indicated in such Payment Instructions, and (ii) continue to hold the remaining Indemnity Escrow Fund in the Indemnity Escrow Account in accordance with the terms of this Agreement.

(vii)    Upon receipt by the Escrow Agent of a Judgment Notice and an Order with respect to any Payment Request, then the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account (other than the Representative Reserve Amount) and pay to the applicable Parent Indemnitee the amount that is specifically set forth in such Order to be paid to such Parent Indemnitee. Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the date on which the Escrow Agent receives a copy of such Judgment Notice and Order.

(viii)    Upon receipt by the Escrow Agent of a written request from the Escrow Participants' Representative for reimbursement for documented out-of-pocket expenses (including expenses to be paid pursuant to this Agreement) or reasonable fees and disbursements of counsel ("Expenses") incurred by the Escrow Participants' Representative (a "Reimbursement Request"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants' Representative from the Indemnity Escrow Fund such amounts as are necessary to reimburse the Escrow Participants' Representative for such Expenses to a maximum amount equal to the unpaid Representative Reserve Amount.    In the event that the Escrow Participants' Representative has submitted Reimbursement Requests requesting reimbursement for Expenses that in the aggregate are in excess of the Representative Reserve Amount ("Excess Expenses"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants' Representative, from the amounts that are otherwise to be released to the Escrow Participants pursuant to Section 3(b)(x) of this Agreement, such amounts as are necessary to reimburse the Escrow Participants' Representative for any such Excess Expenses.

(ix)    As promptly as practicable following each disbursement of any portion of the Indemnity Escrow Fund, the Escrow Agent shall send a written statement to each of the Escrow Participants' Representative and Parent stating the amount of the disbursement and the amount of funds then remaining in the Indemnity Escrow Account.

(x)    On the first Business Day following the expiration of the Indemnification Period (the "Release Date"), the Escrow Agent is hereby authorized to and shall pay to the Escrow Participants all amounts remaining in the Indemnity Escrow Fund on the Release Date after payment of all Excess Expenses; provided, however, if the Escrow Agent shall have received before 5:00 P.M., Pacific Time on the Business Day immediately prior to the Release Date any one or more Payment Requests which have not been paid in accordance with this Section 3 (any such Payment Request being referred to as an "Outstanding Claim"), the Escrow Agent shall retain and continue to hold in the Indemnity Escrow Account in accordance with the terms hereof an amount equal to the aggregate maximum amount requested in all such Outstanding Claims (the "Retained Amount") until fully resolved; provided, further, that,

- 4 -

following payment of any Excess Expenses, the Escrow Agent is hereby authorized to and shall release from the Indemnity Escrow Account to the Escrow Participants all or such portion of the Retained Amount that was withheld due to an Outstanding Claim within five (5) Business Days of receipt by the Escrow Agent of a copy of a Judgment Notice and Order pursuant to which a court has determined that the Parent Indemnitee was not entitled under the Merger Agreement to the amount requested in the Payment Request for such Outstanding Claim. Any amounts to be paid by the Escrow Agent to the Escrow Participants shall be paid according to the percentage set forth besides each Escrow Participant's name on Schedule 1 hereto.

(c)     Release from Working Capital Escrow Fund. Upon receipt by the Escrow Agent of Joint Written Instructions regarding the release of funds from the Working Capital Escrow Fund from the Working Capital Escrow Account, then the Escrow Agent is hereby authorized to and shall release funds from the Working Capital Escrow Account to the persons and in the amounts set forth in such Joint Written Instructions. Any payment made in accordance with the preceding sentence shall be made by the Escrow Agent within five (5) Business Days following the date on which the Escrow Agent receives a copy of such Joint Written Instructions.

4.      Investment of Funds.

(a)     Eligible Investments. The Escrow Agent shall invest any cash in the Escrow Funds in such Eligible Investments (as defined below) as Parent and the Escrow Participants' Representative from time to time direct by written notice to the Escrow Agent. For purposes of this Agreement, an "Eligible Investment" means investment in (i) obligations issued or guaranteed by the United States of America or any agency or instrumentality thereof (provided that the full faith and credit of the United States is pledged in support thereof) that, in each case, mature within one (1) year from the date of its acquisition by the Escrow Funds, (ii) obligations (including certificates of deposit and banker's acceptances) of any domestic commercial bank having capital and surplus in excess of $1,000,000,000 that, in each case, matures within one (1) year from the date of its acquisition by the Escrow Funds, (iii) repurchase obligations for underlying securities of the type described in clause (i), or (iv) a U.S. Bank Money Market Account, as further described in Exhibit A hereto. If otherwise qualified, obligations of the Escrow Agent or any of its affiliates shall qualify as Eligible Investments. Notwithstanding the foregoing, Eligible Investments shall be limited to those instruments readily obtainable and routinely offered by the Escrow Agent's Corporate Trust Services. In the absence of written notice from Parent and the Escrow Participants' Representative to the contrary, the Escrow Funds shall be invested pursuant to clause (iv) of this Section 4(a).

