1   SHARTSIS FRIESE LLP
    ARTHUR J. SHARTSIS (Bar #51549)
2   GREGG S. FARANO (Bar #221505)
    KATHERINE R. CALDWELL (Bar #247390)
3   One Maritime Plaza, Eighteenth Floor
    San Francisco, CA  94111
4   Telephone:  (415) 421-6500
    Facsimile:  (415) 421-2922
5   Email:  ashartsis@sflaw.com

6   Attorneys for Plaintiff
    GA ESCROW, LLC

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  GA ESCROW, LLC, a Delaware limited          Case No.  C-08-1784 SI
    liability company, a Representative for the
12  Escrow Participants,                        **OPPOSITION TO DEFENDANT
                                                AUTONOMY CORPORATION PLC'S
13                  Plaintiff,                  NOTICE OF MOTION AND MOTION TO
                                                DISMISS PURSUANT TO RULE 12(B)(6)
14          v.                                  OF THE FEDERAL RULES OF CIVIL
                                                PROCEDURE; MEMORANDUM OF
15  AUTONOMY CORPORATION PLC, a                 POINTS AND AUTHORITIES IN
    corporation formed under the laws of        SUPPORT THEREOF**
16  England and Wales,
                                                Date:   July 11, 2008
17                  Defendants.                 Time:   9:00 AM
                                                Judge:  The Hon. Susan Ilston
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................1

III.    FACTUAL BACKGROUND ...............................................................................2

IV.     LEGAL STANDARD ...........................................................................................3

V.      LEGAL ARGUMENT ..........................................................................................4

      A.      GA Escrow Has Successfully Stated A Cause Of Action For Fraud......................5

            1.      The Merger Agreement does not shorten California's three-year
                  statute of limitations on an action for fraud or impose a 10-day
                  discovery period ........................................................................................6

            2.      GA Escrow has properly pleaded damages resulting from
                  Autonomy's fraudulent conduct...............................................................7

            3.      GA Escrow has satisfied the pleading requirements of Rule 9(b) .............9

      B.      GA Escrow Has Successfully Stated A Cause Of Action For Breach Of
         The Implied Covenant Of Good Faith And Fair Dealing........................................9

      C.      GA Escrow Has Successfully Stated A Cause Of Action For Breach Of
         Contract ...............................................................................................................11

            1.      Autonomy's inadequate Notice of Claim was a breach of the
                  Agreements .............................................................................................11

            2.      GA Escrow's breach of contract claim is also protected by the
                  delayed discovery rule ............................................................................12

            3.      Autonomy's reliance on the Barton case is misplaced...........................13

            4.      Autonomy's covenant/condition argument is invalid.............................14

            5.      GA Escrow has properly alleged damages ............................................15

      D.      GA Escrow Has Successfully Stated A Cause Of Action For Unjust
         Enrichment And Is Entitled To An Accounting ...................................................16

VI.     CONCLUSION ...................................................................................................17

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.:
C-08-1784 JL

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adam v. Silicon Valley Bancshares*,
884 F. Supp. 1398 (N.D. Cal. 1995)....................................................................4

*Auster Oil & Gas, Inc. v. Stream*,
764 F.2d 381 (5th Cir. 1985)...............................................................................4

*Balfour, Guthrie & Co. v. Hansen*,
227 Cal. App. 2d 173 (1964)..............................................................................12

*Barton v. Elexys Int'l, Inc.*,
62 Cal. App.4th 1182 (1998) .........................................................................13, 14

*Britschgi v. McCall*,
41 Cal.2d 138 (1953)....................................................................................14, 15

*Capehart v. Heady*,
206 Cal.App.2d 386 (1962)................................................................................13

*Charnay v. Cobert*,
145 Cal.App.4th 170 (2006) ..............................................................................13

*Civic W. Corp. v. Zila Indus., Inc.*,
66 Cal. App. 3d 1 (1977)...................................................................................17

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
153 Cal.App.4th 1308 (2007)...............................................................................6

*Fageol Truck & Coach Co. v. Pac. Indem. Co.*,
18 Cal.2d 748 (1941).........................................................................................13

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997)...............................................................................4

*Goehring v. Chapman Univ.*,
121 Cal. App.4th 353 (2004) ...............................................................................8

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal.4th 317 (2000)........................................................................................10

*Hall v. City of Santa Barbara*,
833 F.2d 1270 (9th Cir. 1986).............................................................................4

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) (*en banc*)................................................................9

*Lazar v. Superior Court*,
12 Cal. App. 4th 631 (1996) ................................................................................5

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

Case No.:
C-08-1784 JL

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

*Lectrodryer v. Seoulbank,*
        77 Cal. App. 4th 723 (2000) .................................................................16

4

*Lucas v. Dept. of Corr.,*
        66 F.3d 245 (9th Cir. 1995)...................................................................4

5

6

*Manshardt v. Fed. Judicial Qualifications Comm.,*
        401 F.3d 1014 (9th Cir. 2005)...............................................................16

7

*Moreno v. Sanchez,*
        106 Cal.App.4th 1415 (2003)................................................................7

8

9

*NL Indus., Inc. v. Kaplan,*
        792 F.2d 896 (9th Cir. 1986).................................................................3

10

*Notrica v. State Comp. Ins. Fund,*
        70 Cal. App. 4th 911 (1999) ..................................................................10

11

12

*State Farm Mut. Auto. Ins. v. Allstate Ins.,*
        9 Cal.App.3d 508 (1970) .................................................................15, 16

13

*Walling v. Beverly Enters.,*
        476 F.2d 393 (9th Cir. 1973).................................................................9

14

15

*Watts v. Crocker-Citizens Nat'l Bank,*
        132 Cal. App. 3d 516 (1982) .................................................................12

16

*Weatherly v. Universal Music Publ'g Group,*
        125 Cal. App. 4th 913 (2004)..................................................6, 7, 12, 13

