**DOLL AMIR & ELEY LLP**
Gregory L. Doll (SBN 193205)
gdoll@dollamir.com
Mary Tesh Glarum (SBN 175181)
mglarum@dollamir.com
1888 Century Park East
Suite 1106
Los Angeles, California 90067
Telephone: (310) 557-9100
Facsimile:  (310) 557-9101

Attorneys for Defendants
AUTONOMY CORPORATION PLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GA ESCROW, LLC, a Delaware limited liability company, a Representative for the Escrow Participants,<br><br>Plaintiff,<br><br>v.<br><br>AUTONOMY CORPORATION PLC, a corporation formed under the laws of England and Wales<br><br>Defendants. | CASE NO.  C08-01784-SI<br><br>**DEFENDANT AUTONOMY CORPORATION PLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date: July 11, 2008<br>Time:  9:00 a.m. |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. LEGAL ARGUMENT .............................................................................................. 4

    A. GA Escrow's Breach of Contract Claim Fails As A Matter of Law ........ 4

        1. The Key Allegations Of The Breach Of Contract Claim Are At Odds With the Parties' Agreements .................................................. 5

            a. *GA Escrow Failed To Object During The 10-Day Objection Period* ............................................................................... 6

            b. *Pursuant to Section 8.6, the Losses Were Deemed Conclusive* ...................................................................... 8

        2. GA Escrow's Argument that the Payment Request Breached the Parties' Agreements Is Contradicted By the Terms of Those Very Agreements .................................................................................... 9

    B. GA Escrow Has Not Stated A Claim For Breach of The Covenant of Good Faith And Fair Dealing .................................................................. 10

    C. GA Escrow's Fraud Claims Fail As A Matter of Law ........................... 11

        1. GA Escrow's Assertion That "A Fraud Appears To Have Been Committed" Falls Far Short Of The Heightened Pleading Requirements of Rule 9(b) .............................................................. 11

        2. The Negligent Misrepresentation Claim Is Barred By The Economic Loss Rule ....................................................................... 14

    D. GA Escrow Cannot State A Claim For Unjust Enrichment, Nor Is It Entitled To An Accounting .................................................................... 13

III. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Brea v. McGlashan*, 3 Cal.App.2d 454 (1934) .................................................................................. 14

*Britschgi v. McCall,* 41 Cal.2d 138 (1953) ........................................................................................ 9

*Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371 (1990) ............... 10

*Gen. Bedding Corp. v. Echevarria,* 947 F.2d 1395 (9th Cir. 1991) ............................................... 6

*In Re Stac Electronics Securities Litigation,* 89 F.3d 1399 (9th Cir. 1996) ......................... 12, 13

*Kline v. Turner,* 87 Cal.App. 4th 1369 (2001) ................................................................................ 6

*Lincoln General Insurance Company v. Access Claims Adm'rs, Inc.,*

    2007 WL 2492436 (E.D. Cal. 2007) ........................................................................................ 14

*McCready v. American Honda Motor Co., Inc.*, 2006 WL 1708303 (N.D. Cal. 2006) ................ 6

*Neu v. Terminix Intern., Inc.*, WL 962096 (N.D.Cal. 2008) ......................................................... 14

*Neubronner v. Milken,* 6 F.3d 666 (9th Cir. 1993) ................................................................ 11, 12

*Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 22 Cal.Rptr.3d 352,

    102 P.3d 268 (2004) ................................................................................................................. 13

*Weatherly v. Universal Music Publishing Group*,125 Cal.App.4th 93 (2004) ......................... 7, 8

Rules & **Statutes**

Cal. Civ. Code Sec. 3399 ............................................................................................................. 5, 8

Federal Rule of Civil Procedure, Rule 9(b) ......................................................................... 3, 12, 13

Federal Rule of Civil Procedure, Rule 12(b)(6) ........................................................................... 11

# I.

## **INTRODUCTION**

GA Escrow goes to great lengths in its opposition brief to disguise the unavoidable fact that it is presently barred from recovering *anything* from Autonomy in this action pursuant to the controlling agreements between the parties. This is a case where two highly sophisticated commercial entities, each represented by prestigious law firms, entered into an expensive corporate transaction, in which the defendant, Autonomy, paid $375 million to acquire a third party, Zantaz. Roughly $20 million of that purchase price was set aside in an escrow account maintained at U.S. Bank, to be used to indemnify Autonomy for losses it might sustain in connection with the aforementioned acquisition. A very simple procedure was established by the parties – negotiated at arm's length – to be applied to claims by Autonomy for indemnity:

<u>Step One</u>: Autonomy was to submit written notice – a "Payment Request" – of its alleged claim for losses subject to indemnification.

