SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
GREGG S. FARANO (Bar #221505)
KATHERINE R. CALDWELL (Bar #247390)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Emails: ashartsis@sflaw.com, gfarano@sflaw.com

Attorneys for Plaintiff
GA ESCROW, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GA ESCROW, LLC, a Delaware limited liability company, as Representative for the Escrow Participants,<br><br>Plaintiff,<br><br>v.<br><br>AUTONOMY CORPORATION PLC, a corporation formed under the laws of England and Wales<br><br>Defendant. | Case No. C08-01784-SI<br><br>**FIRST AMENDED COMPLAINT FOR FRAUDULENT MISREPRESENTATION; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENT MISREPRESENTATION; UNJUST ENRICHMENT; ACCOUNTING; BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Judge:** The Honorable Susan Illston |

Plaintiff GA Escrow, LLC ("GA Escrow," the "Escrow Participants' Representative" or "Plaintiff") brings this action against defendant Autonomy Corporation PLC ("Autonomy" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff, the representative of the former shareholders of Zantaz, Inc. ("Zantaz" or the "Company"), brings this action to obtain the return of $8 million that Defendant, which acquired Zantaz, wrongfully misappropriated to itself. Defendant fraudulently caused the removal of money from an Indemnity Escrow Account, to which these improperly-removed funds should now be returned, along with appropriate interest.

## PARTIES

2. Plaintiff GA Escrow is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 3 Pickwick Plaza, Greenwich, Connecticut 06830. Zantaz, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 5758 West Las Positas Blvd, Pleasanton, California 94588. GA Escrow was and is the appointed Escrow Participants' Representative for Zantaz's former shareholders (as well as former holders of vested Company options and former holders of warrants to purchase shares in the Company) (together, the "Escrow Participants") in connection with Defendant's acquisition of Zantaz by means of the merger of Zantaz into a wholly-owned subsidiary of Defendant.

3. Defendant Autonomy is a corporation formed under the laws of England and Wales with its principal place of business located at Cambridge Business Park, Cowley Road, Cambridge CB4 0WZ, United Kingdom.

4. Antelope Acquisition Corp. ("Antelope") is a corporation organized and existing under the laws of the State of California. Antelope is a wholly-owned subsidiary of Autonomy, formed by Autonomy for the purpose of acquiring all outstanding securities of Zantaz by means of a merger of Zantaz into Antelope.

5. U.S. Bank National Association ("U.S. Bank" or the "Escrow Agent") is a national banking association doing business in the City of San Francisco in the State of California with its principal place of business in Minneapolis, Minnesota. U.S. Bank served as the escrow agent for GA Escrow and Autonomy in connection with the acquisition and merger.

## JURISDICTION AND VENUE

6. On March 4, 2008, plaintiff filed a complaint against defendant in the Superior Court of California, County of San Francisco. On April 2, 2008 defendant removed this action to federal court, pursuant to the diversity jurisdiction provisions of 28 U.S.C. § 1332 and the removal provisions of 28 U.S.C. § 1441(b).

7. Venue is proper in the Northern District of California pursuant to 28 U.S.C. 1391(a) and (c) because a substantial part of the events giving rise to the claim occurred and

Defendant is subject to personal jurisdiction in this judicial district. Additionally, the parties to this action have consented to the jurisdiction of the federal courts located in San Francisco, California.

## FACTUAL BACKGROUND

### The Merger Agreement

8. Zantaz provides electronic data archiving software solutions and services to companies throughout the world.

9. On or about July 3, 2007, Autonomy, GA Escrow, Antelope and Zantaz entered into an Agreement and Plan of Merger (the "Merger Agreement") by which Autonomy, through its wholly-owned subsidiary, Antelope, would acquire all of the outstanding shares of Zantaz capital stock (the "Merger Transaction"). Pursuant to Section 2.1 of the Merger Agreement, the aggregate amount to be paid to the former owners of Zantaz was equal to $400,000,000 in cash, less closing deductions (the "Merger Consideration").

