1   **DOLL AMIR & ELEY LLP**
    GREGORY L. DOLL (SBN 193205)
2   gdoll@dollamir.com
    MARY TESH GLARUM (SBN 175181)
3   mglarum@dollamir.com
    1888 Century Park East
4   Suite 1106
    Los Angeles, California  90067
5   Telephone: (310) 557-9100
    Facsimile:  (310) 557-9101
6
    Attorneys for Defendants
7   AUTONOMY CORPORATION PLC

8               **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10
    GA ESCROW, LLC, a Delaware limited          CASE NO.  08-CV-1784
11  liability company, a Representative for the
    Escrow Participants,
12
                            Plaintiff,          **DEFENDANT AUTONOMY**
13                                              **CORPORATION PLC'S MOTION TO**
         v.                                     **DISMISS PURSUANT TO RULE 12(b)(6)**
14                                              **OF THE FEDERAL RULES OF CIVIL**
    AUTONOMY CORPORATION PLC, a                 **PROCEDURE**
15  corporation formed under the laws of
    England and Wales
16                                              Date:   October 31, 2008
                            Defendants.         Time:  9:00 a.m.
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** ................................................................................ 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... 1

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 4

III.  FACTUAL OVERVIEW ....................................................................................... 4

    A. The Merger Transaction ..................................................................................... 4

        1.    The Merger Agreement .......................................................................... 5

        2.    The Escrow Agreement .......................................................................... 5

    B. Autonomy's September 11, 2007 Payment Request ........................................... 7

    C. GA Escrow's Untimely Objection to the Payment Request ............................... 8

    D. GA Escrow Files The Instant Lawsuit ............................................................... 9

    E. GA Escrow's Disingenuous Attempt to Assert Fraud Claims ............................ 9

IV.   ARGUMENT ...................................................................................................... 11

    A. The Allegations of GA Escrow's Claims For Fraudulent and Negligent
        Misrepresentation Fall Far Short of Rule 9(b) .............................................. 11

        1.    *GA Escrow's Reliance On Vague Statements By An Unidentified Source Does Not
            Save Its Fraud Claims* ....................................................................... 11

        2.    *GA Escrow Is Not Entitled To The Relaxed Standards for Rule 9(b) Applicable In
            Certain Cases* ..................................................................................... 14

        3.    *Leave To Amend Should Be Denied* .................................................... 14

    B. GA Escrow's Claim for Negligent Misrepresentation Is Barred By the
        Economic Loss Rule ....................................................................................... 15

    C. GA Escrow's Claim for Breach of the Covenant of Good Faith and Fair Dealing Is
        Based on The Same Facts As Its Breach of Contract Claim and Thus Fails As A Matter
        Of Law .......................................................................................................... 16

    D. GA Escrow's Unjust Enrichment Claim Fails as a Matter of Law,
        and It Is Not Entitled To an Accounting .......................................................... 17

    E. GA Escrow's Breach of Contract Claim Is Barred By the Express Terms of the Parties'
        Agreements ................................................................................................... 17

V.    CONCLUSION ................................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*Bionghi v. Metropolitan Water District of So. California*, 70 Cal.App.4th 1358 (1999)..............16

*Brea v. McGlashan*, 3 Cal.App.2d 454, 39 P.2d 877 (1934).......................................................17

*Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371 (1990)........16, 17

*Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305 (1968) ......................14

*County of Santa Clara v. Astra U.S., Inc.*, 428 F.Supp.2d 1029 (N.D. Cal. 2006) ...............13, 17

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086 (C.D. Cal. 1999).........11

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ......................................................11

*Janis v. Cal. State Lottery Comm'n*, 68 Cal.App.4th 824 (1998) ...............................................17

*Jogani v. Superior Court*, -- Cal.Rptr.3d --, 2008 WL 2941864, * 7 (Aug. 1, 2008) ................17

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994)..........................................................................11

*Lincoln General Insurance Company v. Access Claims Adm'rs, Inc.,*

    2007 WL 2492436 (E.D. Cal. 2007)......................................................................................15

*Marina Tenants Assn'n v. Deauville Marina Development Co., Ltd.,*

    181 Cal.App.3d 122 (1986) ..................................................................................................17

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 131 Cal.Rptr.2d 347 (2003)....17

*Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101 (C.D. Cal. 2003)....................11

*Neu v. Terminix Intern., Inc.*,  2008 WL 962096, * 4-5 (N.D.Cal. 2008) ..................................15

*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)..............................................................11

*Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 22 Cal.Rptr.3d 352,

    102 P.3d 268 (2004) .............................................................................................................15

*U.S. ex rel Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048 (9th Cir. 2001) ............................14

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)............................................11, 13

*Yourish v. California Amplifer*, 191 F.3d 983, 994 (9th Cir. 1999) .......................................12, 13

**Statutes**

Fed. R. Civ. Pro. 9(b)...................................................................................................11, 12, 14

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF GA ESCROW, LLC AND ITS COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on October 31, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Susan Illston, Defendant Autonomy Corporation plc ("Autonomy") will move, and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing plaintiff GA Escrow, LLC's ("GA Escrow") First Amended Complaint for failure to state a claim on which relief can be granted. For the reasons set forth below, Autonomy respectfully requests that GA Escrow's First Amended Complaint be dismissed without leave to amend.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This is a case where two highly sophisticated commercial entities, both represented by prestigious law firms, completed a corporate transaction in which the defendant, Autonomy, paid approximately $400 million to acquire a third party. Of that amount, $20,500,000 was set aside in an escrow account maintained at U.S. Bank to be used to indemnify Autonomy for losses it might sustain in connection with the acquisition. The parties agreed to a simple procedure to administer these claims:

Step One:      Autonomy was to submit written notice – a "Payment Request" – of its alleged claim for losses subject to indemnification.