(b)     Escrow Agent Not Responsible For Investment Decisions. All earnings received from the investment of the Escrow Funds (the "Escrow Earnings") shall be remitted to the Escrow Participants in accordance with Section 4(c) below. The Escrow Agent shall have no liability for any investment losses, including without limitation any market loss on any investment liquidated prior to maturity in order to make a payment required hereunder.

(c)     Tax Treatment. The parties hereto agree that, for U.S. tax reporting purposes, all Escrow Earnings shall be treated as earned by Parent and as paid by Parent to the Escrow Participants in accordance with the percentages set forth beside the Escrow Participants' names on Schedule 1 hereto. The Escrow Agent shall report such Escrow Earnings in a manner

- 5 -

consistent therewith and shall distribute to the Escrow Participants out of the Escrow Funds, prior to December 31st of each year during the Indemnification Period, a distribution equal to the amount of the Escrow Earnings in accordance with the percentages set forth beside the Escrow Participants' names on <u>Schedule 1</u> hereto. The payment of such Escrow Earnings to the Escrow Participants represents interest for the deferral of payment of a portion of the merger consideration resulting from the escrow arrangement, which represents an installment obligation of Parent, and Parent shall report such distributions for U.S. income tax purposes as interest paid on such installment obligation. Additional interest shall be imputed to distributions from the Escrow Funds to the Escrow Participants to the extent necessary to comply with the provisions of Sections 483, 1274 and 1275 of the Code and the regulations thereunder ("<u>Imputed Interest</u>").

(d)     <u>Certification of Taxpayer Identification Number</u>. Parent agrees to provide the Escrow Agent with its tax identification number upon the execution and delivery of this Agreement. In addition, each Escrow Participant shall have signed and returned Forms W-9 (or original Forms W-8 BEN, in case of non-U.S. persons) to the Escrow Agent (or to the Escrow Agent in its capacity as the Paying Representative under the Merger Agreement) prior to any of the Escrow Funds or Escrow Earnings being released to such Escrow Participant. The Interested Parties understand that, in the event that the appropriate tax identification numbers are not certified to the Escrow Agent, the Internal Revenue Code, as amended from time to time, may require withholding of a portion of the Escrow Earnings or any other payment made out of the Escrow Funds to the Interested Parties or the Escrow Participants. Each of the Interested Parties agrees to instruct the Escrow Agent in writing with respect to the Escrow Agent's responsibility for reporting, withholding any additional taxes, assessments or other governmental charges, and to instruct the Escrow Agent with respect to any certifications and governmental reporting that may be required under any laws or regulations that may be applicable in connection with its acting as Escrow Agent under this Agreement (including with respect to Imputed Interest, for which instructions shall be provided by Parent); provided that the Escrow Agent shall make all required withholdings for distributions to Interested Parties and/or Escrow Participants that have not signed and returned Forms W-9 (or original Forms W-8 BEN, in case of non-U.S. persons) to the Escrow Agent (or to the Escrow Agent in its capacity as the Paying Representative under the Merger Agreement) without further instruction from the Interested Parties.

5.     <u>Concerning the Escrow Agent</u>.

(a)     Each Interested Party acknowledges and agrees that the Escrow Agent (i) shall not be responsible for any of the agreements referred to or described herein (including without limitation the Merger Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, (ii) shall be obligated only for the performance of such duties as are expressly and specifically set forth in this Agreement on its part to be performed, each of which is ministerial (and shall not be construed to be fiduciary) in nature, and no implied duties or obligations of any kind shall be read into this Agreement against or on the part of the Escrow Agent, (iii) shall not be obligated to take any legal or other action hereunder which might in its judgment involve or cause it to incur any expense or liability unless it shall have been furnished with acceptable indemnification, (iv) may rely on and shall be protected in acting or refraining from acting upon any written notice, instruction (including, without limitation, wire transfer instructions, whether incorporated herein or provided in a separate written instruction), instrument, statement, certificate, request or other document

- 6 -

furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper person, and shall have no responsibility or duty to make inquiry as to or to determine the genuineness, accuracy or validity thereof (or any signature appearing thereon), or of the authority of the person signing or presenting the same, and (v) may consult counsel satisfactory to it, including in-house counsel, and the opinion or advice of such counsel in any instance shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with the opinion or advice of such counsel.