17

18

*Westland Water Dist. v. Firebaugh Canal,*
        10 F.3d 667 (9th Cir. 1993)....................................................................3

19

**Statutes**

20

California Code of Civil Procedure
        § 337 ............................................................................................13
        § 338(d)............................................................................................6

21

22

**Rules**

23

Federal Rules of Civil Procedure.......................................................................4
        Rule 8..........................................................................................4, 9
        Rule 8(a).........................................................................................4
        Rule 9(b)......................................................................................2, 9
        Rule 12(b)(6) ...........................................................................passim

24

25

26

27

28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

Case No.
C-08-1784 JL

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

# TABLE OF AUTHORITIES

**Page(s)**

## Other Authorities

3 *Witkin, Cal. Procedure* (2d ed. 1971)
    *Pleading*, § 674 ......................................................................................................17

5A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure*
    § 1357 (2d ed. 1990)....................................................................................................3

Plaintiff GA Escrow, LLC ("GA Escrow") respectfully submits this memorandum in opposition to the Motion to Dismiss ("Motion") filed by Defendant Autonomy Corporation PLC ("Autonomy"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

This is a case about a notice (the "Notice of Claim") submitted by a purchaser of a business to obtain the release of funds held in escrow, which notice now appears to have been submitted without any legitimate basis.  As shareholder representative, GA Escrow seeks only to protect the selling shareholders from an unjustified and unsubstantiated withholding of funds owed to them under the terms of the parties' Merger Agreement.  On this Motion to Dismiss (the "Motion"), however, Autonomy seeks to keep the escrowed funds it obtained by means of its fraudulent notice, without any discovery at all into GA Escrow's claims.  Autonomy's motion should be denied.

Autonomy's Notice of Claim was inadequate to establish a "specified" loss and now appears to have been fraudulent.  Nowhere in the transaction documents is it contemplated that payment will be made for "approximate" amounts, and nowhere is it contemplated that Autonomy will be paid for losses it has not legitimately incurred.  GA Escrow seeks, and has always sought, a fair determination of a sum certain that is subject to indemnification for a loss actually suffered.  Autonomy's nine month refusal to provide any support whatsoever to substantiate its indemnification claim for losses of "approximately" $8 million is compelling evidence that it never had any basis on which to make its original claim, and committed a fraud. Accordingly, GA Escrow should be permitted to proceed on its claims against Autonomy.

Autonomy seeks to hide behind a 10-day objection period in an attempt to shield itself from the consequences of its fraudulent actions and to retain payments obtained under false pretenses.  California law, however, does not permit such maneuvering, and, for the reasons set out more fully below, Autonomy's attempts to discredit GA Escrow's valid and properly pleaded claims should be rejected, and Autonomy's Motion should be denied.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether GA Escrow's claims against Autonomy for breach of contract, breach of

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

the implied covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment and accounting, meet the applicable pleading standards under Federal Rule of Civil Procedure 12(b)(6).

2.    Whether GA Escrow's claim against Autonomy for fraud meets the applicable pleading standards under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## III.    FACTUAL BACKGROUND

Zantaz, Inc. ("Zantaz") provides electronic data archiving software solutions and services to companies throughout the world.  Complaint ¶ 8.  On or about July 3, 2007, Autonomy acquired all of the outstanding shares of Zantaz capital stock for approximately $400 million (the "Merger Transaction").  *Id.* ¶ 9.  GA Escrow was and is the appointed Escrow Participants' Representative for Zantaz's former shareholders (together, the "Escrow Participants") in connection with Autonomy's acquisition of Zantaz.  *Id.* ¶ 2.  As part of the Merger Transaction, the parties entered into several agreements, including the Merger Agreement and the Escrow Agreement (together, the "Agreements").  *Id.* ¶¶ 9, 15.

Pursuant to Section 2.6(c)(i) of the Merger Agreement, an amount equal to $20,500,000 was withheld from the Merger Consideration and placed into escrow (the "Indemnity Escrow Fund"). Complaint ¶ 10.  These funds were to be available to satisfy indemnification claims for losses to which Autonomy might be entitled pursuant to Article VIII of the Merger Agreement. *Id.*  The remaining funds were to be paid to the Escrow Participants.  *Id.*

The Merger Agreement requires that all claims for "Losses," as defined in the Agreement, be made by written notice delivered by Autonomy to GA Escrow and the Escrow Agent promptly after discovery of a matter giving rise to such a claim.  Complaint ¶ 12.  Similarly, the Escrow Agreement requires Autonomy to make a written request to both the Escrow Participants' Representative and the Escrow Agent for the payment of any claim for indemnification for Losses as defined in Article VIII of the Merger Agreement (a "Payment Request").  *Id.* ¶ 17. Specifically, the Escrow Agreement requires that such a Payment Request "set forth the <u>amount requested</u>, and in reasonable detail the specific basis for the determination of the <u>amount</u> of the claim and as to why Parent Indemnitee [Autonomy] is entitled to the payment of <u>such</u>

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 2 -

1   amount. . . ."  *Id.* (emphasis added).  Section 3(b)(iv) of the Escrow Agreement authorizes the

2   Escrow Agent to pay "an amount equal to the amount requested" in the Payment Request.

3   Declaration of Andrew Kanter ("Kanter Decl."), Exhibit B at 3.[1]

4       On September 11, 2007, Autonomy sent to GA Escrow and the Escrow Agent its Notice

5   of Claim, purporting to assert certain claims under Section 8.2(a) of the Merger Agreement for

6   Losses of "approximately" $8 million.  Complaint ¶ 18.  As detailed in the Complaint,

7   Autonomy's Notice of Claim was deficient for several reasons.  In particular, it was not made for

8   a specified sum certain, but rather for an "approximate" loss amount.  *Id.*  Nothing in the