<u>Step Two</u>: GA Escrow would then have 10 days to object to the Payment Request.

<u>Step Three</u>: If GA Escrow objected to the Payment Request for any reason, no funds would be released to Autonomy. But if GA Escrow did not object, Autonomy's claimed losses would be "conclusively deemed Losses subject to indemnification," and the appropriate funds to indemnify Autonomy for these Losses would be released from the escrow account.

The procedure was anything but complicated. Indeed, that was the purpose behind it: to set forth clear, unambiguous, fair, and efficient standards to govern the rights and obligations of parties concerning losses sustained by Autonomy that were subject to indemnification under the Merger Agreement.

Autonomy followed the procedures set forth in the Escrow Agreement to the letter: On September 11, 2007, Autonomy submitted a Payment Request for claimed losses to be indemnified by GA Escrow in connection with the merger. Autonomy delivered a copy of its "Payment Request" to U.S. Bank, GA Escrow, and GA Escrow's corporate counsel (Paul, Weiss, Rifkind, Wharton & Garrison LLP). Autonomy made it clear that this document, with a

subject line that reads "Zantaz, Inc. Notice of Claim," was indeed "a Payment Request with respect to indemnification of Losses under Article VIII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement."

Ten days passed without objection by GA Escrow or its counsel. Not a word. If GA Escrow truly believed that Autonomy's Payment Request was insufficiently detailed, as its litigation counsel now contends, GA Escrow had a remedy under the contract: *object*. If GA Escrow truly believed that Autonomy needed to provide additional documentation to substantiate its claimed losses,[1] it had a remedy: *object*. And, if GA Escrow suspected for any reason that Autonomy's claimed losses were not legitimately sustained, it had a remedy: *object.*

In a word, the total burden placed on GA Escrow under the Escrow Agreement to avoid the situation where funds would be released by to Autonomy in response to a Payment Request consisted of submitting a one-line, or even one-word, objection to U.S. Bank, which would have at least suspended the matter: indeed, no transfer of funds could have been lawfully made to Autonomy had there been any such objection by GA Escrow. This provision of the Escrow Agreement, negotiated at arm's length for valuable consideration, was indeed – as the parties intended it to be – clear, unambiguous, fair, and efficient.

Seven more days passed with no word from GA Escrow or its counsel. Then, on the 17th day after Autonomy made its Payment Request, GA Escrow asserted a belated objection, seeking to block the release of funds to Autonomy for the Losses which, pursuant to the agreement of the parties, had already been "conclusively" established. U.S. Bank – a sophisticated banking institution serving as the escrow agent in this transaction – had already released the indemnification funds to Autonomy in accordance with Section 3(b)(iv) of the Escrow Agreement.

Beyond the fact that both of these entities – Autonomy and U.S. Bank – recognized Autonomy's unequivocal entitlement to these funds based on this established procedural

---

[1] For the record, Autonomy has provided GA Escrow with more than adequate documentation supporting its claims in connection with another matter. While GA Escrow may not be satisfied that its demands have been met in the specific manner it requested, the assertion of GA Escrow's litigation counsel that no information was provided is without merit.

mechanism in the operative agreements, there is yet another important implication to the fact that these "Losses" had been "conclusively" established: these "Losses" cannot now be claimed as "damages" sustained by GA Escrow in this litigation. For, indeed, it has been conclusively established that this money belongs to Autonomy, not GA Escrow. This is not a case of "damages" being sustained by an aggrieved party. This is a case of a debt owed and satisfied by a debtor. GA Escrow is that debtor. It has no claim for damages here.