10. Pursuant to Section 2.6(c)(i) of the Merger Agreement, an amount equal to $20,500,000 was withheld from the Merger Consideration and placed into escrow. These funds were to be available to satisfy potential indemnification claims to which Autonomy might be entitled pursuant to Article VIII of the Merger Agreement. To the extent not used to cover such indemnification claims, the monies withheld from the Merger Consideration, together with all earnings thereon (the "Indemnity Escrow Fund"), were to be paid to the Escrow Participants.

11. The Merger Agreement entitled Autonomy to seek indemnification from the Indemnity Escrow Fund for various "Losses" as defined in Section 8.2(a). Losses were defined to include, among other things, losses or damages arising out of (1) any breach by the Company of any representation or warranty contained in the Merger Agreement or (2) any breach by the Company of any covenant or agreement contained in the Merger Agreement.

12. The Merger Agreement requires all claims for Losses to be made by written notice delivered by Autonomy to GA Escrow and the Escrow Agent promptly after discovery of a matter giving rise to such a claim.

13. The Merger Transaction closed on or about July 23, 2007. As of that date,

- 3 -

Case No.
C08-01784-SI                                FIRST AMENDED COMPLAINT

Defendant is subject to personal jurisdiction in this judicial district. Additionally, the parties to this action have consented to the jurisdiction of the federal courts located in San Francisco, California.

## FACTUAL BACKGROUND

### The Merger Agreement

8. Zantaz provides electronic data archiving software solutions and services to companies throughout the world.

9. On or about July 3, 2007, Autonomy, GA Escrow, Antelope and Zantaz entered into an Agreement and Plan of Merger (the "Merger Agreement") by which Autonomy, through its wholly-owned subsidiary, Antelope, would acquire all of the outstanding shares of Zantaz capital stock (the "Merger Transaction"). Pursuant to Section 2.1 of the Merger Agreement, the aggregate amount to be paid to the former owners of Zantaz was equal to $400,000,000 in cash, less closing deductions (the "Merger Consideration").

10. Pursuant to Section 2.6(c)(i) of the Merger Agreement, an amount equal to $20,500,000 was withheld from the Merger Consideration and placed into escrow. These funds were to be available to satisfy potential indemnification claims to which Autonomy might be entitled pursuant to Article VIII of the Merger Agreement. To the extent not used to cover such indemnification claims, the monies withheld from the Merger Consideration, together with all earnings thereon (the "Indemnity Escrow Fund"), were to be paid to the Escrow Participants.

11. The Merger Agreement entitled Autonomy to seek indemnification from the Indemnity Escrow Fund for various "Losses" as defined in Section 8.2(a). Losses were defined to include, among other things, losses or damages arising out of (1) any breach by the Company of any representation or warranty contained in the Merger Agreement or (2) any breach by the Company of any covenant or agreement contained in the Merger Agreement.

12. The Merger Agreement requires all claims for Losses to be made by written notice delivered by Autonomy to GA Escrow and the Escrow Agent promptly after discovery of a matter giving rise to such a claim.

13. The Merger Transaction closed on or about July 23, 2007. As of that date,

1  Autonomy acquired the Escrow Participants' stock in Zantaz, and Autonomy assumed control and
2  management of Zantaz.

3　　　14.　Pursuant to the Representative Agreement, incorporated into the Merger Agreement as Exhibit A, and with the approval of the Escrow Participants, GA Escrow was appointed to act as the representative, attorney-in-fact and agent for and on behalf of the Escrow Participants. As such, it was granted authority to make decisions and take actions pertaining to the Merger Agreement, including but not limited to filing this action.

### The Escrow Agreement

　　　15.　On or about July 20, 2007, GA Escrow, Autonomy, and U.S. Bank entered into an Escrow Agreement (the "Escrow Agreement") appointing U.S. Bank as Escrow Agent. As such, U.S. Bank was to manage the Indemnity Escrow Fund in accordance with the terms of the Escrow Agreement. The Escrow Agreement is incorporated into the Merger Agreement as Exhibit F.

　　　16.　Consistent with the Merger Agreement, the Escrow Agreement provided for Autonomy, at the time of the closing of the Merger Agreement, to deposit $20,500,000 constituting the Indemnity Escrow Fund, with the Escrow Agent.