Step Two:      GA Escrow would then have 10 days to object to the Payment Request.

Step Three:   If GA Escrow objected to the Payment Request for any reason, no funds could be released to Autonomy. If GA Escrow failed to object to the Payment Request within 10 days, Autonomy's claimed losses would be "conclusively deemed Losses subject to indemnification," whereupon U.S. Bank would disburse funds to Autonomy to cover such Losses.

Autonomy followed this procedure to the letter. On September 11, 2007, Autonomy submitted a Payment Request for $8 million. Autonomy delivered a copy of the Payment Request to U.S. Bank, GA Escrow, and GA Escrow's outside legal counsel. Autonomy made

clear that this document – with the subject line, "Zantaz, Inc. Notice of Claim" – was indeed "a Payment Request with respect to indemnification of Losses under Article VIII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement."

Ten days passed without objection by GA Escrow or its counsel, at which time Autonomy's claimed losses were "conclusively deemed Losses subject to indemnification." Seven more days passed without word from GA Escrow or its counsel, in which time U.S. Bank disbursed funds to indemnify Autonomy for these Losses, as it was required to do under the Escrow Agreement. Then, on the 17th day after Autonomy made its Payment Request, GA Escrow attempted to assert a belated objection to the Payment Request, suggesting that it was insufficiently detailed. GA Escrow, however, had missed its deadline to object: the Losses had been conclusively established; the funds had been disbursed. In a word, what had happened in this case was *precisely what was supposed to happen* under the agreements at issue.

GA Escrow then turned to the legal process, seeking to hide its own failure to comply with its contractual obligations through a variety of offensive legal theories aimed at Autonomy. GA Escrow first claimed that it was Autonomy, not GA Escrow, who breached the controlling agreements. That claim, however, suffered from numerous defects – most notably, GA Escrow could not point to any alleged conduct on Autonomy's part that did not comply with its obligations under the controlling contracts. Thus, the Court dismissed the claim pursuant to Rule 12(b)(6). GA Escrow adds nothing to its breach of contract claim in its amended complaint, which it restates "[i]n order to preserve its right of appeal," and thus that claim once again is subject to dismissal.

GA Escrow's remaining claims are closely tied to its breach of contract claim and should be dismissed for the following reasons:

In order to state a valid claim for breach of the implied covenant, GA Escrow must seek damages or relief *different from* that which is sought in a companion breach of contract claim. Here, GA Escrow seeks *precisely the same* damages in connection with both claims. Its breach of implied covenant claim should be dismissed.

1      In order to state a valid claim for negligent misrepresentation, GA Escrow must again

2  seek damages that are *different from* the economic damages it expected to recover under its

3  breach of contract theory.  This is known as the economic loss rule.  In both its breach of

4  contract claim and negligent misrepresentation claims, however, GA Escrow asserts that

5  Autonomy submitted claims for which it had no factual basis (*i.e.*, alleging the same basis for

6  relief), and again seeks *precisely the same* damages under each theory.  The economic loss rule

7  bars GA Escrow's claim for negligent misrepresentation.

8      Concerning GA Escrow's purported claim for unjust enrichment, California law makes

9  clear that unjust enrichment is not a cause of action; it is a general principle underlying various

10  legal doctrines and remedies, synonymous with restitution.  As to its claim for an accounting,

11  California law makes clear that the right to an accounting is derivative in nature; it must be

12  based on other valid, predicate claims, which do not exist here.  As to both theories, GA Escrow

13  cannot establish that Autonomy had received money to which it is not entitled, since the Losses

14  were conclusively established by operation of contract.

15      This leaves GA Escrow's fraud claim as the sole remaining claim to be addressed.  The

16  Court dismissed GA Escrow's fraud claim with leave to amend, but specifically cautioned GA

17  Escrow that its amendment would need to comply with the heightened pleading requirements of

18  Federal Rule of Civil Procedure 9(b).  The only new allegation GA Escrow has been able to

19  make is that it was "advised" by a former officer of the acquired company that there was no

20  basis for the Losses.  GA Escrow offers nothing about the former officer's identity, what

21  specific statements that person supposedly made to GA Escrow, which elements of the claim

22  were baseless and how they were baseless, or what documents (if any) illustrate GA Escrow's

23  allegation that the claimed Losses were not supported.  The allegation is vague and conclusory,

24  to put it generously; indeed, GA Escrow's entire fraud case hinges on the allegation that an

25  unnamed third party whispered a suggestion of fraud in its ear.  GA Escrow thus ignored this

26  Court's explicit order to allege its amended fraud claim with the heightened particularity

27  required by Rule 9(b).  Respectfully, GA Escrow's pleading should be dismissed.