(b)     The Escrow Agent shall not be liable to anyone for any action taken or omitted to be taken by it hereunder except in the case of the Escrow Agent's gross negligence, bad faith or willful misconduct in breach of the terms of this Agreement. In no event shall the Escrow Agent be liable for indirect, punitive, special or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Escrow Agent has been informed of the likelihood of such loss or damage and regardless of the form of action.

(c)     The Escrow Agent shall have no more or less responsibility or liability on account of any action or omission of any book-entry depository, securities intermediary or other subescrow agent employed by the Escrow Agent than any such book-entry depository, securities intermediary or other subescrow agent has to the Escrow Agent, except to the extent that such action or omission of any book-entry depository, securities intermediary or other subescrow agent was caused by the Escrow Agent's own gross negligence, bad faith or willful misconduct in breach of this Agreement.

(d)     The Escrow Agent is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or such affiliate is acting as a subagent of the Escrow Agent or for any third person or dealing as principal for its own account.

(e)     Notwithstanding any term appearing in this Agreement to the contrary, in no instance shall the Escrow Agent be required or obligated to distribute any Escrow Funds (or take other action that may be called for hereunder to be taken by the Escrow Agent) sooner than two (2) Business Days after (i) it has received the applicable documents required under this Agreement in good form, or (ii) passage of the applicable time period (or both, as applicable under the terms of this Agreement), as the case may be.

(f)     Unless and except to the extent otherwise expressly set forth herein, all deposits and payments hereunder, or pursuant to the terms hereof (including without limitation all payments to the Escrow Agent pursuant to Section 6), shall be in U.S. dollars.

6.     Compensation, Expense Reimbursement and Indemnification.

(a)     Each of Parent and the Escrow Participants' Representative (on behalf of the Escrow Participants and not individually) agrees, jointly and severally to (i) pay or reimburse the Escrow Agent for its attorney's fees and expenses incurred in connection with the preparation of this Agreement and (ii) reimburse the Escrow Agent on demand for all costs and expenses incurred in connection with the administration of this Agreement or the escrow created hereby or

- 7 -

the performance or observance of its duties hereunder which are in excess of its compensation for normal services hereunder, including without limitation, payment of any legal fees and expenses incurred by the Escrow Agent in connection with resolution of any claim by any party hereunder.

(b)    Parent shall pay the Escrow Agent's compensation for its normal services hereunder in accordance with the fee schedule attached hereto as __Exhibit B__ and made a part hereof, which may be subject to change hereafter by the Escrow Agent on an annual basis.

(c)    Each of Parent and the Escrow Participants' Representative (on behalf of the Escrow Participants and not individually) covenants and agrees, jointly and severally, to indemnify the Escrow Agent (and its directors, officers and employees) and hold it (and such directors, officers and employees) harmless from and against any loss, liability, damage, cost and expense of any nature incurred by the Escrow Agent arising out of or in connection with this Agreement or with the administration of its duties hereunder, including but not limited to attorney's fees, tax liabilities (other than income tax liabilities associated with the Escrow Agent's fees), any liabilities or damages that may result from any inaccuracy or misrepresentation made in any tax certification provided to the Escrow Agent, and other costs and expenses of defending or preparing to defend against any claim of liability unless and except to the extent such loss, liability, damage, cost and expense shall be caused by the Escrow Agent's gross negligence, bad faith or willful misconduct. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement.

(d)    Notwithstanding anything herein to the contrary, the Escrow Agent shall have and is hereby granted a possessory lien on and security interest in the Escrow Funds, and all proceeds thereof, to secure payment of all amounts owing to it from time to time hereunder, whether now existing or hereafter arising. The Escrow Agent shall have the right to deduct from the Escrow Funds, and proceeds thereof, any such sums, upon one (1) Business Day's notice to the Interested Parties of its intent to do so.

7.    __Resignation__. The Escrow Agent may at any time resign as escrow agent hereunder by giving thirty (30) days' prior written notice of resignation to Parent and the Escrow Participants' Representative. Prior to the effective date of the resignation as specified in such notice, Parent will issue to the Escrow Agent a written instruction authorizing redelivery of the Escrow Funds to a bank or trust company that it selects as successor to the Escrow Agent hereunder subject to the consent of the Escrow Participants' Representative (which consent shall not be unreasonably withheld or delayed). If, however, Parent shall fail to name such a successor escrow agent within twenty (20) days after the notice of resignation from the Escrow Agent, the Escrow Participants' Representative shall be entitled to name such successor escrow agent. If no successor escrow agent is named by Parent or Escrow Participants' Representative, the Escrow Agent may apply to a court of competent jurisdiction for appointment of a successor escrow agent.