9   Agreements contemplates claims or payments for "approximate" amounts.[2]  Nor did Autonomy

10  provide specific detail to support the four claims of "approximately $2,000,000" listed in the

11  Notice of Claim.  Complaint ¶ 24.

12      In fact, following its receipt of the Notice of Claim, GA Escrow repeatedly asked for the

13  basis for the purported "approximate" claims, yet received no such details, suggesting Autonomy

14  never had any legitimate basis for these claims.  *Id.*  Even though GA Escrow informed

15  Autonomy in writing that it believed Autonomy had committed a fraud, Autonomy has to date

16  refused to provide any information or documentation supporting its Notice of Claim or explaining

17  why its actions do not constitute a fraud.  *Id.*

18  **IV.   LEGAL STANDARD**

19      In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is to construe the

20  complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and

21  draw all reasonable inferences in the light most favorable to the plaintiff.  *Westland Water Dist. v.*

22  *Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898

23  (9th Cir. 1986); 5A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure*

---

24  [1]  The Escrow Agreement is Exhibit B to the Declaration of Andrew Kanter in Support of
25  Defendant Autonomy Corporation PLC's Motion to Dismiss, filed on April 9, 2008.  The Merger
    Agreement and Autonomy's September 11, 2007 Notice of Claim referenced herein are also
26  attached to the Kanter Declaration as Exhibits A and C, respectively.

27  [2]  Autonomy's Motion never quotes the exact language of its Notice of Claim, *i.e.*, the
    "approximately" language.  Instead, it incorrectly asserts that the claim was for a sum certain of
28  $8 million which is not what its Notice of Claim stated.  *See, e.g.,* Motion at 5.

Case No.:                OPPOSITION TO MOTION TO DISMISS COMPLAINT;
C-08-1784 JL             MEMORANDUM IN SUPPORT THEREOF

SHARTSIS  FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

§ 1357 (2d ed. 1990); s*ee also Adam v. Silicon Valley Bancshares*, 884 F. Supp. 1398, 1400 (N.D. Cal. 1995) (in ruling on a motion to dismiss, district courts accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of plaintiff). The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rules Civ. Proc. 8(a). The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citing *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)); *see also Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'").[3]

## V.    LEGAL ARGUMENT

Autonomy's assertion that the Merger and Escrow Agreements bar each of GA Escrow's causes of action is unsupported by California law, which applies here. Under Autonomy's reading of the law, Autonomy is immune from any consequences for its Notice of Claim, that apparently sought the recovery of funds for losses that did not occur, as long as 10 days passes without objection after it submits its notice. Such an interpretation does not withstand scrutiny.

According to Autonomy, it is entitled to keep money as to which it has no properly supported claim. Autonomy argues that because GA Escrow had "the *absolute and unfettered right to stop the payment to Autonomy simply by objecting Autonomy's request for payment within a specified timeframe,*" it has no remedy for Autonomy's wrongful acts, including fraud. Motion at 2 (emphasis in original). Autonomy further argues that "any objection by GA Escrow, *even a frivolous one*, automatically prevents disbursement of the requested amount." Motion at 9 (emphasis added). The argument fails for at least three reasons. First, there is always a duty to comply properly and in good faith with the notice requirements of an agreement; second, the Agreements do not contemplate parties being paid for losses that were not sustained, and third it

---

[3] Even if dismissal is warranted, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dept. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

- 4 -

1  cannot be that the mere passage of the 10-day period somehow immunized a fraud.  Indeed, under

2  Autonomy's view, parties should always object and block escrow payments whenever requests

3  for such payments are made—regardless of whether they suspect wrongdoing.  Such an argument

4  would render all escrow arrangements unworkable by compelling all participants to act in bad

5  faith and object to all indemnity claims to protect against unknown breaches and frauds.

6  **A.      GA Escrow Has Successfully Stated A Cause Of Action For Fraud.[4]**

7  Autonomy's argument to dismiss GA Escrow's fraud claim is notably short and

8  conclusory.[5]   Autonomy argues that GA Escrow's allegation that on September 11, 2007

9  Autonomy submitted claims for "approximate" amounts of Losses to the Escrow Agent without

10  any factual basis to support such Losses "should be disregarded" because, as of September 25,

11  2007, the approximate Losses listed by Autonomy were conclusively deemed Losses subject to

12  indemnification according to the Merger Agreement.  Under Autonomy's interpretation of the

13  Agreements, GA Escrow is barred from bringing a fraud action if it does not object within 10

14  days of Autonomy's notice of claim—regardless of whether Autonomy submitted the claim

15  knowing it was baseless, and regardless of whether GA Escrow could know it was fraudulent.

16  According to Autonomy, GA Escrow's only remedy was to object to the Payment Request, even

17  if the objection was "a frivolous one" at the time.  Motion at 9.  Such an interpretation is contrary

18  to California law and should be rejected.

19

20

21

22  [4] "'The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure);  (b) knowledge  of  falsity;  (c) intent  to  defraud,  *i.e.*,  to  induce  reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Lazar v. Superior Court*, 12 Cal. App. 4th

23  631, 638 (1996).  GA Escrow has properly alleged a claim for fraud: (a) Autonomy provided a false notice of claim with (b) knowledge that it was false and (c) the intent to induce reliance

24  from  the  Escrow  Agent  and  GA Escrow;  on  which  (d)  both  the  Escrow  Agent  and GA Escrow justifiably relied; resulting in (e) damages in the amount of up to $8 million paid out

25  to Autonomy. Complaint ¶¶ 25-27.

26  [5] Autonomy addresses GA Escrow's negligent misrepresentation and fraud claims together and makes  no  independent  arguments  against  the  sufficiency  of  GA Escrow's  negligent

27  misrepresentation claim.  For the same reasons that Autonomy's arguments against GA Escrow's fraud claim fails, Autonomy's arguments against the negligent misrepresentation claim also fails.