Refusing to concede its own acquiescence or negligence, GA Escrow resorts to the time-honored litigation tactic of shifting blame to one's adversary – claiming that, in fact, GA Escrow could not do everything it was required to do under the Escrow Agreement because it has been defrauded by Autonomy. This is utter nonsense. Fraud is a very serious, and in this case, highly offensive allegation, which is inapplicable to these facts.

While GA Escrow is willing to throw out the term "fraud" against Autonomy as an alternative to owning up to its own conduct, GA Escrow fails to plead any specific allegations describing how it was supposedly defrauded by Autonomy in order to meet the heightened pleading requirements of Rule 9(b). This failure to plead even one specific fact showing how GA Escrow was defrauded is telling, indeed.

That GA Escrow also fails to plead any specific allegations in support of the application of the delayed discovery rule – which is also governed by the heightened pleading requirements of Rule 9(b) – is not surprising for reasons already mentioned: specifically, if GA Escrow had any concerns about the legitimacy of Autonomy's claimed losses, or felt that it lacked sufficient information to assess the adequacy of such claim, those concerns would have been triggered by the Payment Request itself, whereupon GA Escrow had 10 days to object in writing (as it has done in connection with other claims that have arisen between the parties). Once those losses had been "conclusively" established, however, all issues pertaining to the adequacy of notice or sufficiency of documentation in support of such notice were rendered moot.

GA Escrow's claim for breach of the implied covenant of good faith and fair dealing fails, for among other reasons, because GA Escrow seeks to recover the identical damages barred by its breach of contract claim. California law does not allow such a result. Further, GA

3
REPLY RE: MOTION TO DISMISS

Escrow's negligent misrepresentation claim is barred by the economic loss rule. GA Escrow's claim for unjust enrichment fails because Autonomy cannot be "unjustly enriched" by money that it is conclusively owed by GA Escrow under the controlling contract. And, as to GA Escrow's claim for accounting, there can be no duty of accounting when there is no "debt owed" to GA Escrow by Autonomy.

Simply put, GA Escrow has concocted an elaborate but false litigation strategy to disguise its failure to exercise a contractual right within the time period authorized by contract. GA Escrow's current mudslinging – advancing unfounded suggestions of fraud in an effort to resuscitate a knowingly defective breach of contract claim – is unsupported by any specific allegations in GA Escrow's Complaint, and cannot survive this motion to dismiss.

## II.

## LEGAL ARGUMENT

### A.    GA Escrow's Breach of Contract Claim Fails As A Matter of Law.

GA Escrow concedes in its Opposition that its breach of contract claim is based entirely on its assertion that Autonomy breached the Merger and Escrow Agreements by providing an "inadequate notice of claim." (Opp. at 11:6.) GA Escrow compromises its credibility by making this argument.

As an initial matter, the Payment Request has a subject line that reads, "Zantaz, Inc. Notice of Claim," and states that it is "a Payment Request with respect to indemnification of Losses under Article VII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement." (Kanter Decl., Ex. C)  There was no attempt whatsoever to confuse anyone about the nature of the document; the document is quite clear on its face.

GA Escrow's Complaint nevertheless lists the following purported deficiencies regarding Autonomy's Payment Request:

(1)    it was not for a sum certain;

(2)    it did not describe the basis for the claim in sufficient detail; and

(3)    it failed to explain what representations or warranties had been breached.

(Complaint, ¶ 30.)

The foregoing allegations at least expose the fact that GA Escrow's breach of contract claim is nothing more than an objection to the form and content of the Payment Request, appearing on the face of the document on September 11, 2007. GA Escrow's breach of contract claim thus fails for the reasons set forth below.

### 1. The Key Allegations Of The Breach Of Contract Claim Are At Odds With the Parties' Agreements.

The most significant problem with GA Escrow's breach of contract claim is that it implicitly asks the Court to rewrite the parties' agreement, and disregard important, bargained-for provisions of the controlling Escrow Agreement, including Section 3(b)(iii) (specifying the time period within which GA Escrow was required to object to a payment request) and Section 8.6 of the Merger Agreement (providing that if no objection was received within the requisite time, the losses were deemed conclusive).