　　　17.　In accordance with Article VIII of the Merger Agreement, Section 3(b)(ii) of the Escrow Agreement requires Autonomy to make a written request to both the Escrow Participants' Representative and the Escrow Agent for the payment of any claim for indemnification for Losses as defined in Article VIII of the Merger Agreement (a "Payment Request"). Specifically, the Escrow Agreement requires that such a Payment Request "set forth the amount requested, and in reasonable detail the specific basis for the determination of the amount of the claim and as to why Parent Indemnitee [Autonomy] is entitled to the payment of such amount (to the extent then known by the Parent Indemnitee)…."

### Autonomy's Purported Notice of Claim

　　　18.　On September 11, 2007, Autonomy sent a letter to GA Escrow and the Escrow Agent purporting to assert certain claims under Section 8.2(a) of the Merger Agreement for Losses of approximately $8,000,000 (the "Notice of Claim"). In its letter, Autonomy claimed the following losses:

(1) undisclosed liabilities for fixed assets totaling approximately $2,000,000;

(2) undisclosed accounts payable totaling approximately $2,000,000;

(3) inadequate provision for uncollectible accounts receivable of approximately $2,000,000; and

(4) inadequate provision for accrued liabilities of approximately $2,000,000.

19. Nothing in Autonomy's Notice of Claim indicated to GA Escrow that it was fraudulent.

20. After the last day for filing an objection to Autonomy's Notice of Claim, GA Escrow for the first time was advised by a former officer of the Company with knowledge of the Company's finances that there was no basis for the claimed Losses listed in Autonomy's Notice of Claim.

21. After being so advised, GA Escrow requested that Autonomy provide specific detail to support its claimed Losses.

22. In response to GA Escrow's request, Autonomy refused to provide any information or documentation, and instead noted only that GA Escrow was too late to object to its claimed Losses pursuant to the terms of the Escrow Agreement.

23. Despite GA Escrow's repeated requests for specific detail to support its claimed Losses listed in the Notice of Claim, to date Autonomy has failed to provide any specific information or documentation that substantiates its claims.

24. In fact, at the same time it refused to provide GA Escrow with specific support for its claimed Losses, Autonomy stifled GA Escrow's continuing efforts to verify the accuracy of Autonomy's claims by cautioning the former Zantaz officer who advised GA Escrow that there was no basis for such claims against providing assistance to GA Escrow.

25. Autonomy's efforts to cut off GA Escrow from the sources of information necessary to verify Autonomy's claims and Autonomy's responses to GA Escrow's continued requests for such verification confirmed that there was no valid basis under the Merger Agreement for the Losses claimed by Autonomy in its Notice of Claim. Even though GA Escrow has advised Autonomy in writing that a fraud appears to have been committed, Autonomy has

1  failed to provide any information or documentation supporting its claimed Losses or indicating
2  why its actions do not constitute fraud.

### Autonomy's Deception of GA Escrow and the Escrow Agent

26. Autonomy's failure to provide any support for the Losses claimed in its Notice of Claim despite repeated requests by GA Escrow is due to the fact that Autonomy knowingly and falsely put forth claims for Losses without having any reasonable factual basis to support such Losses.

27. In knowingly providing a false Notice of Claim, Autonomy made material misrepresentations to GA Escrow and the Escrow Agent, U.S. Bank, with the intention that GA Escrow would rely upon those misrepresentations and not object to the Notice of Claim within the Objection Period, as defined in the Escrow Agreement, and the Escrow Agent would rely upon those misrepresentations and release $8 million to Autonomy.

28. In or around September 26, 2007, in reliance on Autonomy's material misrepresentations, U.S. Bank improperly released $8 million from the Indemnity Escrow Fund to Autonomy thereby causing damages to the Escrow Participants.

### Deficiency of Autonomy's Notice of Claim

29. In order to preserve its right of appeal, GA Escrow respectfully restates the following factual allegations in support of its Breach of Contract claim included in its original complaint.

30. Contrary to the terms of the Escrow Agreement, Autonomy's purported Notice of Claim failed to provide "reasonable detail" for its alleged Losses. As such, the Notice of Claim failed to constitute a proper "Payment Request" as required by Section 3(b)(ii) of the Escrow Agreement.