28

## II.    STATEMENT OF ISSUES TO BE DECIDED

Autonomy respectfully submits the following issues to be decided by the instant motion:

1. Do GA Escrow's conclusory allegations of fraud and negligent misrepresentation satisfy Federal Rule of Civil Procedure 9(b)?

2. Is GA Escrow's claim for negligent misrepresentation barred by the economic loss doctrine?

3. Can GA Escrow's claim for breach of the covenant of good faith and fair dealing survive given that it is duplicative of its breach of contract claim?

4. Is GA Escrow entitled to an accounting if each of its substantive claims is fatally deficient?

5. Do the parties' agreements bar GA Escrow's claim for unjust enrichment?

## III.    FACTUAL OVERVIEW

Assuming, for purposes of this motion, the factual allegations of the First Amended Complaint ("FAC") to be true, and incorporating, where appropriate, facts specifically contained in the exhibits referenced in the FAC (which were not objected to by GA Escrow in the prior round of briefing, and thus previously considered by the Court),[1] Autonomy offers the following factual overview of this matter:

### A.    The Merger Transaction

Zantaz, Inc. ("Zantaz") is a company that provides data archiving software services.[2] On or about July 3, 2007, Autonomy Corporation plc ("Autonomy") – through its wholly owned subsidiary – acquired Zantaz for approximately $400,000,000 in cash, less closing deductions (the "Merger Transaction").[3]  As part of the Merger Transaction, the parties entered into certain agreements, including: (1) the Merger Agreement (dated as of July 3, 2007), and (2)

---

[1]    Those documents were authenticated by and attached as exhibits to the Declaration of Andrew M. Kanter submitted in support of Autonomy's first motion to dismiss in this case (PACER Docket Document # 6).  All exhibits referred to in this motion will refer to the exhibits attached to the Kanter Declaration.

[2]    FAC, ¶ 8.

[3]    FAC, ¶ 9.

the Escrow Agreement (dated as of July 20, 2007).

### 1.    The Merger Agreement

Pursuant to the Merger Agreement, $20,500,000 was withheld from the merger consideration and placed in escrow to indemnify Autonomy in the event that it incurred certain "Losses" identified in the Merger Agreement.[4]  These "Losses" included a diminution in value resulting from: (a) the failure of any representation or warranty or other statement by Zantaz contained in the Merger Agreement; or (b) the breach of any covenant or agreement of Zantaz contained in the Merger Agreement.[5]

Any unclaimed portion of the escrow would be paid to the "Escrow Participants" – namely, GA Escrow, the former shareholders of Zantaz, and the former holders of vested options and warrants in Zantaz.[6]  GA Escrow was appointed to act as the representative, attorney-in-fact, and agent for the Escrow Participants, vested with authority to make decisions and take actions on their behalf.[7]

### 2.    The Escrow Agreement

The Escrow Agreement was signed by three parties:  GA Escrow, Autonomy, and U.S. Bank.  GA Escrow and Autonomy, as noted, were the parties to the Merger Agreement, agreeing to escrow $20,500,000 of the merger consideration for potential indemnification claims.  U.S. Bank agreed to serve as the "Escrow Agent" for those funds – that is, the party responsible for disbursing funds in accordance with the terms of the Escrow Agreement.[8]  U.S. Bank is not a defendant in this lawsuit, nor is it alleged to have done anything improper in disbursing the subject funds to Autonomy.

The Escrow Agreement contains detailed procedures regarding the handling of

---

[4]    FAC, ¶ 10; Ex. A, Merger Agreement ¶ 2.6(c) ("At the Effective Time or as soon as practicable thereafter, Parent shall cause to be delivered to U.S. Bank, as escrow agent (the "Escrow Agent") the following amounts in cash: (i) $20,500,000 (the "Indemnity Escrow Amount")).

[5]    FAC, ¶ 11; Ex. A, Merger Agreement ¶ 8.2(a)(i) & (ii).

[6]    FAC, ¶¶ 2 & 9.

[7]    FAC, ¶ 14.

[8]    FAC, ¶ 15; Ex. A, Merger Agreement, Section 8.3(a); Ex. B, Escrow Agreement, ¶ 1.

indemnity claims.  Specifically, Section 3(b)(ii) provides as follows:

> In accordance with Article VIII of the Merger Agreement, [Autonomy] may deliver to the Escrow Participants' Representative and the Escrow Agent a written request (a "Payment Request") for the payment of a claim (a "Claim") for indemnification for Losses under Article VIII of the Merger Agreement.  Any Payment Request shall be deemed to be duly delivered if given in accordance with Section 11 hereof.  The Payment Request shall set forth the amount requested and, in reasonable detail, the specific basis for the determination of the amount of the Claim and as to why [Autonomy] is entitled to the payment of such amount (to the extent then known by [Autonomy]), provided that the Escrow Agent shall not be required to make any assessment as to whether the foregoing has been satisfied.

Section 3(b)(iii) of the Escrow Agreement gives GA Escrow the right to object to a payment request within 10 business days of receiving a claim from Autonomy:

> [GA Escrow] may deliver to [Autonomy] and the Escrow Agent a written objection to all or any portion of the applicable Payment Request (an "Objection") on or prior to 5:00 P.M., Pacific Time, on the date that is ten (10) Business Days after a Payment Request is duly given in accordance with Section 11 hereof (with respect to a particular Payment Request, the "Objection Period")."