8.    Dispute Resolution. It is understood and agreed that, should any dispute arise with respect to the delivery, ownership, right of possession, and/or disposition of the Escrow Funds, or should any claim be made upon the Escrow Agent or the Escrow Funds by a third party, the Escrow Agent upon receipt of notice of such dispute or claim is authorized and shall be

1-SF/7558515.9

entitled (at its sole option and election) to retain in its possession without liability to anyone, all or any of the Escrow Funds until such dispute shall have been settled either by the mutual written agreement of the parties involved or by a final order, decree or judgment of a court in the United States of America, the time for perfection of an appeal of such order, decree or judgment having expired. The Escrow Agent may, but shall be under no duty whatsoever to, institute or defend any legal proceedings which relate to the Escrow Funds.

9. <u>Consent to Jurisdiction and Service</u>. Each of the Interested Parties and each other party hereto hereby irrevocably and unconditionally submits to the exclusive jurisdiction of either (a) the state courts located in San Francisco, California or (b) any Federal court of the United States of America sitting in the Northern District of California, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby (and each agrees that no such action, suit or proceeding relating to this Agreement shall be brought by it or any of its affiliates except in such courts). Each of the parties further agrees that, to the fullest extent permitted by applicable law, service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth below shall be effective service of process for any action, suit or proceeding in California with respect to any matters to which it has submitted to jurisdiction as set forth above in the immediately preceding sentence. Each of the parties irrevocably and unconditionally waives (and agrees not to plead or claim) any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in (a) the state courts located in San Francisco, California or (b) any Federal court of the United States of America sitting in the Northern District of California, or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

10. <u>Force Majeure</u>. The Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control. Such acts shall include but not be limited to acts of God, strikes, lockouts, riots, acts of war, epidemics, governmental regulations superimposed after the fact, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters.

11. <u>Notices; Wiring Instructions</u>.

(a) All notices, requests, claims, demands and other communications under this Agreement shall be in writing and shall be deemed given if delivered personally, by facsimile (which is confirmed) or sent by overnight courier (providing proof of delivery) to the parties hereto at the following addresses (or at such other address for a party hereto as shall be specified by like notice):

If to Parent or Merger Sub, to:

Autonomy Corporation plc
Cambridge Business Park
Cowley Rd
Cambridge, CB4 0WS
United Kingdom
Facsimile: +44 (0) 1223 448041

- 9 -

Attention: Chief Executive Officer

with a copy (which shall not constitute notice) to:

Morgan, Lewis & Bockius LLP
One Market Street, Spear Tower
San Francisco, California 94105
Facsimile: (415) 442-1001
Attention: William A. Myers, Esq.

If to Escrow Participants' Representative:

c/o General Atlantic Service Company, LLC
3 Pickwick Plaza
Greenwich, CT 06830
Attention: Christopher G. Lanning
Fax: (203) 302-3044

with a copy (which shall not constitute notice) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attention:    Matthew W. Abbott
              Douglas A. Cifu
Fax: (212) 757-3990

If to Escrow Agent:

U.S. Bank National Association
One California Street
Suite 2100
San Francisco, CA 94111
Tel:   (415) 273-4547
Fax:   (415) 273-4591

Notwithstanding the foregoing, notices addressed to the Escrow Agent shall be effective only upon receipt. If any notice or document is required to be delivered to the Escrow Agent and any other person, the Escrow Agent may assume without inquiry that each notice or document was received by such other person when it is received by the Escrow Agent.

(b)    Wiring Instructions. Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions (or by such method of payment and pursuant to such instruction as may have been given in advance and in writing to or by the Escrow Agent, as the case may be, in accordance with Section 11(a) above):

If to Autonomy Corporation plc:

- 10 -

Bank: *[name, city, state]*
ABA #: _____
Acct. #: _____
Attn: _____
Ref: _____

If to the Escrow Agent:

Bank:  U.S. Bank National Association
ABA : 091000022
BNF:  U.S. Bank Trust N.A.
A/C: 1801 2116 7365
OBI: Corporate Trust Services
Ref: *[escrow customer name and SEI #]*
Attn: Michael P. Susnow, Corporate Trust, SF

12.    Miscellaneous.

(a)    Binding Effect; Successors. This Agreement shall be binding upon the respective parties hereto and their heirs, executors, successors and assigns. If the Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Agreement) to, another corporation, the successor corporation without any further act shall be the successor Escrow Agent.

(b)    Modifications. This Agreement may not be altered or modified without the express written consent of the parties hereto. No course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion. Notwithstanding any other provision hereof, consent to an alteration or modification of this Agreement may not be signed by means of an e-mail address.

(c)    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICT OF LAWS RULES OR PROVISIONS (WHETHER OF THE STATE OF CALIFORNIA OR ANY OTHER JURISDICTION).