28

Case No.:
C-08-1784 JL
OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1.     **The Merger Agreement does not shorten California's three-year statute of limitations on an action for fraud or impose a 10-day discovery period.**

Autonomy's assertion that Section 8.6 of the Merger Agreement bars GA Escrow's fraud claim is baseless.   In order for the Merger Agreement to bar GA Escrow's fraud claim, Section 8.6 would have to be interpreted as either: (1) a contractual shortening of the three-year statute of limitations for a fraud claim; or (2) a contractual time limit on the accrual of a fraud cause of action.   Both interpretations are contrary to California law concerning filing time limits and claim accrual.   The Merger Agreement does not waive claims for fraud.

First, California law provides a three-year statute of limitations for fraud actions.   Cal. Code Civ. Proc. § 338(d).   There is no provision in the Merger Agreement or Escrow Agreement that expressly or impliedly shortens this three-year statute of limitations.   Autonomy does not, and cannot, assert otherwise.   Section 8.6 provides that "the Losses specified in such Notice of Claim will be conclusively deemed Losses subject to indemnification" if no timely objection is made, but it does not expressly limit GA Escrow's right to file a lawsuit disputing the Notice of Claim if it fails to object within 10 days due to the fraudulent behavior of Autonomy.

Second, Autonomy's fraudulent submission of a Notice of Claim warrants application of the discovery rule to GA Escrow's fraud claim.   California law applies the discovery rule to fraud causes of action.   Cal. Code Civ. Proc. § 338(d).   The discovery rule is an exception to the general rule that a cause of action accrues at the time when the cause of action is complete. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1317-18 (2007) (finding accrual trigger was plaintiff's discovery of defendant's misrepresentations of employee's qualifications).   The rule permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue.   *Weatherly v. Universal Music Publ'g Group*, 125 Cal. App. 4th 913, 918-19 (2004).   Under the rule, a plaintiff, prevented from discovery, should not suffer and a defendant should not "knowingly profit" from the plaintiff's ignorance. *Id.* at 919.   Here, GA Escrow was not aware of Autonomy's fraudulent behavior until Autonomy refused to provide any support whatsoever for its claims for "approximate" Losses.

Autonomy also improperly attempts to convert the 10-day contractual objection period of

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 6 -

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1  the Agreements into a 10-day discovery period for any fraud or negligent misrepresentation

2  claims. Such attempts fail, however, because under California law the discovery rule also applies

3  in the context of contractual limitations provisions. *Weatherly*, 125 Cal. App. 4th at 919 (citing

4  *Moreno v. Sanchez*, 106 Cal.App.4th 1415, 1423 (2003)). Parties may not contract around the

5  discovery rule in situations where it would otherwise apply, such as fraud. *See Moreno*, 106 Cal.

6  App. 4th at 1433. In *Weatherly*, plaintiff songwriter ("Writer") entered into an Exclusive

7  Songwriter's and Composer's Agreement with a publisher. The Agreement provided that:

8  
9  
10  
11  
12  
> All royalty statements and other accounts rendered by Publisher shall be binding upon Writer and not subject to any objection for any reason, unless such objection is specific and is made in writing, stating the basis thereof, and delivered to Publisher within one (1) year from the date of such statement or account, and Writer shall be barred from maintaining or instituting any suit based on such objection unless such suit is commenced within one (1) year after the date on which Publisher notifies Writer that it denies the validity of the objection.

13  *Id.* at 915-16. Even though the plaintiff waited approximately 25 years to invoke his right to audit

14  the Publisher's books, the *Weatherly* court rejected the lower court's finding that the delayed

15  discovery rule did not apply. *Id.* at 917. Further, the court rejected the lower court's finding that

16  the one year contractual limitations period barred all causes of action arising from defendant's

17  alleged failure to pay royalties including fraud, breaches of contract and breach of the implied

18  covenant of good faith and fair dealing. *Id.* at 919-20. Here, GA Escrow advised Autonomy in

19  writing that it appeared a fraud had been committed on both GA Escrow and its agent as soon as

20  it became apparent that Autonomy would not, and presumably could not, provide support for its

21  claimed losses, *see* Complaint ¶ 24, and brought its action well within the statutory period. As

22  such, the discovery rule properly applies to GA Escrow's fraud claim, and GA Escrow is not

23  barred by Section 8.6 of the Merger Agreement from bringing such a claim.

24  
25  
### 2.  GA Escrow has properly pleaded damages resulting from Autonomy's fraudulent conduct.

26      To support its assertion that GA Escrow cannot allege any facts that will support a finding

27  of fraud damages, Autonomy repeats its mantra: if GA Escrow wanted to avoid being damaged

28  by Autonomy's fraud, it had to object within 10 days regardless of whether it knew of

- 7 -

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

1    wrongdoing. Autonomy argues that, even assuming Autonomy lacked a factual basis for its loss

2    claims when it submitted the Payment Request, it was GA Escrow's failure to object within

3    10 days, rather than Autonomy's fraudulent Payment Request, that caused GA Escrow's

4    damages. Motion at 11. This means that Autonomy may keep the money and be unjustly

5    enriched. That is not the law.

6         The only support Autonomy provides for its position is *Goehring v. Chapman Univ.*, 121

7    Cal. App.4th 353, 365 (2004)), which does not apply to the facts here. *Goehring,* a decision

8    affirming an order granting summary judgment, stands for the proposition that "[a]ssuming a

9    claimant's reliance on the actionable misrepresentation, no liability attaches if the damages

10   sustained were otherwise inevitable or due to *unrelated* causes." *Id.* at 365 (emphasis in

11   decision). In *Goehring*, the Court found that plaintiff student's alleged damages—which were

12   based on his not graduating from an accredited law school—were not due to misrepresentations

13   by the school that it would be accredited by the time of plaintiff's graduation, but were due

14   instead to plaintiff's being dismissed from the school for academic reasons prior to his earning a

15   degree. *Id.* at 364-365. The facts in this case are nothing like those of *Goehring*.