These procedures are straightforward, and provide for the orderly submission and handling of indemnity claims. They also provide a mechanism for ensuring that the claim process does not drag on for any unnecessary period of time. Instead of honoring the terms of its bargain, GA Escrow now seeks to effectively reform the parties' agreements by asking the Court to nullify both the Objection Period contained in Section 3(b)(iii) of the Escrow Agreement and Section 8.6 of the Merger Agreement. (Opp. at 12-13.) Yet, GA Escrow has not alleged any facts that would support reformation of the agreements. Under California Civil Code Section 3399, reformation is available only:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . .

GA Escrow has made no allegation (nor could it), that Section 3(b)(iii) of the Escrow Agreement and Section 8.6 of the Merger Agreement do not reflect the parties' intentions at the time the agreements were negotiated. Thus, it has provided no basis to suggest that the Court should disregard these provisions. In light of these provisions, it is clear that GA Escrow cannot state a valid claim for breach of contract.

        **a.**    ***GA Escrow Failed To Object During The 10-Day Objection Period.***

GA Escrow makes only passing reference to Section 3(b)(iii) of the Escrow Agreement in its opposition brief, which gives GA Escrow the right to object to any payment request within 10 days of receipt. If Autonomy's Payment Request in this case had been deficient, as GA Escrow now claims, then GA Escrow was entitled to object. Any such objection would have stopped the payment. Significantly, *all of the purported deficiencies identified by GA Escrow in its breach of contract claim appear on the face of the September 11, 2007 Payment Request*. GA Escrow offers no explanation in its opposition brief or elsewhere for its failure to object pursuant to Section 3(b)(iii).

Instead, GA Escrow urges the Court to disregard Section 3(b)(iii) based on the "delayed discovery" rule. This argument is a red herring. The delayed discovery rule provides that a cause of action does not accrue until a plaintiff suspects or *should have suspected* the defendant's wrongdoing. *Kline v. Turner,* 87 Cal.App. 4th 1369, 1375 (2001). Thus, a plaintiff's claims begin to accrue when the plaintiff had notice or information of circumstances *that would have put a reasonable person on inquiry*, or when the plaintiff *had the opportunity to obtain knowledge from sources open to its investigation. Gen. Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir. 1991).

In order to invoke the delayed discovery rule, a party must plead facts showing: (1) lack of knowledge; (2) lack of means of obtaining knowledge; and (3) how and when the fraud or mistake was actually discovered. *Id.; McCready v. American Honda Motor Co., Inc.*, 2006 WL 1708303, 4 (N.D. Cal. 2006) ("Here, Plaintiffs have not pled *any* facts regarding their purported lack of knowledge, their ignorance of Defendant's alleged fraud, why they lacked the means to discover the alleged fraud, whether they exercised reasonable diligence in investigating the alleged fraud, or when the alleged fraud was actually discovered."). No such facts have been alleged in GA Escrow's Complaint.

On the contrary, the allegations of the Complaint demonstrate that GA Escrow was well aware of the facts underlying its breach of contract claim on September 11, 2007 when it received the Payment Request. Every single allegation in GA Escrow's breach of contract

6
REPLY RE: MOTION TO DISMISS

claim pertains to the purported deficiencies in the Payment Request itself. As a result, there is no question that GA Escrow was aware of these deficiencies on September 11, 2007, and that there was no "delay" in GA Escrow's discovery of any relevant facts. GA Escrow's failure to object remains unexplained, but in any event provides no basis for disregarding the negotiated consequences of that failure.

The case on which GA Escrow relies in support of its argument regarding delayed discovery – *Weatherly v. Universal Music Publishing Group*, 125 Cal.App.4th 93 (2004) – is easily distinguished from the instant case. As an initial matter, that case involved two parties of different levels of sophistication, a music writer, on one hand, and Universal (one of the largest music publishers in the world), on the other hand.

But more importantly, the cases involve entirely different circumstances regarding discovery of the claims at issue. In *Weatherly*, the parties entered into an agreement regarding the music writer's songs in 1974. The agreement provided for payment of royalties, which were to be calculated in a particular manner. The writer received royalty statements for many years that appeared to comply with the agreement. In that regard, the writer stated: "I had no reason to believe that there were any problems with [Universal's] accountings and never saw anything in the statements that caused me concern." *Id*. at 916. It was not until his accountant performed an audit in 2001 that the true facts came to light. In particular, in the course of performing the audit, the accountant asked a representative of Universal how the royalties were calculated, and he was told that the calculation was based on 75% of the amount received by Universal, not 100% as the agreement required. *Id* at 917.