31. Among its deficiencies, the Notice of Claim was not made for a sum certain. Instead, the letter referenced four general types of Losses, as noted above, and claimed that each totaled "approximately $2,000,000." There is nothing in the transaction documents that contemplates the payment of any "approximate" amounts.

32. Additionally, the Notice of Claim did not state the specific basis in "reasonable

- 6 -
Case No.
C08-01784-SI                                    FIRST AMENDED COMPLAINT

detail" for the determination of the amount of the purported Losses. There was no specification of the purported "liabilities for fixed assets" alleged to be "undisclosed," the specific "accounts payable" alleged to have been "undisclosed," the specific "accounts receivable" alleged to be "uncollectible," nor the specific "accrued liabilities" for which it is alleged there was "inadequate provision."

33.  Additionally, the Notice of Claim failed to set forth any explanation as to what, if any, representation or warranty the Company allegedly breached that would result in Autonomy's being entitled to payment of any amount under the indemnification provisions of the Merger Agreement.

## FIRST CAUSE OF ACTION

### Fraudulent Misrepresentation

34.  GA Escrow realleges and incorporates paragraphs 1 through 28 above as though fully set forth herein.

35.  Pursuant to the terms of the Escrow Agreement, U.S. Bank acted as an agent of GA Escrow in connection with the maintenance and distribution of funds from the Indemnity Escrow Fund.

36.  In an effort to obtain a distribution from the Indemnity Escrow Fund, Defendant knowingly and falsely submitted to GA Escrow and U.S. Bank claims for Losses without having any reasonable factual basis to support such Losses.

37.  In reliance on such false representations by Defendant, GA Escrow did not object to Defendant's claimed Losses until after being advised for the first time, by a former Zantaz officer with knowledge of the Company's finances, that there was no basis for such claimed Losses. By that time, U.S. Bank, in reliance on the same false representations by Defendant, had distributed $8 million from the Indemnity Escrow Account to Defendant. Defendant submitted such claimed Losses with the intent that both GA Escrow and U.S. Bank rely upon them and that U.S. Bank release $8 million.

38.  As a result of Defendant's fraudulent misrepresentations GA Escrow and the other Escrow Participants have suffered damages in an amount to be determined at trial, but currently

believed to be $8 million, plus interest.

39. Defendant acted with malice, fraud and oppression in making these misrepresentations, warranting the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

40. GA Escrow realleges and incorporates paragraphs 1 through 28 above as though fully set forth herein.

41. Pursuant to the terms of the Escrow Agreement, U.S. Bank acted as an agent of GA Escrow in connection with the maintenance and distribution of funds from the Indemnity Escrow Fund.

42. In an effort to obtain a distribution from the Indemnity Escrow Fund, Defendant negligently and recklessly submitted to GA Escrow and U.S. Bank claims for Losses without having any reasonable factual basis to support such Losses.

43. In reliance on such negligent and reckless representations by Defendant, GA Escrow did not object to Defendant's claimed Losses until after being advised for the first time, by a former Zantaz officer with knowledge of the Company's finances, that there was no basis for such claimed Losses. By that time, U.S. Bank, in reliance on the same negligent and reckless representations by Defendant, had distributed $8 million from the Indemnity Escrow Account to Defendant. Defendant submitted such claimed Losses with the intent that both GA Escrow and U.S. Bank rely upon them and that U.S. Bank release $8 million.

44. As a result of Defendant's negligent misrepresentations, GA Escrow and the other Escrow Participants have suffered damages in an amount to be determined at trial, but currently believed to be $8 million, plus interest.

## THIRD CAUSE OF ACTION

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

45. GA Escrow realleges and incorporates paragraphs 1 through 28 and 34 through 44 above as though fully set forth herein.

46. An implied term of the Merger Agreement and the Escrow Agreement was that the

- 8 -

Case No.
C08-01784-SI                                FIRST AMENDED COMPLAINT

parties would act in good faith to perform the Merger Agreement and the Escrow Agreement, and that they would take no action to defeat or interfere with or prevent the Agreements from being performed or to interfere with or prevent GA Escrow and the other Escrow Participants from realizing the benefits of the Agreements.