Section 3(b)(v) of the Escrow Agreement provides that if GA Escrow delivered an objection prior to the termination of the Objection Period, U.S. Bank shall not disburse the funds requested unless either: (1) the parties jointly request disbursement; or (2) U.S. Bank receives a final, non-appealable order from a court of competent jurisdiction stating that Autonomy is entitled to disbursement of such funds.

Both the Escrow Agreement and the Merger Agreement, however, contain explicit provisions regarding the consequences of a failure by GA Escrow to object to a claim within the mandatory objection period.  Section 3(b)(iv) of the Escrow Agreement provides that if GA Escrow fails to deliver an objection within the objection period, U.S. Bank shall pay to Autonomy the amount requested.  Section 8.6 of the Merger Agreement provides that:

> [I]f [GA Escrow] does not timely give notice to [Autonomy] and the Escrow Agent in accordance with the terms of the Escrow Agreement that it disputes the claim for indemnity that is subject to the Notice of Claim, the Losses specified in such Notice of Claim will be conclusively deemed Losses subject to indemnification hereunder and the Escrow Agreement.

(emphasis added).  Thus, if GA Escrow failed to object within 10 business days to a payment request, it could not thereafter challenge Autonomy's right to indemnification for the amounts paid pursuant to that payment request, which were "conclusively deemed Losses subject to

indemnification hereunder and the Escrow Agreement."

**B.**      **Autonomy's September 11, 2007 Payment Request**

On September 11, 2007, Autonomy sent to GA Escrow and U.S. Bank a payment request pursuant to Section 3(b)(ii) of the Escrow Agreement (the "Payment Request").[9] Autonomy sent a copy of the Payment Request to GA Escrow's counsel at the prestigious law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP.  The Payment Request provides:

> **Re:  Zantaz, Inc.  Notice of Claim**
>
> Reference is made to (i) the Agreement and Plan of Merger dated as of 3 July 2007 ("Merger Agreement") by and among Autonomy Corporation plc ("Parent"), Antelope Acquisition Corp., Zantaz, Inc. (the "Company") and GA Escrow, LLC, as Escrow Participants' Representative, and (ii) the Escrow Agreement dated as of 20 July 2007 ("Escrow Agreement") by and among Autonomy, the Escrow Participants' Representative and the Escrow Agent. Capitalized terms used herein but not otherwise defined shall have the meanings attributed to such terms in the Merger Agreement and the Escrow Agreement.
>
> This letter shall constitute (i) a Notice of Claim pursuant to Section 8.5 of the Merger Agreement, and (ii) a Payment Request with respect to indemnification for Losses under Article VIII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement.
>
> **Notice of Claim**
>
> Parent Indemnitees have incurred Losses or anticipate that they will incur Losses, for which they are entitled to indemnification pursuant to the Merger Agreement. The amount of such Losses or a reasonable estimate of the foreseeable maximum amount of such Losses is equal to approximately $8,000,000. Such Losses are separate from, and in addition to, the adjustment to the Merger Consideration based upon Closing Working Capital, as provided in the Closing Working Capital Statement delivered to you on this date.
>
> Below is a description of the basis for such Losses:
>
> **1.    Accounts Payable / Liabilities for Fixed Assets**
>
> The Company (i) has material liabilities for fixed assets in the amount of approximately $2,000,000 which were not disclosed to Parent, and (ii) did not properly reflect additional accounts payable in its financial statements in the amount of approximately $2,000,000. The Parent Indemnitees are entitled to indemnification for such amounts pursuant to Section 8.2(a) of the Merger Agreement.

---

[9]      FAC, ¶ 18; Notice Regarding Exhibit C to Declaration of Andrew M. Kanter (Docket Document # 18), Ex. C, Payment Request.

### 2. **Accounts Receivable**

The Company made inadequate provision for uncollectible accounts receivable in an amount equalling [sic] approximately $2,000,000, and the Parent Indemnitees are entitled to indemnification for such amounts pursuant to Section 8.2(a) of the Merger Agreement.

### 3. **Insufficiency of Accruals in Financial Statements**

The Company made inadequate provision for accrued liabilities in its financial statements in an amount equalling [sic] approximately $2,000,000, and the Parent Indemnitees are entitled to indemnification for such amounts pursuant to Section 8.2(a) of the Merger Agreement.

On its face, then, the Payment Request makes clear that: (a) Autonomy was delivering to GA Escrow and its counsel "a Notice of Claim pursuant to Section 8.5 of the Merger Agreement" and "a Payment Request with respect to indemnification for Losses under Article VIII of the Merger Agreement in accordance with Section 3(b) of the Escrow Agreement" (thus leaving no ambiguity as to the nature of the document or the contractual terms with which it complied); and (b) Autonomy was seeking indemnification of $8 million in Losses.

Accordingly, under Sections 3(b)(iii) & (iv) of the Escrow Agreement and Section 8.6 of the Merger Agreement, GA Escrow had 10 days to object to Autonomy's claimed losses before such losses would be "conclusively deemed Losses subject to indemnification [under the Merger Agreement] and the Escrow Agreement."[10]

## C. **GA Escrow's Untimely Objection to the Payment Request**

GA Escrow's objection, if any, to the Payment Request was due within ten business days of September 11, 2007 – that is, by September 25, 2007. GA Escrow asserted no such objection within the required time period. U.S. Bank, in accordance with its duties under the Escrow Agreement, disbursed funds from the escrow account to indemnify Autonomy for the Losses (now conclusively established).