(d)    Reproduction of Documents. This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, and (b) certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, optical disk, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was

- 11 -

made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

(e)    Counterparts and Facsimile Execution. This Agreement may be executed in several counterparts, each of which shall be deemed to be one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

(f)    Customer Identification Program. Each of the Interested Parties acknowledge receipt of the notice set forth on Exhibit C attached hereto and made part hereof that information may be requested to verify their identities.

[Signature Page to Follow]

1-SF/7558515.9

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC

By: _____

Name: Andrew Kanter
Title: Chief Operating Officer


GA ESCROW, LLC


By:_____
Name:
Title:


U.S. BANK NATIONAL ASSOCIATION


By:_____
Name:
Title:

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC


By:_____
　Title:
　Name:


GA ESCROW, LLC


By:_____
Name:　　　Matthew Nimetz
Title:　　　A Managing Director


U.S. BANK NATIONAL ASSOCIATION


By:_____
Name:
Title:

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on its behalf as of the date first above written.

AUTONOMY CORPORATION PLC

By:_____
 Title:
 Name:


GA ESCROW, LLC


By:_____
Name:
Title:


U.S. BANK NATIONAL ASSOCIATION

By:_____
Name:
Title:    ANDREW FUNG
    VICE PRESIDENT

## EXHIBIT A

## U. S. BANK MONEY MARKET ACCOUNTS
## ACCOUNT DESCRIPTION AND TERMS

U.S. Bank money market accounts are U.S. Bank National Association ("U.S. Bank") deposit accounts designed to meet the needs of Corporate Escrow and other Corporate Trust customers of U. S. Bank. Accounts pay competitive variable interest rates, which are determined upon the customer's aggregated balance. Customer deposits are insured up to $100,000 per depositor pursuant to the Federal Deposit Insurance Corporation's insurance rules.

Interest rates currently offered on the accounts are determined at U. S. Bank's discretion and may change daily. U. S. Bank National Association uses the daily balance method to calculate interest on these accounts. This method applies a daily periodic rate to the principal in the accounts each day of the month and divides that figure by the number of days in the period. Interest on customer deposits begins to accrue on the business day funds are credited to a U.S. Bank deposit account. Interest is compounded on a monthly basis.

The owner of the accounts is U. S. Bank National Association as agent for its customers. All account deposits and withdrawals are performed by U.S. Bank National Association.

# EXHIBIT B

## ESCROW AGENT FEE SCHEDULE

**EXHIBIT C**

**CUSTOMER IDENTIFICATION PROGRAM NOTICE**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions (which includes the Escrow Agent) to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

Any capitalized term used without definition in this Exhibit C is used with the meaning assigned to such term in the Escrow Agreement of which this Exhibit C is a part.

1-SF/7558515.9



11 September 2007

BY FAX AND POST

GA Escrow, LLC
c/o General Atlantic Service Company, LLC
3 Pickwick Plaza
Greenwich, CT 06830
USA
Attention:      Christopher G. Lanning
Facsimile:      (203) 302-3044

Dear Sirs,

**Re:      Zantaz, Inc. Closing Working Capital Statement**

Reference is made to the Agreement and Plan of Merger dated as of 3 July 2007 ("Merger Agreement") by and among Autonomy Corporation plc ("Parent"), Antelope Acquisition Corp., Zantaz, Inc. (the "Company"), and GA Escrow, LLC, as Escrow Participants' Representative. Capitalized terms used herein but not otherwise defined shall have the meanings attributed to such terms in the Merger Agreement.

Attached hereto as <u>Exhibit A</u> is a calculation of Closing Working Capital as of the Closing Date which has been prepared by Parent in accordance with Section 2.2 of the Merger Agreement. This letter, including <u>Exhibit A</u>, shall constitute the Closing Working Capital Statement (as defined in the Merger Agreement) pursuant to Section 2.2(a) of the Merger Agreement. As set forth in <u>Exhibit A</u>, the amount of Closing Working Capital is less than $-8,900,000, which is therefore less than $-4,900,000 by in excess of $4,000,000. Because the Working Capital Escrow Fund totals $4,000,000, for purposes of the adjustment of Merger Consideration pursuant to Section 2.3 of the Merger Agreement only, the Deficit Amount shall be $4,000,000. The calculation of Closing Net Working Capital has been prepared by Parent in accordance with GAAP applied on a basis consistent with the Company's application of GAAP in its preparation of the Balance Sheet, except as set forth on <u>Exhibit J</u> to the Merger Agreement.

In accordance with Section 2.2 of the Merger Agreement, the Closing Working Capital Statement will become final and binding 45 days from today unless you timely notify Parent of any disagreements with it.