16        GA Escrow's damages are not, as *Goehring* requires, "otherwise inevitable or due to

17   *unrelated* causes." Rather, as GA Escrow has properly pleaded, they were caused by the fact that

18   Autonomy knowingly or negligently provided a fraudulent Payment Request to both GA Escrow

19   and the Escrow Agent. Assuming that Autonomy had no factual basis for the "approximate"

20   Losses it claimed in its Payment Request (*See* Complaint ¶¶ 25, 32, 36, 40, 46), it was

21   GA Escrow's and the Escrow Agent's reliance upon the fraudulent Payment Request that caused

22   the damage, not the fact that GA Escrow only determined the Payment Request was a fraud after

23   the 10-day objection period expired. Autonomy's Payment Request, for "approximate" Losses,

24   without more, did not put GA Escrow on notice that Autonomy had submitted a fraudulent claim

25   with no factual basis at all. GA Escrow was on notice that a fraud had occurred only after

26   Autonomy refused GA Escrow's requests for substantiation. As such, GA Escrow has pleaded

27   facts sufficient to support a finding that Autonomy's fraud caused it to suffer damages.

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9   4111

Case No.:                    OPPOSITION TO MOTION TO DISMISS COMPLAINT;
C-08-1784 JL                 MEMORANDUM IN SUPPORT THEREOF

### 3.    GA Escrow has satisfied the pleading requirements of Rule 9(b).

GA Escrow has alleged fraud with the requisite specificity to satisfy Federal Rule of Civil Procedure 9(b).   Rule 9(b) "requires a plaintiff alleging fraud to state with particularity 'the circumstances constituting fraud.'"    However, it "does not require nor make legitimate the pleading of detailed evidentiary matter." *See, e.g.*, *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (finding that "[t]he circumstances constituting the alleged fraud have been pled with sufficient definiteness to advise [defendant] of the claim it must meet.").   In addition, Rule 9(b) must be read in harmony with the Rule 8 requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1555-56 (9th Cir. 1994) (*en banc*).

Autonomy's assertion that GA Escrow has failed to plead the "when," "how," and "why" concerning Autonomy's fraudulent conduct is disingenuous.   The Complaint sets out, in specific detail, the circumstances constituting fraud in a concise manner.   On   September 11, 2007, Autonomy sent a letter to GA Escrow and the Escrow Agent purporting to assert certain claims under Section 8.2(a) of the Merger Agreement for Losses of "approximately" $8 million. Complaint ¶ 18.   The Notice of Claim was misleading and/or false because there was no factual basis to claim the "approximate" Loss amounts at the time. *Id.* ¶¶ 19-22, 25-26.   GA Escrow has repeatedly attempted to determine the exact amount of Autonomy's "approximate" claim and has advised Autonomy in writing that a fraud appears to have been committed. *Id.* ¶ 24.   Autonomy cannot in good faith deny that it is on notice regarding factual particulars of the fraud claim it must defend.   Based on Autonomy's repeated refusal to provide any documentation to support its "approximate" losses, the obvious inference is that no loss ever existed, or that, at a minimum, the loss does not come close to equaling $8 million.

### B.    GA Escrow Has Successfully Stated A Cause Of Action For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

Contrary to Autonomy's assertion, GA Escrow's claim for breach of the implied covenant of good faith and fair dealing is consistent with the Agreements.   Autonomy's assertion that the implied covenant does nothing to augment contractual covenants directly contradicts well-settled

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

California contract law.  The California Supreme Court has made clear that "the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Notrica v. State Comp. Ins. Fund*, 70 Cal. App. 4th 911, 921 (1999) (emphasis added).  Here, the implied covenant should be read to supplement the indemnification and notice provisions of the Agreements by, among other things, requiring that parties only make claims for actual losses rather than fictitious losses.  Allowing Autonomy to make claims for losses with no factual basis clearly would deprive GA Escrow and the Escrow Participants of the benefits of the monies owed to them from the Indemnity Escrow Fund.

Notably, when purporting to state the purpose of the implied covenant, Autonomy fails to cite key language from *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349-50 (2000).  Motion at 10-11.  The *Guz* Court recognized that the purpose of the implied covenant is to "**prevent one contracting party from unfairly frustrating the other** party's right to receive *the benefits of the agreement actually made*."  *Guz*, 24 Cal.4th at 349 (bold text omitted from Motion at 10; italics in original decision).  In fact, the *Guz* court expressly stated that "the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits," noting that the covenant might be violated if defendant's action was a "mere pretext" to cheat plaintiff out of another contract benefit to which she was clearly entitled.  *Id.* at 353 n.18.  That is exactly what Autonomy did here.  As GA Escrow alleges, by "put[ting] forth claims for approximate amounts of Losses without having any reasonable factual basis to support such Losses," Complaint ¶ 25, Autonomy obtained a windfall of $8 million, frustrating GA Escrow's right to the benefit of monies from the Indemnity Escrow Fund to which it was clearly entitled under terms of the Merger Agreement.  Autonomy cannot escape liability for precisely the type of actionable conduct described in *Guz*.[6]

---

[6] The *Guz* court rejected plaintiff's assertion that the implied covenant of good faith and fair dealing precluded his employer from denying him the employment contract's benefits. 24 Cal.4th at 349.  The facts of *Guz*, however, are easily distinguished.  As a preliminary matter, *Guz* involved review of an order granting summary judgment and not a motion to dismiss.  Additionally, in *Guz*, the statutory presumption of at-will employment, which in the absence of an agreement to the contrary entitles an employer to terminate an employee without cause, strongly influenced the *Guz* Court's dismissal of plaintiff's implied covenant claim.  *Id.* at 350-54.  No such statutory presumption applies here.