Thus, in *Weatherly*, the basis for the delayed discovery was the fact that the writer was not put on notice of the discrepancy in the applied formulae until years after the contract had been signed. The royalty statement – unlike the supposedly defective Payment Request here – was insufficient to put the plaintiff on actual or inquiry notice of his claim. Here, by contrast, every one of the "facts" upon which GA Escrow's breach of contract claim is based was actually or constructively known to GA Escrow on September 11, 2007. GA Escrow, in fact, complained of these supposed deficiencies in the notice 17 days later, negating the false

suggestion of its litigation counsel that GA Escrow's suspicions slowly developed over the months that followed because Autonomy (which, in fact, had no duty to provide any documentation to GA Escrow after its Losses had been conclusively established) did not agree to the exchange of information demanded by GA Escrow on terms demanded by GA Escrow.[2] The delayed discovery rule is inapplicable here.

### b. *Pursuant to Section 8.6, the Losses Were Deemed Conclusive.*

GA Escrow downplays the effect of Section 8.6 of the Merger Agreement. That is because Section 8.6 plainly and unambiguously provides that GA Escrow's failure to object within the requisite 10-day period meant that any losses submitted by Autonomy were "conclusively deemed Losses," subject to indemnification.

The only argument offered by GA Escrow as to why this provision should not dispose of its breach of contract claim is that "it does not expressly revoke GA Escrow's right to file a lawsuit disputing the Notice of Claim if it fails to object within 10-days [sic] due to the fraudulent behavior of Autonomy." (Opp. at 13:3-5.) Not surprisingly, GA Escrow cites no authority for this proposition, because the proposition makes no sense.

While it is true that Section 8.6 does not address GA Escrow's "right to file a lawsuit," the section clearly provides that *any losses claimed by Autonomy are deemed conclusive upon the expiration of the Objection Period*. GA Escrow cannot ignore the effect of Section 8.6 by disguising its untimely "objection" as a claim for breach of contract. To do so would render Section 8.6 a nullity. GA Escrow has provided no authority suggesting that vague allegations of fraudulent conduct can somehow be used to nullify a key provision in a contract. That is because the law provides otherwise. *See* Cal. Civ. Code Sec. 3399 (reformation permitted only where the agreement does not reflect the parties' intention when they made the agreement).

Section 8.6 also disposes of GA Escrow's argument that it is entitled to seek the damages alleged in the Complaint. As GA Escrow concedes, the only "damages" sought by

---

[2] Notably, GA Escrow makes no reference to the substantial amount of information provided by Autonomy in connection with a related claim, presumably as to do so would reveal that GA Escrow has no basis for asserting its fraud allegations against Autonomy and, in fact, would be precluded from so alleging in good faith under Rule 11.

GA Escrow in its Complaint are the $8 million released to Autonomy by U.S. Bank in response to its unobjected-to Payment Request. GA Escrow concedes, as it must, that it did not timely object to the Payment Request. Thus, Section 8.6 was triggered. GA Escrow agreed to each of these provisions. GA Escrow cannot now disregard the bargained-for terms of its agreements in order to avoid the consequences of its own actions or inactions.

### 2. **GA Escrow's Argument That the Payment Request Breached the Parties' Agreements Is Contradicted By the Terms of Those Very Agreements.**

In addition to contradicting the express terms of the parties' agreements, GA Escrow's argument that the Payment Request somehow breached those agreements is unavailing. Specifically, GA Escrow suggests that the Payment Request "did not satisfy the requirements of the Agreements to specify an 'amount requested' and constitutes a breach of the terms of those Agreements." (Opp. at 12:1-3.)

The first problem with this argument is that nowhere in the Agreements was there a "requirement" that Autonomy even make a Payment Request. As set forth more fully in Autonomy's moving papers, submitting a Payment Request was merely a condition precedent to Autonomy's right to indemnification for losses. Therefore, any deficiencies in the Payment Request cannot be the basis for a breach of contract claim.[3] Rather, the remedy in the event of such deficiencies would be for GA Escrow to object to the Payment Request on that basis.