47.  Defendant has breached the implied covenant of good faith and fair dealing by, among other things, knowingly and falsely putting forth claims for Losses without having any reasonable factual basis to support such Losses.

48.  As a result of Defendant's breaches of the implied covenant of good faith and fair dealing, GA Escrow and the other Escrow Participants have suffered damages in an amount to be determined at trial, but currently believed to be $8 million, plus interest.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

49.  GA Escrow realleges and incorporates paragraphs 1 through 28 and 34 through 48 above as though fully set forth herein.

50.  Defendant has been unjustly enriched because it has been provided $8 million when in fact, under the terms of the Merger Agreement, there was no basis for Defendant's claimed Losses.

51.  It is unfair, inequitable and unconscionable for Defendant to obtain and retain such a windfall and receive unjust enrichment at the expense of the Escrow Participants.

52.  Defendant has been unjustly enriched in an amount to be determined at trial, but currently believed to be $8 million, plus interest. The entire sum should be returned to the Indemnity Escrow Fund.

## FIFTH CAUSE OF ACTION

### Accounting

53.  GA Escrow realleges and incorporates paragraphs 1 through 28 and 34 through 52 above as though fully set forth herein.

54.  Under the terms of the Merger Agreement, the Escrow Participants are entitled to a distribution of the Indemnity Escrow Fund less any Losses actually suffered by Autonomy.

55. GA Escrow seeks an accounting of the exact Losses, if any, arising out of any breaches of any representations, warranties, covenants or agreements in the Merger Agreement so that it may obtain a full and proper disbursement of the Indemnity Escrow Fund to the Escrow Participants in accordance with the terms of the Merger Agreement.

### SIXTH CAUSE OF ACTION

### Breach Of Contract

56. GA Escrow realleges and incorporates paragraphs 1 through 33 above as though fully set forth herein.

57. GA Escrow has performed all conditions, covenants and promises required to be performed on its part in accordance with the terms and conditions of the Merger Agreement and the Escrow Agreement.

58. Defendant breached the Merger Agreement and the Escrow Agreement by, among other things, failing to provide a proper Payment Request to GA Escrow and the Escrow Agent. Defendant purported request was deficient because, among other reasons, (1) it was not made for a sum certain; (2) it did not state the specific basis in "reasonable detail" for the determination of the amount of the purported Losses; and (3) it failed to set forth any explanation as to what representation or warranty the Company allegedly breached that would result in Defendant being entitled to payment under the indemnification provisions of the Merger Agreement.

59. There is no provision in any transaction document for a claim for losses in an "approximate" amount. Notwithstanding this, Defendant improperly claimed an "approximate" amount and received $8,000,000.

60. Further, there was no basis for the $8,000,000 in alleged "Losses" claimed by Autonomy.

61. As a result of Defendant's breaches of the Merger Agreement and the Escrow Agreement, GA Escrow and the other Escrow Participants have suffered damages in an amount to be determined at trial, but currently believed to be $8 million, plus interest.

### PRAYER

**WHEREFORE,** Plaintiff GA Escrow, as Escrow Participants' Representative prays for

judgment as follows:

1. For the return by Defendant of the $8 million it received from the Escrow Agent for its claims for purported Losses to the Indemnity Escrow Fund, plus interest;

2. For an accounting of any and all Losses, as defined in the Merger Agreement, claimed by Defendant;

3. For general and special damages sufficient to compensate GA Escrow for all economic injury suffered as a result of Defendant's misconduct;

4. For punitive damages in such amount as the Court or the jury may award;

5. For costs of suit incurred herein, including reasonable attorneys' fees; and

6. For other and further relief as the Court may deem just and proper.

DATED: August 1, 2008            SHARTSIS FRIESE LLP


                                 By:   */s/ Arthur J. Shartsis*
                                       ARTHUR J. SHARTSIS
                                 Attorneys for Plaintiff
                                 GA ESCROW, LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: August 1, 2008            SHARTSIS FRIESE LLP


                                 By:   */s/ Arthur J. Shartsis*
                                       ARTHUR J. SHARTSIS
                                 Attorneys for Plaintiff
                                 GA ESCROW, LLC

7602\001\GFARANO\1522833.8