On October 2, 2007, one week after the objection period expired, Thomas J. Murphy, identified as a Managing Director of GA Escrow, forwarded a purported "Notice of Objection" to Autonomy and U.S. Bank.[11] In its Notice of Objection, GA Escrow did not assert that

---

[10]    Ex. A, Merger Agreement, ¶ 8.6.
[11]    Ex. D, Notice of Objection.

1  Autonomy's claimed losses were invalid, nor did it own up to the fact that it had blatantly failed

2  to comply with the timing requirements of the Merger and Escrow Agreements.  Instead, GA

3  resorted to blame-shifting tactics, asserting (incorrectly) that the Payment Request did not

4  comply with Section 3(b) of the Escrow Agreement because it failed to provide "the specific

5  basis for the determination of the amount of the purported claims" (which were "merely

6  asserted as approximations and balance sheet line items") and that Autonomy did not identify

7  which specific warranties and representations were breached by Zantaz.

8        The Notice of Objection is telling for at least two reasons:  First, not one of these

9  purported deficiencies finds any basis whatsoever in any provision of the Merger or Escrow

10  Agreement.  Second, all of these purported deficiencies *appear on the face of the Payment

11  Request itself*, and therefore could and should have been raised by GA Escrow, if at all, within

12  the mandatory 10-day objection period – before such Losses were deemed to be conclusively

13  established, and before such time as U.S. Bank was required, under the mandatory language of

14  the Escrow Agreement, to disburse the subject funds to Autonomy.[12]

15  **D.    GA Escrow Files The Instant Lawsuit**

16        On March 4, 2008, GA Escrow filed the instant case, seeking to do what it failed to do

17  within the Objection Period – object to the Payment Request.  Autonomy moved to dismiss the

18  complaint, arguing that each of GA Escrow's claims was barred by the express terms of the

19  parties' agreement.  On July 8, 2008, the Court granted the motion, ruling at page 6 that

20  "plaintiff's failure to object triggered the contractual provisions that deemed the 'Notice of

21  Claim and Payment Request' conclusively proper and caused U.S. Bank to release the

22  requested funds from escrow.  The express terms of the parties' agreements bar plaintiff's

23  claims as a matter of law."  GA Escrow thereafter filed the FAC on August 1, 2008.

24  **E.    GA Escrow's Disingenuous Attempt to Assert Fraud Claims**

25        GA Escrow's FAC contains very little by way of additional pleading.  For example, at

26  paragraphs 29-33 of the FAC, GA Escrow merely realleges the supposed deficiencies appearing

27

28  [12]      Ex. D, Notice of Objection, p. 2.

on the face of the Payment Request (which were previously considered and rejected by the Court in connection with GA Escrow's failed breach of contract claim) apparently only "[i]n order to preserve its right of appeal."[13]  Accordingly, these allegations will not be addressed here.

GA Escrow adds only one additional factual allegation to the FAC designed to buttress its fraud claims.  In particular, GA Escrow alleges: "After the last day for filing an objection to Autonomy's Notice of Claim, GA Escrow for the first time was advised by a former officer of the Company with knowledge of the Company's finances that there was no basis for the claimed Losses listed in Autonomy's Notice of Claim."[14]  Tellingly, GA Escrow provides no details whatsoever to support this broad and conclusory statement by this purported source.  For example, there is no demonstration of what specific elements of the claimed Losses were baseless or any facts showing how they were baseless – *not even the name of the "former officer" is alleged*.

In addition, the lack of detail regarding the identity of the unnamed source makes it impossible to ascertain whether or not that person would even be in a position to know such facts.  That there are no facts alleged in support of the claim that the Losses were baseless suggests that the unnamed source's statement, if made, was based on conjecture and speculation.  GA Escrow provides no specific allegations as to how it was supposedly "stifled" in its efforts to obtain additional information from the unnamed source.  GA Escrow must know that a fraud claim cannot be based on pure speculation.  Indeed, GA Escrow was warned by this Court that any alleged fraud allegations would need to comply with the heightened pleading requirements of Rule 9(b).  As discussed below, GA Escrow's attempt to base its fraud claims entirely on vague statements by an unnamed source sorely misses the mark.

---

[13]    FAC, ¶ 29.
[14]    FAC, ¶ 20.

1    IV.    **ARGUMENT**

2        A.    **The Allegations of GA Escrow's Claims For Fraudulent and Negligent**

3            **Misrepresentation Fall Far Short of Rule 9(b)**

4        Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

5    constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and

6    other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

7    Allegations of fraud must be "specific enough to give defendants notice of the particular

8    misconduct which is alleged to constitute the fraud charged so that they can defend against the

9    charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d

10   666, 671 (9th Cir. 1993); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

11   2003). It is well established in the Ninth Circuit that both claims for fraud and negligent

12   misrepresentation must meet Rule 9(b)'s particularity requirements. *See Neilson v. Union Bank*

13   *of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003), citing *Glen Holly*

14   *Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999).