Please feel free to contact me with any questions.

Sincerely,

Andrew M Kanter
Chief Operating Officer

Page 1



Cc:     Matthew W. Abbott, Esq. and Douglas A. Cifu, Esq.
        Paul, Weiss, Rifkind, Wharton & Garrison LLP
        Facsimile: (212) 757-3990

        William A. Myers, Esq.
        Morgan, Lewis & Bockius LLP
        Facsimile: (415) 442-1001

Autonomy Corporation plc, Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, U.K.
Phone: +44 (0) 1223 448 000, Fax: +44 (0) 1223 448 001, Email: autonomy@autonomy.com

1-SF/7597188.1



Exhibit A

See attached.

Autonomy Corporation plc, Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, U.K.
Phone: +44 (0) 1223 448 000, Fax: +44 (0) 1223 448 001, Email: autonomy@autonomy.com
1-SF/7597188.1

**Closing working capital statement**

| | Closing Balance Sheet | | | | | King - accrued but not | Acquisition Costs Accrued | Adj Balance Sheet |
|---|---|---|---|---|---|---|---|---|
| | July 20, 2007 | Autonomy License | FAST | CD Settlement | Severance | paid | For | July 20, 2007 |
| **ASSETS** | | | | | | | | |
| Current assets | | | | | | | | |
| Cash and cash equivalents | $7,347 | | | $3,160 | | | | $10,507 |
| Accounts receivable, net | 22,094 | | | | | | | 22,094 |
| Prepaid expenses and other current assets | 6,520 | (815) | (739) | (3,160) | | | | 1,806 |
| Deferred tax asset | 511 | | | | | | | 511 |
| **Total current assets** | **$36,472** | **($815)** | **($739)** | **$0** | **$0** | **$0** | **$0** | **$34,918** |
| Goodwill | 38,593 | | | | | | | 38,593 |
| Intangible assets, net | 8,571 | | | | | | | 8,571 |
| Property and equipment, net | 20,250 | | | | | | | 20,250 |
| Deferred Income Tax | 1,832 | | | | | | | 1,832 |
| Other assets | 339 | 815 | 739 | | | | | 1,893 |
| **TOTAL ASSETS** | **$106,057** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$106,057** |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | | | | | |
| Current liabilities | | | | | | | | |
| Accounts payable | 5,184 | | | | | | | 5,184 |
| Accrued liabilities | 19,689 | | | | (853) | (3,850) | (211) | 14,775 |
| Notes payable-short term | 2,161 | | | | | | | 2,161 |
| Loan obligations - current portion | 0 | | | | | | | 0 |
| Deferred revenue - current portion | 21,397 | | | | | | | 21,397 |
| **Total current liabilities** | **$48,431** | **$0** | **$0** | **$0** | **($853)** | **($3,850)** | **($211)** | **$43,518** |
| Deferred tax liability | 897 | | | | | | | 897 |
| Loan obligations, net of current portion | 33,034 | | | | | | | 33,034 |
| Deferred revenue - net of current portion | 23,389 | | | | | | | 23,389 |
| Preferred Warrants Liability | 1,286 | | | | | | | 1,286 |
| **TOTAL LIABILITIES** | **$107,037** | **$0** | **$0** | **$0** | **($853)** | **($3,850)** | **($211)** | **$102,123** |
| **STOCKHOLDERS' EQUITY** | | | | | | | | |
| Preferred stock | 112,900 | | | | | | | 112,900 |
| APIC | 280 | | | | | | | 280 |
| Common stock | 23,954 | | | | | | | 23,954 |
| Warrants | 1,965 | | | | | | | 1,965 |
| Deferred stock-based compensation | (4) | | | | | | | (4) |
| Accumulated deficit | (140,076) | | | | 853 | 3,850 | 211 | (135,162) |
| **TOTAL STOCKHOLDERS' EQUITY** | **($980)** | **$0** | **$0** | **$0** | **$853** | **$3,850** | **$211** | **$3,934** |
| **TOTAL LIABILITIES & STOCKHOLDERS' EQUITY** | **$106,057** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$106,057** |
| | 0 | | | | | | | 0 |

| | | | | |
|---|---|---|---|---|
| **Current Asset - Less Cash** | $ | 29,125 | $ | 24,411 |
| **Current Liab - Less Debt** | $ | 46,270 | $ | 41,356 |
| **Net Working Capital** | $ | (17,145) | $ | (16,946) |