Shartsis  Friese  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

**C.    GA Escrow Has Successfully Stated A Cause Of Action For Breach Of Contract.**

Autonomy's assertion that GA Escrow's claim for breach of contract is entirely inconsistent with the transaction documents is also incorrect.  GA Escrow can and does properly allege a claim for breach of contract.

**1.    Autonomy's inadequate Notice of Claim was a breach of the Agreements.**

Autonomy's Notice of Claim does not comply with the Agreements, and therefore constitutes a breach of those Agreements.  As noted above, Section 3(b)(ii) of the Escrow Agreement requires that a Payment Request "set forth the <u>amount requested</u> and, in reasonable detail, the specific basis for the determination of the amount of the Claim and as to why such Parent Indemnitee [Autonomy] is entitled to the payment of <u>such amount</u>. . . ."  Kanter Decl., Ex. B at 2-3 (emphasis added).   Similarly, the Merger Agreement states that a Notice of Claim shall set forth "the <u>amount</u> of such Losses."[7]  Kanter Decl. Ex. A at 64 (emphasis added).  Neither agreement contemplates an indemnification payment for "approximate" amounts of Losses, or for no Losses at all.  Section 3(b)(iv) of the Escrow Agreement authorizes the Escrow Agent to pay only "an <u>amount</u> equal to the <u>amount</u> requested" in the Payment Request.  Kanter Decl. Ex. B at 3 (emphasis added).   Even Section 8.6 of the Merger Agreement, on which Autonomy relies entirely, states that only "Losses <u>specified</u> in such Notice of Claim" will be deemed Losses subject to indemnification.  Kanter Decl. Ex. A at 67 (emphasis added).  As GA Escrow has alleged, Autonomy's September 11, 2007 notice did not <u>specify</u> an amount of Losses, but instead only identified "approximate" amounts.  Complaint ¶ 18.  As such, it did not satisfy the

---

[7] The Merger Agreement also provides that in the case where Losses are "not known" the Notice of Claim may provide "a reasonable estimate of the foreseeable maximum amount of such losses."  However, the definition of "Notice of Claim" in the Merger Agreement is included in Section 8.4 covering Third Party Claims.  The "reasonable estimate" language pertains to claims made by third parties for which no final determination has been made—*i.e.*, a judgment or settlement is outstanding—as opposed to claims made by Autonomy regarding company financials where Autonomy is in possession of all information necessary to determine a specific Loss.  Even in cases of third party claims, the estimate is not conclusive of the final amount of such Losses.  Rather a determination of actual Losses must be made.

1    requirements of the Agreements to specify an "amount requested" and constitutes a breach of the

2    terms of those Agreements.  In light of that fact, whether or not there was a response during the

3    10-day objection period, Autonomy is not entitled to retain a payment for Losses it did not suffer.

4    The fact that the Escrow Agent did make a payment to Autonomy for an "approximate" amount

5    of Losses does not change the fact that Autonomy did not comply with the terms of the

6    Agreements.

7              **2.    GA Escrow's breach of contract claim is also protected by the delayed discovery rule.**

8

9         Regardless of the 10-day objection period in Section 8.6 of the Merger Agreement,

10   Autonomy's submission of a fraudulent Notice of Claim warrants application of the delayed

11   discovery rule to GA Escrow's breach of contract claim.    When fraud or negligent

12   misrepresentation is involved, the delayed discovery rule applies to a breach of contract action.

13   *See, e.g., Watts v. Crocker-Citizens Nat'l Bank*, 132 Cal. App. 3d 516, 523 (1982); *Balfour,*

14   *Guthrie & Co. v. Hansen*, 227 Cal. App. 2d 173, 189-91 (1964).  Despite its deficiencies, there

15   was nothing in Autonomy's Notice of Claim that would inform GA Escrow that Autonomy had

16   incurred no Loss or that any Losses it had incurred were massively overstated.  After receiving

17   notice of the "approximate" amounts, GA Escrow did seek to get an exact number from

18   Autonomy.  It was only after Autonomy refused to provide any support for its "approximate"

19   amounts that GA Escrow was put on notice of Autonomy's fraudulent behavior and breach of

20   contract.

21        As noted above, the court in *Weatherly* found that the delayed discovery rule applied to

22   plaintiff's royalty agreement with his publisher despite the agreement's one year contractual

23   limitations provision. *Weatherly*, 125 Cal. App. 4th at 917.  Further, the *Weatherly* court rejected

24   the lower court's finding that such a contractual limitations period barred all causes of action

25   arising from defendant's alleged failure to pay royalties including those for breach of contract and

26   breach of the implied covenant of good faith and fair dealing.   *Id.* at 919-20.  Similarly,

27   Section 8.6 of the Merger Agreement cannot be read to impose a 10-day limit on the discovery of

28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

Case No.:
C-08-1784 JL

OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

1   a breach of contract, much less a 10-day limit on a cause of action for breach of contract.[8]

2       Section 8.6 provides that "the Losses specified in such Notice of Claim will be

3   conclusively deemed Losses subject to indemnification" if no timely objection is made, but does

4   not expressly revoke GA Escrow's right to file a lawsuit disputing the Notice of Claim if it fails

5   to object within 10-days due to the fraudulent behavior of Autonomy.  Kanter Decl. Ex. A at 67.

6   There is no provision in the Agreements which would permit Autonomy to be paid for

7   approximations instead of "specified" Losses.   Instead of providing "specified" Losses,

8   Autonomy either fraudulently or negligently asserted claims for Losses of "approximately

9   $8,000,000."  Stated simply, there is nothing in the Agreements that provides for Autonomy to be

10  paid for losses it has not incurred    Autonomy never quantified its approximate Losses, and

11  apparently never incurred such Losses, and thus it was not entitled to a specific payment of

12  $8 million.