The second problem is that the argument, in reality, is a matter of semantics. Even a cursory reading of the Payment Request makes it clear that there is an amount set forth in that Payment Request. If GA Escrow believes that the amount should not have been approximated, this purported "defect" was evident on the face of the document, which GA Escrow could have objected to within the 10-day period agreed upon by the parties (as it was obligated to do), and any suggestion that it should now be afforded the benefit of the "delayed discovery" rule is frivolous.

---

[3] GA Escrow tries to avoid this argument by attempting to distinguish *Britschgi v. McCall,* 41 Cal.2d 138 (1953), from the instant case. GA Escrow's attempt is unpersuasive. The holding of *Britschgi* – that a breach of contract claim cannot be based on an express covenant – is directly applicable here.

In addition, the Payment Request, on its face, sets forth the basis for Autonomy's claim. Autonomy specified four distinct bases for its claim: (1) material liabilities for fixed assets that were not disclosed Autonomy; (2) additional accounts payable that were not properly reflected in the financial statements; (3) inadequate provision for uncollected accounts receivables; and (4) inadequate provisions for accrued liabilities. Section 3(b)(ii) of the Escrow Agreement provides that Autonomy need only provide the basis for the claim "to the extent then known." If GA Escrow believed that the detail provided by Autonomy was insufficient, it was free to object to the Payment Request on this or any other ground, within the applicable time period, prior to the time that U.S. Bank released the funds to Autonomy. It never did so.

**B.     GA Escrow Has Not Stated A Claim For Breach of The Covenant Of Good Faith And Fair Dealing.**

A "breach of the covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1394 (1990).

Thus in order to assert such a claim, the allegations must show conduct of the defendant that "demonstrates failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Id*. at 1395.

In order to state a claim for breach of the covenant, the plaintiff must seek damages or relief *different from* that which is sought in a companion breach of contract claim. *Id*. ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated. Thus, absent those limited cases where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery.").

1    Here, GA Escrow has alleged no facts showing bad faith by Autonomy.  Instead, it makes only a conclusory allegation that Autonomy "falsely" submitted the Payment Request.  (Complaint, ¶ 36.)  This suggestion is false and highly offensive to Autonomy.  Of course, GA Escrow has pleaded no specific facts to actually support this allegation, and therefore its claim is deficient.  But it is also flawed for another reason:  GA Escrow seeks precisely the same damages in its breach of covenant claim as it does in its breach of contract claim – return of the money paid in response to Autonomy's Payment Request.  Under the California law, GA Escrow has not stated a claim for breach of the covenant of good faith and fair dealing.  *See Careau*, *supra*, 222 Cal.App.3d at 1395.

C. **GA Escrow's Fraud Claims Fail As A Matter of Law**

   1. **GA Escrow's Assertion That "A Fraud Appears To Have Been Committed" Falls Far Short Of The Heightened Pleading Requirements of Rule 9(b).**

GA Escrow's claim for intentional misrepresentation hinges entirely on its assertion that "a fraud appears to have been committed."  (Opp. at 9:19.)  Tellingly, GA Escrow does not allege in its Complaint a single fact in support of its suspicion that a fraud may have been committed by Autonomy.  Rather, GA Escrow simply alleges, on information and belief, that Autonomy "knowingly and falsely" submitted a false claim for payment.  (Complaint, ¶ 40.)

In its Opposition, GA Escrow tries to avoid the consequences of this pleading failure by arguing that it has stated a cause of action for fraud because "[b]ased on Autonomy's repeated refusal to provide any documentation to support its 'approximate' losses, the obvious inference is that no loss ever existed."  (Opp. at 9:21-22.)  GA Escrow is wrong for several reasons:

First, the Ninth Circuit has held that merely alleging "suspicious circumstances" without providing any specific factual allegations of wrongdoing is not sufficient to satisfy the heightened pleading requirement of Rule 9(b).  *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993) (dismissing complaint with prejudice pursuant to Rule 12(b)(6) where the plaintiff failed to set forth any factual basis for his allegation that defendants engaged in fraud, and instead based his claim on his suspicion of wrongdoing).