15       To satisfy the requirements of Rule 9(b), the complaint must specify such facts as the

16   times, dates, places, nature of the misleading statements, misrepresentations, benefits received

17   and other details of the alleged fraudulent activity. *See Neubronner,* 6 F.3d*.* at 671-72; *Kaplan*

18   *v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). In addition, plaintiffs seeking to satisfy Rule 9(b)

19   must "set forth an explanation as to why the statement or omission complained of was false and

20   misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc),

21   superseded on other grounds. Thus, it is not enough for the plaintiff to set forth neutral facts

22   regarding the time, place and content of misrepresentation. Rather, the plaintiff must "set forth,

23   as part of the circumstances constituting fraud, an explanation as to why the disputed statement

24   was untrue or misleading when made." *Id*. at 1549.

25       1.   *GA Escrow's Reliance On Vague Statements By An Unidentified Source*

26            *Does Not Save Its Fraud Claims.*

27       The allegations of GA Escrow's fraud claims do not satisfy Rule 9(b)'s heightened

28   pleading requirements. GA Escrow failed in its original complaint to meet the pleading

requirements.  In the FAC, GA Escrow attempts to cure this failure by attempting to show the purported falsity of Autonomy's indemnification claims by alleging that it was "advised" by a former Zantaz officer that there was no basis for the Losses.[15]  Yet with these new allegations, amounting to little more than two sentences, the FAC offers nothing about the former officer's identity, what specific statements that person made to GA Escrow, what elements of the claim were baseless, how they were baseless or what documents (if any) illustrate GA Escrow's allegation that the claimed Losses had no basis.  Courts unanimously have held that such allegations are not sufficient to satisfy Rule 9(b).

For example, in *Yourish v. California Amplifier*, 191 F.3d 983, 994 (9th Cir. 1999), the Ninth Circuit affirmed a trial court decision dismissing a complaint because it failed to meet the particularity requirements of Rule 9(b).  In that case, the plaintiffs alleged that the defendants made certain misleading statements about their products and sales figures.  In attempting to state a claim for fraud, the plaintiffs alleged that the defendants knew that the statements were false when made because of the existence of "true facts, which were known only to defendants due to their access to confidential and non-public information."  *Id.* at 994.

In reviewing the District Court's decision dismissing the complaint, the Ninth Circuit considered whether the plaintiffs had properly pleaded the existence of such "non-public information" and concluded that the allegations fell far short of satisfying Rule 9(b):

> Plaintiffs primarily attempt to show the falsity of the various representations by alleging the existence of confidential non-public information that was available to Defendants, but they provide no details about this alleged information to
>
> Defendants, other than the substance of "true facts" revealed by the information. They allege none of the particulars regarding the non-public information, such as: what medium contained the information (e.g., internal reports); when the information was made available to people inside the company … or when [the defendants] were aware of the information.

*Id.*

In rejecting plaintiff's approach, the Ninth Circuit noted that:

---

[15]    FAC, ¶ 37.

> By relying upon the existence of alleged "confidential non-public information," without any other details about the existence of the alleged information, Plaintiffs merely identify certain statements that they claim were misrepresentations, without providing particularized facts about the circumstances constituting the fraud.  If such unsupported general claims were sufficient to satisfy Rule 9(b)'s particularity requirement, plaintiffs could eliminate the falsity requirement entirely because they could merely identify a given statement by the defendant and then simply allege that the substance of the statement was contradicted by contemporaneous information contained in internal reports.  Thus, any statement could be alleged to have been false at the time made.

*Id.* at 994.  Based on the foregoing principles, the Ninth Circuit articulated the requirement that "[w]here one of the circumstances indicating falseness is the alleged existence of contemporaneous information inconsistent with a particular statement that was known only to the defendants, some detail about the alleged information, other than that its substance contradicted the substance of the identified statement, must be provided." *Id.* at 995.[16]

Similarly, allegations of fraud like those at issue in the instant case were found to be insufficient by the District Court in *County of Santa Clara v. Astra U.S., Inc.*, 428 F.Supp.2d 1029 (N.D. Cal. 2006).  In that case, the plaintiff alleged that the defendant submitted false claims for payment for drugs sold as part of a drug program for indigent patients.  In its fraud claim, plaintiff merely alleged that "defendants knowingly submitted false claims for drug payments." *Id.* at 1036.  In rejecting plaintiff's effort to base a fraud claim on such scanty allegations, the court noted that "Plaintiff does not specify the drugs alleged to have been overpriced, the manufacturers who sold the drugs . . .or the prices charged.  Plaintiff should have investigated the matter by, for example, reviewing the drug purchases . . . and alleged those facts in the complaint." *Id.*

GA Escrow's fraud claims are precisely the type of claims rejected by *Yourish* and *Astra U.S.*  Like the plaintiffs in *Yourish,* GA Escrow does nothing more than allege the existence of information that contradicts Autonomy's indemnification claims, but provides no details whatsoever about that information.  Like the plaintiff in *Astra U.S.*, GA Escrow does not

---

[16]    *See also Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003) (allegations of fraudulent drug testing manipulation unsupported by details such as when or who exchanged financial contributions, what diagnostic criteria were not met or how such criteria were not met, and what types of scientific literature defendant allegedly obscured).

provide any details about why the claim was false.  Instead, GA Escrow tries to dress up its conclusory allegations of fraud by attributing them to an unnamed source.  GA Escrow's masquerade is unavailing – conclusory statements do not become any less conclusory simply by placing them in quotation marks.  Rather, regardless of who is making the allegation – GA Escrow or its unidentified source – the bare assertion that the Losses were "baseless" is simply insufficient to satisfy Rule 9(b).