Closing Working Capital (as defined in the Merger Agreement) equals less than $-8,900,000, resulting in a Deficit Amount of $4,000,000

```
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
x                                                                           x
x                        TRANSACTION REPORT                                 x
x                        ――――――――――――――――――          SEP-11-2007 TUE 03:21 PM x
x                                                                           x
x   FOR:  MORGAN LEWIS &              14154421001                           x
x                                                                           x
x―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――x
x                                                                           x
x    SEND                                                                   x
x                                                                           x
x  DATE START    RECEIVER        TX TIME  PAGES TYPE       NOTE        M# DP x
x―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――x
x  SEP-11 03:20 PM 14506#0591130014#120   56"    5  FAX TX    OK       381   x
x                  33023044#                                                x
x―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――x
x                                                                           x
x                             TOTAL :       56S  PAGES:   5                  x
x                                                                           x
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
```

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
TEL: 415.442.1000
FAX: 415.442.1001
eFax: 977.432.9652
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

## FAX MESSAGE

**SEND TO**

| | | | |
|---|---|---|---|
| Name: | Christopher G. Lanning | Firm: | GA Escrow, LLC c/o General Atlantic Sercive Company, LLC |
| FAX #: | 203.302.3044 | Telephone #: | |
| Name: | Matthew W. Abbott & Douglas A. Cifu | Firm: | Paul, Weiss, Rifkind, Wahrton & Garrison LLP |
| FAX #: | 212.757.3990 | Telephone #: | |

**FROM**

| | | | |
|---|---|---|---|
| Name: | William A. Myers | Floor: | |
| Operator Sending: | | Telephone #: | 415.442.1307 |
| FAX #: | 877.432.9652 | Date Sent: | September 11, 2007 | No of Pages: *(including cover page)* | 5 |

**COMMENTS**

*Re: Autonomy Corporation plc*

THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE NAMED RECIPIENT(S). THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

```
                              TRANSACTION REPORT
                                                        SEP-11-2007 TUE 03:06 PM

      FOR:  MORGAN LEWIS &              14154421001


      BROADCAST

   DATE  START     RECEIVER           TX TIME   PAGES TYPE       NOTE          M#  DP

 SEP-11 03:05 PM 14506#0591130014#120 **'**"      0 FAX TX      BUSY          379
               33023044#
        02:54 PM 14506#0591130014#121 1'36"       5 FAX TX      OK            379
               27573990#

                                      TOTAL :       1M 36S  PAGES:   5
```

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
TEL: 415.442.1000
FAX: 415.442.1001
eFax: 877.432.9652
www.morganlewis.com

## Morgan Lewis
C O U N S E L O R S   A T   L A W

### FAX MESSAGE

| SEND TO | | | |
|---|---|---|---|
| Name: | Christopher G. Lanning | Firm: | GA Escrow, LLC c/o General Atlantic Sercive Company, LLC |
| FAX #: | 203.302.3044 | Telephone #: | |
| Name: | Matthew W. Abbott & Douglas A. Cifu | Firm: | Paul, Weiss, Rifkind, Wahrton & Garrison LLP |
| FAX #: | 212.757.3990 | Telephone #: | |

THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE NAMED RECIPIENT(S). THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

| FROM | | | |
|---|---|---|---|
| Name: | William A. Myers | Floor: | |
| Operator Sending: | | Telephone # | 415.442.1307 |
| FAX #: | 877.432.9652 | Date Sent: | September 11, 2007 | No of Pages: (including cover page) | 5 |

| COMMENTS |
|---|

Re:    *Autonomy Corporation plc*

# General Atlantic 

3 Pickwick Plaza
Greenwich, CT 06830
tel 203.629.8640
fax 203.302.3040

## *FAX TRANSMISSION*

| | | | |
|---|---|---|---|
| *To:* | Andrew M. Kanter | *From:* | Christopher G. Lanning |
| *Company:* | Autonomy Corporation plc | *Date:* | October 2, 2007 |
| *Fax Number:* | 44 1223 448 001 | *Total No. of Pages, Including Cover:* | 4 |
| *To:* | Michael Susnow | | |
| *Company:* | U.S. Bank National Association | | |
| *Fax Number:* | (415) 273-4591 | | |
| *CC:* | Matthew W. Abbott, Esq. and Doug Cifu, Esq. | | |
| *Company:* | Paul, Weiss, Rifkind,  Wharton & Garrison LLP | | |
| *Fax Number:* | 212-757-3990 | | |
| *CC:* | William A. Myers, Esq. | | |
| *Company:* | Morgan, Lewis & Bockius LLP | | |
| *Fax Number:* | (415) 442-1001 | | |
| *CC:* | David J. Segre, Esq. | | |
| *Company:* | Wilson Sonsini Goodrich & Rosati | | |
| *Fax Number:* | (650) 493-6811 | | |
| *Subject:* | Zantaz, Inc. Closing Working Capital | | |

Comments:

Please see attached.