13              **3.     Autonomy's reliance on the *Barton* case is misplaced.**

14      The authority Autonomy cites in support of its motion to dismiss GA Escrow's breach of

15  contract claim is easily distinguished.  Motion at 8-9 (citing *Barton v. Elexys Int'l, Inc.*, 62 Cal.

16  App.4th 1182 (1998)).  *Barton* is inapposite because the contractual right at issue in that case was

17  the right to exercise an option, not the right to object to a fraudulent payment request.   A

18  contractual time limit on the right to exercise an option is fundamentally different than a time

19  limit on a right to object to a claim for indemnification when concealment, fraud or

20  misrepresentation is later discovered.  *See Weatherly*, 125 Cal. App. 4th 913 (reversing summary

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9   4111

---

[8] The statutory limitations period for a breach of contract action is four years.  Cal. Code Civ. Proc. § 337.  Section 8.6 of the Merger Agreement would be unenforceable under California law if it were interpreted to be an agreement to shorten the applicable limitations period.  Although parties may contract to shorten the statute of limitations, the contractual limitation cannot be "in itself unreasonable."  *Charnay v. Cobert*, 145 Cal.App.4th 170, 183 (2006) (finding 10-day period to object to an invoice inherently unreasonable).  In the cases where California courts have upheld contractual limitations, such "reasonable" limitations range from three months to one year.  *See, e.g. Capehart v. Heady*, 206 Cal.App.2d 386 (1962) (finding landlord's notice to quit triggered the three-month contractual limitation on tenant's right to sue); *Fageol Truck & Coach Co. v. Pac. Indem. Co.*, 18 Cal.2d 748 (1941) (upholding one-year contractual limitation on reporting the loss of a truck).  Even if the 10-day objection period were construed as an implied shortening of time for breach of contract actions, it is manifestly unreasonable to require GA Escrow to assert a breach of contract within 10 days of receipt of the Notice of Claim.

| Case No.: | OPPOSITION TO MOTION TO DISMISS COMPLAINT; |
|---|---|
| C-08-1784 JL | MEMORANDUM IN SUPPORT THEREOF |

1  judgment award and holding that contractual limitations period should have been tolled under

2  delayed discovery doctrine).

3        In *Barton*, plaintiff, a former employee, brought a breach of contract case against his

4  former employer regarding expired stock options.  Plaintiff sought to exercise options a year after

5  the exercise date provided for in his stock option agreements.  At the time of his termination, the

6  market price of the company's stock was less than or equal to the exercise price of the options he

7  held, and he quite understandably chose not to exercise them.  There was no fact concealed from

8  him.  Over a year after the exercise date, when he knew the stock was trading at a price 15 times

9  higher than his lowest priced expired options, the former employee brought his action against the

10  company.  Plaintiff's attempt to seek a remedy for his investor's remorse a year later cannot be

11  equated to GA Escrow's effort, immediately upon learning that a fraud had been committed, to

12  stop Autonomy from wrongfully converting monies owed to the Escrow Participants.[9]

13            **4.    Autonomy's covenant/condition argument is invalid.**

14        Autonomy also presents a specious argument that the breach of contract here was merely

15  the breach of "a condition rather than an express covenant." Motion at 9 (citing *Britschgi v.*

16  *McCall*, 41 Cal.2d 138, 144 (1953)).  The point of the argument is summed up in Autonomy's

17  statement that: "Nowhere in either the Escrow Agreement or the Merger Agreement did

18  Autonomy promise to provide a 'proper' payment request." Motion at 9.  In essence, Autonomy

19  is arguing that it could lie outright by filing a payment request that was false in every respect,

20  including whether Autonomy had suffered any loss.[10]  One cannot read the Escrow Agreement

21  and Merger Agreement as a whole and reasonably believe that the parties agreed that Autonomy

22  could make claims for amounts it was not entitled to obtain under the Agreements.  By attempting

23

24  [9] Like many of the cases cited by Defendant, *Barton* is also distinguishable from this case in that
   it addresses a motion for summary judgment, not a Rule 12(b)(6) motion to dismiss.  The *Barton*
25  Court ruled that, after the parties conducted discovery, plaintiff failed to create "a triable issue of
   fact as to whether the executive salary continuation plan included stock options" and affirmed
26  summary judgment in favor of defendant.  *Id.* at 1184.  Here, GA Escrow has not had an
   opportunity to conduct any discovery.

27  [10] The term "Loss" is defined in Section 8.2(a) of the Merger Agreement and does not include a
   claim where Autonomy has suffered no detriment.
28

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

Case No.:                    OPPOSITION TO MOTION TO DISMISS COMPLAINT;
C-08-1784 JL                 MEMORANDUM IN SUPPORT THEREOF

1   to parse out Autonomy's rights and obligations into conditions versus covenants, Autonomy

2   seeks to justify its act of requesting money to which it clearly was not entitled.

3       In the context of this supposed distinction between a "condition" and a "covenant"

4   Autonomy further advances its argument that GA Escrow should have presented an objection to

5   the Payment Request, "even a frivolous one," which would have "automatically prevent[ed]

6   disbursement of the requested amount." Motion at 9. The very fact that the only remedy to stop

7   Autonomy from improperly taking money is a "frivolous" objection to an escrow request

8   indicates how far fetched Autonomy's argument is about the supposed distinction between and

9   enforceability of a "condition" and a "covenant."