/ / /

1    The bar against basing fraud claims on speculation is necessary in order to effectuate the purpose of Rule 9(b): "Rule 9(b) serves to give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints as a pretext for the discovery of unknown wrongs." *In Re Stac Electronics Securities Litigation,* 89 F.3d 1399 (9th Cir. 1996) (affirming order dismissing fraud claims pursuant to Rule 12(b)(6)).

GA Escrow attempts to do here what *Neubronner* and *Stac* make clear that it cannot: that is, base its claim on its unfounded suspicion that fraud was committed in order to burden Autonomy with litigation. That GA Escrow cannot come up with any facts to support its conclusory allegations of fraud, alone, is fatal to its fraud claim.

<u>Second</u>, GA Escrow's assertion that Autonomy failed to provide documentation supporting its claim (and thus the "obvious inference" is that fraud was committed) is, first of all, a blatant misstatement of fact contradicted by numerous documents beyond the scope of this motion, but importantly for purposes of this motion, *directly at odds with key provisions of the parties' agreements*. Indeed, there is *nothing* in those agreements that obligated Autonomy to provide any documentation whatsoever beyond its Payment Request, which, in fact, sets forth the factual basis for its claim. Pursuant to Section 8.6 of the Merger Agreement, the claims were conclusively deemed to be Losses as of September 25, 2007.

As GA Escrow knows quite well, it did not object to the Payment Request or seek any additional information within the Objection Period. At that point, the agreements did not obligate Autonomy to do *anything* further to justify its claim, and thus there can be no proper inference of malfeasance from the allegation that Autonomy failed to do something that it was not required to do in the first place.

<u>Third</u>, GA Escrow's Complaint fails to allege any facts demonstrating how the Payment Request was false. Rule 9(b) requires a plaintiff to "make precise allegations explaining how the alleged misstatements were misleading or untrue when made." *Stac*, 89 F.3d at 1409) (dismissal warranted when plaintiff "failed to make any showing that" the statements were inaccurate.) Here, the only allegation contained in the Complaint about purported misstatements by Autonomy was that it "falsely" put forth certain claims. (Complaint, ¶ 25.)

The Complaint does not contain a single factual allegation demonstrating how the Payment Request was supposedly false. In fact, GA Escrow does not identify a single false statement of any kind contained in the Payment Request. Instead, GA Escrow attempts to rely on the purported fact that Autonomy did not provide any information "indicating why its actions do not constitute fraud." (Complaint, ¶ 24.) Of course, there was nothing in the parties' agreements, nor otherwise at law, which would require Autonomy to provide information demonstrating that it did not commit fraud. Rather, Rule 9(b) puts the burden squarely on GA Escrow to come forward with specific facts demonstrating fraud. It has not done so, and therefore its claim must fail.

Although GA Escrow is adamant that it has stated a claim for fraud, it nonetheless asks the Court for leave to amend its Complaint, without, of course, suggesting a single additional fact that it might allege to cure the deficiencies in its fraud claim. There is no basis for GA Escrow's request. Respectfully, leave to amend should be denied.[4]

### 2. The Negligent Misrepresentation Claim Is Barred By The Economic Loss Rule.

GA Escrow argues in its opposition that it has "properly alleged damages" in connection with its fraud claims. (Opp. at 15:22.) The problem with this argument is that the damages GA Escrow seeks in connection with its negligent misrepresentation claim are barred by the economic loss rule.

Under California law, purely economic losses due to disappointed expectations do not constitute cognizable injury. *See Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004). "Quite simply, the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Id.*

If a plaintiff cannot "demonstrate harm above and beyond a broken contractual promise," the economic loss rule bars the claim. *Id.* Thus, the economic loss rule applies

---

[4] GA Escrow also argues that the delayed discovery rule should apply to its fraud claims. However, as with its breach of contract claim, GA Escrow has failed to allege any facts that would support application of that rule to its fraud claims.

where allegations made with regard to the breach of contract claim closely parallel those made with regard to the negligence and negligent misrepresentation claims. *Lincoln General Insurance Company v. Access Claims Adm'rs, Inc.,* 2007 WL 2492436 (E.D. Cal. 2007) (granting motion to dismiss claims for negligence and negligent misrepresentation under California's economic loss rule); *Neu v. Terminix Intern., Inc.*, L 962096, 4-5 (N.D.Cal. 2008) (granting motion to dismiss cause of action for negligent training, supervision and retention under California's economic loss rule).  In such cases, "the breach of contract claim subsumes the negligence and negligent misrepresentation claims." *Lincoln General Ins. Co.*, 2007 WL 2492436, * 8.