### 2.  *GA Escrow Is Not Entitled To The Relaxed Standards for Rule 9(b) Applicable In Certain Cases.*

Perhaps recognizing that its fraud allegations fail to satisfy Rule 9(b), GA Escrow alleges that Autonomy refused to provide it with additional information regarding its claim after the objection period closed.  In so alleging, GA Escrow appears to be attempting to avail itself of the relaxed pleading standards applicable to a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession.  *See U.S. ex rel Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). [17]   The problem with GA Escrow's approach is that, by its own admission, it learned about the purported fraud from "a former officer of the Company with knowledge of the Company's finances."[18]  Thus, it does not allege (nor can it) that the evidence of fraud is exclusively in Autonomy's possession.

### 3.  *Leave To Amend Should Be Denied.*

GA Escrow was cautioned by this Court that any attempt to amend its fraud claim was required to comply with Rule 9(b).  GA Escrow now has had two opportunities to state its fraud claims, and both times it has failed to satisfy the requirements of Rule 9(b).  There is no reason to believe at this point that GA Escrow has any facts to support claims for fraud or negligent misrepresentation.  *See Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d

---

[17]     This argument is also a red herring because Autonomy had no obligation to provide such information after expiration of the objection period.  Furthermore, although outside the scope of this motion, Autonomy has in fact provided GA Escrow with ample information supporting its indemnification claim, which GA Escrow conveniently fails to mention at any time in any of its pleadings.

[18]     FAC, ¶ 20.

1   305, 327-328 (1968) (where amended complaint is devoid of facts to support conclusions, it is

2   likely that the "failure to make a good pleading probably arises in a lack of facts rather than the

3   fault of the pleader.")  GA Escrow had an opportunity to meet its pleading requirements under

4   Rule 9(b) and failed to do so.

5       **B.    GA Escrow's Claim for Negligent Misrepresentation Is Barred By the**

6              **Economic Loss Rule**

7       Under California law, purely economic losses due to disappointed expectations do not

8   constitute cognizable injury.  *See Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979,

9   988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004).  "Quite simply, the economic loss rule

10  'prevent[s] the law of contract and the law of tort from dissolving one into the other.'"  *Id.*

11      If a plaintiff cannot "demonstrate harm above and beyond a broken contractual

12  promise," the economic loss rule bars the claim.  *Id.*  Thus, the economic loss rule applies

13  where allegations made with regard to the breach of contract claim closely parallel those made

14  with regard to the negligence and negligent misrepresentation claims.  *Lincoln General*

15  *Insurance Company v. Access Claims Adm'rs, Inc.,* 2007 WL 2492436 (E.D. Cal. 2007)

16  (granting motion to dismiss claims for negligence and negligent misrepresentation under

17  California's economic loss rule); *Neu v. Terminix Intern., Inc.,*  2008 WL 962096, * 4-5

18  (N.D.Cal. 2008) (granting motion to dismiss cause of action for negligent training, supervision

19  and retention under California's economic loss rule).  In such cases, "the breach of contract

20  claim subsumes the negligence and negligent misrepresentation claims."  *Lincoln General Ins.*

21  *Co.,* 2007 WL 2492436, * 8.

22      Here, GA Escrow's claim for negligent misrepresentation mirrors its breach of contract

23  claim.  In both claims, GA Escrow alleges that Autonomy submitted claims that had no factual

24  basis, and the claims seek precisely the same damages:  the $8 million dollars it claims was

25  improperly paid to Autonomy.[19]  Thus, the negligent misrepresentation claim is barred by the

26  economic loss rule.

27  ─────────────────

28  [19]     FAC, ¶¶ 43 and 60; 44 and 61.

**C.    GA Escrow's Claim for Breach of the Covenant of Good Faith and Fair Dealing Is Based on The Same Facts As Its Breach of Contract Claim and Thus Fails As A Matter Of Law.**

A "breach of the covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1394 (1990).

In order to state a claim for breach of the covenant, the plaintiff must seek damages or relief *different from* that which is sought in a companion breach of contract claim. *Id.* ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated. Thus, absent those limited cases where a breach of a consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the implied covenant is to obtain a tort recovery."); *Bionghi v. Metropolitan Water District of So. California*, 70 Cal.App.4th 1358, 1370 (1999) (rejecting claim for breach of covenant of good faith and fair dealing where it "relies on the same acts, and seeks the same damages, as its claim for breach of contract.").

Here, GA Escrow's breach of the covenant claim is based on precisely the same acts and seeks the same damages as its breach of contract claim. In particular, GA Escrow alleges that Autonomy breached the covenant by "by falsely putting forth claims for Losses without having any reasonable factual basis to support such Losses."[20] This is indistinguishable from its allegation that Autonomy breached the parties' agreements by seeking payment for Losses for which "there was no basis."[21] Both claims seek exactly the same damages – $8 million.[22] Under the California law, GA Escrow cannot state a claim for breach of the covenant of good

---

[20]    FAC, ¶ 47.
[21]    FAC, ¶ 60.
[22]    FAC, ¶¶ 52 and 61.

1  faith and fair dealing.  *See Careau*, *supra*, 222 Cal.App.3d at 1395.