*Greenwich    New York    Palo Alto    Düsseldorf   London    Singapore    Tokyo    Hong Kong    São Paulo*

General Atlantic

Three Pickwick Plaza
Greenwich, Connecticut 06830

tel 203 629 8600  fax 203 622 8818
www.generalatlantic.com

October 2, 20007

U.S Bank National Association
One California Street
Suite 200
San Francisco, CA 94111
Attention: Michael P. Susnow

Autonomy Corporation plc
Cambridge Business Park
Cowley Rd
Cambridge, CB4 0WS
United Kingdom
Attention: Chief Executive Officer

*Re: Zantaz, Inc. Notice of Objection*

Dear Sirs:

In a letter dated September 11, 2007 (the **"Notice of Claim"**), a copy of which is attached hereto as <u>Annex A</u>, Autonomy Corporation ("**Parent**") purports to assert certain claims under Section 8.2(a) of that certain Agreement and Plan of Merger, dated as of July 3, 2007 (the "Merger Agreement"), by and among Parent, Zantaz, Inc. ("Zantaz") and certain other persons, aggregating approximately $8,000,000 purportedly relating to:

(1) undisclosed liabilities for fixed assets totaling approximately $2,000,000;

(2) undisclosed accounts payable totaling approximately $2,000,000;

(3) inadequate provision for uncollectible accounts receivable of approximately $2,000,000; and

(4) inadequate provision for accrued liabilities of approximately $2,000,000.

Under Section 3(b) of the Escrow Agreement that is set forth as Exhibit F to the Merger Agreement (the "Escrow Agreement"), a "Claim" (as defined therein) must be made by means of a "Payment Request" (as defined therein) that sets forth "the amount requested and, in reasonable detail, the specific basis for the determination of the amount of the Claim and as to why such Parent Indemnitee is entitled to the payment of such amount (to the extent then known by the Parent Indemnitee)...."

This letter is to inform each of Parent and the Escrow Agent (as defined in the Escrow Agreement) that the undersigned Escrow Participants' Representative respectfully submits that the Notice of Claim is deficient and does not meet the requirements of a Payment Request under Section 3(b) for the following reasons:

(i) the Notice of Claim does not state the *specific basis for the determination of the amount* of the purported claims, but rather the dollar amounts of the purported claims are merely asserted as approximations and balance sheet line items noted without calling out the specific fixed asset liabilites that were alleged to be undisclosed, the specific accounts payable that are alleged to have been undisclosed, the specific accounts receivable that are alleged to be uncollectible, nor the specific liabilities that are alleged to have been inadequately accrued for; and

(ii) the Notice of Claim does not set forth any explanation as to what representation or warranty Parent is alleging as having been breached by Zantaz that would result in Parent *being entitled to payment* under the indemnification provisions of the Merger Agreement.

As such, it is the position of the undersigned that for the Notice of Claim to meet the requirements of a Payment Request within the meaning of the Escrow Agreement, these deficiencies must be remedied through delivery of a documentation meeting these requirements including the items noted at paragraphs (i) and (ii) above. The undersigned Escrow Participants' Representative looks forward to reviewing these required details in a compliant Payment Request when and if such documentation is duly delivered by Parent.

In a letter dated September 11, 2007 (the "**Working Capital Statement**"), a copy of which is attached hereto as Annex B, Parent purported to deliver to undersigned Escrow Participants' Representative s the "Closing Working Capital Statement" as defined in and pursuant to Section 2.2(a) of the Merger Agreement. Under Section 2.2(a) of the Merger Agreement, such Closing Working Capital Statement is required to be delivered to the Escrow Participants' Representative "within 30 days after the Closing Date...." The Closing Date (as defined in the Merger Agreement) occurred on July 23, 2007.

This letter is to inform each of Parent and the Escrow Agent that the undersigned Escrow Participants' Representative respectfully submits that the Working Capital Statement is deficient in that it was not delivered until September 11, 2007, which is more than 30 days after the Closing Date. As such, the undersigned disputes that the amounts set forth in the Working Capital Statement constitute the "Final Working Capital" as defined in and pursuant to Section 2.3(a) of the Merger Agreement.

If you have any questions regarding the foregoing, please feel free to contact Chris Lanning at 203-629-8640.

Sincerely,

GA ESCROW, LLC

By: _____
Name: Thomas J. Murphy
Title:  Managing Director

cc:   Morgan, Lewis & Bockius LLP
One Market Street, Spear Tower
San Francisco, CA 94105
Facsimile: (415) 442-1001
Attention: William A. Myers

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attention: Matthew W. Abbott & Douglas A. Cifu

Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Attention: David J. Segre