10      The only decision that Autonomy cites for the proposition that "a cause of action for a

11  breach of contract does not lie where the matter was merely a condition rather than an express

12  covenant" is completely inapplicable to this case. Motion at 9 (citing *Britschgi v. McCall*, 41

13  Cal.2d 138 (1953)). In *Britschgi*, defendants agreed to sell land "contingent upon the seller being

14  able to eliminate the interest" of a third party who held a lease with an option to purchase most of

15  the property. The court held that the provision concerning elimination of the third party interest

16  was a condition precedent to the defendants' duty to convey, and therefore there was no fault in

17  their failure to fulfill it. *Britschgi,* 41 Cal.2d at 143. Thus, the *Britschgi* court found that the

18  purchase contract upon which plaintiffs sought to sue did not exist because the condition

19  precedent had not been satisfied. Autonomy cannot plausibly argue that no contract exists here in

20  light of the fact that the indemnification process set out in Section 8.6 represents the final stages

21  of a $400 million acquisition, the terms of which were governed by the Merger Agreement.

22          **5.      GA Escrow has properly alleged damages.**

23      Autonomy's Motion mistakenly argues that GA Escrow bears the burden of proving

24  causation at this stage of litigation. In fact, all that GA Escrow is required to do and has done is

25  allege a set of facts that connect the breach and resulting damages. Autonomy's cited authority,

26  *State Farm Mut. Auto. Ins. v. Allstate Ins.,* 9 Cal.App.3d 508, 528 (1970), directly contradicts its

27  own argument. In *State Farm*, the court heard an insurer's appeal from a declaratory judgment

28  for the insureds, not an appeal from a motion to dismiss. Before embarking on a detailed

Shartsis  Friese  llp
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

- 15 -

1  discussion of the facts presented at trial, the *State Farm* court observed that, "[c]ausal

2  determinations are a function of the fact trier." *Id.* at 529.

3      As Autonomy acknowledges in its Motion, dismissal for failure to state a claim under

4  Rule 12(b)(6) is appropriate only "when it appears beyond doubt that the non-moving party can

5  prove no set of facts in support of its claim."  Motion at 6 (citing *Manshardt v. Fed. Judicial

6  Qualifications Comm.*, 401 F.3d 1014, 1016 (9th Cir. 2005)).  Put differently, the proper inquiry

7  is whether it is possible that the non-moving party can prove a set of facts in support of its claim.

8  Here, GA Escrow has pleaded that Autonomy breached the Agreements by submitting a false

9  Payment Request for approximately $8 million in losses.  Complaint ¶ 30-32.  As a direct result

10  of that breach, Autonomy received $8 million of the Escrow funds that should have been paid to

11  GA Escrow on behalf of the Escrow Participants.  Thus, GA Escrow has alleged  facts which

12  would, if proven, entitle it to its requested relief.

13

14  **D.  GA Escrow Has Successfully Stated A Cause Of Action For Unjust Enrichment And Is Entitled To An Accounting.**

15      Contrary to Autonomy's conclusory arguments, Section 8.6 of the Merger Agreement

16  does not bar GA Escrow's cause of action for unjust enrichment or an accounting.  Autonomy's

17  arguments are based entirely on the assertion that Section 8.6 precludes any allegations that

18  Autonomy was not entitled to the funds paid pursuant to the Payment Request. Motion at 13.  For

19  the reasons set forth above, Section 8.6 does not preclude GA Escrow from alleging that because

20  of Autonomy's fraudulent behavior—submitting a Payment Request with no factual basis—

21  Autonomy is not entitled to the funds paid out pursuant to such a request.

22      To state a claim for unjust enrichment, GA Escrow must plead the "receipt of a benefit

23  and unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal.

24  App. 4th 723, 726 (2000).  GA Escrow has done so.  It has alleged that Autonomy received a

25  benefit of $8 million when it "received a distribution from the Indemnity Escrow Fund."

26  Complaint ¶ 50.  Further, GA Escrow has alleged that "any claims [Autonomy] has for Losses

27  under the Merger Agreement are less than $8 million." *Id.* ¶ 51.  Finally, GA Escrow has alleged

28  that Autonomy has retained the entire $8 million at GA Escrow's expense. *Id.* ¶ 52.

Case No.:
C-08-1784 JL
OPPOSITION TO MOTION TO DISMISS COMPLAINT;
MEMORANDUM IN SUPPORT THEREOF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9  4111

1    Similarly GA Escrow properly seeks an accounting.  An accounting may be sought

2  "where . . . the accounts are so complicated that an . . . action demanding a fixed sum is

3  impracticable." *See Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977) (citing 3

4  *Witkin, Cal. Procedure* (2d ed. 1971) *Pleading*, § 674, pp. 2300-2301.)  As noted above,

5  GA Escrow seeks only a fair determination of a sum certain that is subject to indemnification for

6  Losses actually suffered by Autonomy.  An accounting is the best mechanism by which to

7  ascertain the correct portion of the $8 million wrongfully obtained by Autonomy that is owed to

8  the Escrow Participants.

9  **VI.    CONCLUSION**

10    GA Escrow seeks only a fair determination of actual Losses that are subject to

11  indemnification.  It sought to resolve this dispute without litigation, but Autonomy's failure to

12  provide any factual basis for its "approximate" claim for Losses made it clear that Autonomy

13  never had any basis for its claim.  Accordingly, GA Escrow has properly plead causes of action

14  for fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair

15  dealing, breach of contract, unjust enrichment and an accounting, and Autonomy has failed to

16  show otherwise.  Therefore, GA Escrow respectfully requests that the Court deny Autonomy's

17  Motion to Dismiss in its entirety.  If the Court should sustain any part of Defendant's motion,

18  GA Escrow respectfully requests that it be granted leave to amend its Complaint.

19

20  DATED:  June 20, 2008                    SHARTSIS FRIESE LLP

21

22                                        By:_____*/s/Arthur J. Shartsis*_____
                                              ARTHUR J. SHARTSIS

23                                        Attorneys for Plaintiff
24                                        GA ESCROW, LLC

25

26

27  7602\001\1513560

28

Case No.:                    OPPOSITION TO MOTION TO DISMISS COMPLAINT;
C-08-1784 JL                    MEMORANDUM IN SUPPORT THEREOF

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111