Here, GA Escrow's claim for negligent misrepresentation mirrors its breach of contract claim and seeks precisely the same damages:  the $8 million dollars it claims was improperly paid to Autonomy.  (Complaint, ¶¶ 47-48)  Thus, the claim is barred by the economic loss rule.

**D.    GA Escrow Cannot State A Claim For Unjust Enrichment, Nor Is It Entitled To An Accounting.**

GA Escrow is correct that in order to state a claim for unjust enrichment, it must plead that Autonomy has unjustly retained a benefit at the expense of GA Escrow.  (Opp. at 16:23.) While GA Escrow does make such an allegation, this allegation is directly contradicted by Section 8.6 of the Merger Agreement, which plainly provides that because GA Escrow did not object to the Payment Request within the Objection Period, the amounts claimed in that request are conclusively deemed to be losses subject to indemnification.  Therefore, GA Escrow cannot allege that Autonomy has unjustly retained any benefit, as Section 8.6 makes it clear that Autonomy was entitled to indemnification.

Similarly, there is no basis for GA Escrow's request for an accounting.  An accounting is warranted only if there is a "balance due" to the plaintiff.  *Brea v. McGlashan*, 3 Cal.App.2d 454 (1934) (cause of action for accounting requires a statement that there is a balance due to the plaintiff).  Section 8.6 of the Merger Agreement precludes any such allegation, as there is no "balance due" to GA Escrow.

## III.

## **CONCLUSION**

As set forth above, each of GA Escrow's claims fails as a matter of law once the plain language of the parties' agreements is taken into account. GA Escrow has set forth no additional facts that it could allege to save its claims. This is a case of one party going to unfortunate measures to hide its simple failure to comply with its contractual obligations, and engaging in inappropriate mudslinging in an effort to disguise the reality of what actually happened. This is not a case of a party who made a mistake, then honorably admitted to it and asked the Court for equitable relief. This is a case of a party that has chosen to point its finger outward, and to accuse Autonomy, which has done absolutely nothing wrong in this case, of very serious, indeed fraudulent, wrongdoing in court documents now publicly available to the investment community. There is no merit whatsoever to these allegations, and there is no amendment that could be made which would satisfy the requirements of Rule 11. Autonomy respectfully requests that GA Escrow's Complaint be dismissed without leave to amend.

Dated: June 27, 2008                    Respectfully submitted,

                                        DOLL AMIR & ELEY


                                        By   */s/ Gregory L. Doll*                    .
                                             Gregory L. Doll
                                        Attorneys for Defendant Autonomy Corporation plc

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, California 90067.

On June 27, 2008, I served the foregoing document(s) described as **DEFENDANT AUTONOMY CORPORATION PLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the parties in this action by serving:

> Arthur J. Shartsis, Esq.
> Gregg S. Farano, Esq.
> Shartsis Friese LLP
> One Maritime Plaza, 18th Floor
> San Francisco, CA 94111

( )    **By Envelope**: by placing ( ) the original ( ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

( )    **By Mail:** As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )    **By Facsimile Transmission:** On June 27, 2008, I caused the above-named document to be transmitted by facsimile transmission to the offices of the addressee(s) at the facsimile number(s) so indicated above. The transmission was reported as complete and without error.

( )    **By Electronic Mail:** I scanned and submitted an electronic versions of the document via electronic mail to the attached Service List and confirmed receipt of the e-mail.

(X)    **By Electronic Filing:** Based upon my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this Document, upon its submission to the Court, will be electronically served on the addressees.

Executed on June 27, 2008 at Los Angeles, California.

( )    **STATE**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(X)    **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

> _/s/ Susan Reimers_
> Susan Reimers