2        **D.**      <u>GA Escrow's Unjust Enrichment Claim Fails As A Matter Of Law, and It Is</u>

3                    <u>Not Entitled To An Accounting.</u>

4        Recent California decisions make clear there is no cause of action for unjust enrichment.

5  *Jogani v. Superior Court*, -- Cal.Rptr.3d --, 2008 WL 2941864, * 7 (Aug. 1, 2008) ("[U]njust

6  enrichment is not a cause of action.  Rather, it is a general principle underlying various

7  doctrines and remedies, including quasi-contract."); *Melchior v. New Line Productions, Inc*.,

8  106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347, 357 (2003) ("[A]s the trial court observed,

9  there is no cause of action in California for unjust enrichment.  'The phrase 'Unjust

10  Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make

11  restitution under circumstances where it is equitable to do so.'  Unjust enrichment is 'a general

12  principle, underlying various legal doctrines and remedies,' rather than a remedy itself.  It is

13  synonymous with restitution.").

14        GA Escrow's notion of unjust enrichment and its request for an accounting would

15  require it to allege and prove that Autonomy had received money to which it is not entitled.  *See*

16  *Marina Tenants Assn'n v. Deauville Marina Development Co., Ltd.,* 181 Cal.App.3d 122, 134

17  (1986) (unjust enrichment requires that the defendant obtain a benefit which may not justly be

18  retained); *Brea v. McGlashan*, 3 Cal.App.2d 454, 39 P.2d 877 (1934) (cause of action for

19  accounting requires a statement that there is a balance due to the plaintiff).  Section 8.6 of the

20  Merger Agreement precludes any allegation that Autonomy was not entitled to the funds paid

21  pursuant to the Payment Request.

22        Moreover, California law is clear that the "right to an accounting is derivative; it must

23  be based on other claims." *Janis v. Cal. State Lottery Comm'n,* 68 Cal.App.4th 824, 833 (1998);

24  *Astra U.S., supra*, 428 F. Supp.2d at 1037.  Here, there is no predicate to support a request for

25  an accounting, given that the substantive claims are all flawed and subject to dismissal.

26        **E.**      <u>GA Escrow's Breach of Contract Claim Is Barred By the Express Terms of</u>

27                    <u>the Parties' Agreements.</u>

28        GA Escrow states in the FAC that it is restating the allegations in support of its breach

1  of contract claim simply to preserve its rights on appeal.[23]  Indeed, GA Escrow's claim for

2  breach of contract is identical to that asserted in its original complaint.  For the reasons

3  articulated in this Court's order granting Autonomy's motion to dismiss the original complaint,

4  GA Escrow's breach of contract claim must be dismissed.

5  **V.    <u>CONCLUSION</u>**

6      This is GA Escrow's second bite at the apple, and it failed to comply with the Court's

7  admonition to plead additional fraud allegations with the heightened particularity as required by

8  Rule 9(b).  Again, the entire fraud claim hinges on unnamed third party supposedly whispering

9  a suggestion of fraud into GA Escrow's ear.  GA Escrow, however, has alleged no specific facts

10 in support of this conclusion.  If GA Escrow intends to argue that it cannot plead fraud because

11 it was "stifled" from obtaining further information from this unnamed former officer, then GA

12 Escrow has effectively admitted that it is unaware of any specific facts supporting its fraud

13 claim, and its pleading must fail accordingly.  There is no reason to permit GA Escrow to

14 continue to impose upon this Court and Autonomy with such baseless claims.  Autonomy

15 respectfully requests that each of GA Escrow's claims be dismissed without leave to amend.

16

17 Dated: August 15, 2008                    Respectfully submitted,

18                                           DOLL AMIR & ELEY LLP

19

20                                           By   /s/ Gregory L. Doll                    .
                                                  Gregory L. Doll
21                                           Attorneys for Defendant Autonomy Corporation plc

22

23

24

25

26

27

---

28 [23]    FAC, ¶ 29.

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

4

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1888 Century Park East, Suite 1106, Los Angeles, California  90067.

5

6

7

On August 15, 2008, I served the foregoing document(s) described as **DEFENDANT AUTONOMY CORPORATION PLC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** on the parties in this action by serving:

8

                  Arthur J. Shartsis, Esq.
                  Gregg S. Farano, Esq.

9

                  Shartsis Friese LLP
                  One Maritime Plaza, 18th Floor

10

                  San Francisco, CA  94111

11

( )    **By Envelope**:  by placing ( ) the original ( ) a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

12

13

14

15

( )    **By Mail:**  As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

16

17

( )    **By Facsimile Transmission:**  On August 15, 2008, I caused the above-named document to be transmitted by facsimile transmission to the offices of the addressee(s) at the facsimile number(s) so indicated above.  The transmission was reported as complete and without error.

18

19

( )    **By Electronic Mail:**  I scanned and submitted an electronic versions of the document via electronic mail to the attached Service List and confirmed receipt of the e-mail.

20

21

(X)    **By Electronic Filing:** I hereby certify that on August 15, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the aforementioned CM/ECF registrants.

22

      Executed on August 15, 2008 at Los Angeles, California.

23

24

( )    **STATE**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

(X)    **FEDERAL**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

26

27

                        */s/ Susan Reimers*
                        Susan Reimers

28