IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

GA ESCROW, LLC

          Plaintiff,

  v.

AUTONOMY CORPORATION PLC,

          Defendant.
                                        /

No. C 08-01784 SI

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing on June 18, 2010. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES defendant's motion.

**BACKGROUND**

This litigation arises from a contractual dispute between plaintiff GA Escrow, LLC and defendant Autonomy Corporation PLC. In July 2007, defendant entered into agreements to acquire a software company, Zantaz Inc., for approximately $400 million. Kanter Decl. ¶ 2. General Atlantic ("GA") was Zantaz's largest shareholder prior to the acquisition. Lanning Decl. ¶ 2. As a result, plaintiff, a special-purpose entity created by GA in order to serve as a shareholder representative in merger or acquisition transfer, agreed to represent former Zantaz shareholders in connection with the merger in this case. *Id.*

The merger transaction was governed by two agreements: a merger agreement and an escrow agreement. Pursuant to these agreements, $20.5 million was withheld from the acquisition price and placed into an escrow fund (the "Indemnity Escrow Fund") to satisfy potential indemnification claims by defendant for losses arising out of any breach of certain representations, warranties, or covenants in the merger agreement. Merger Agreement, Farano Decl. Ex. 1, at 10, 62. After any such losses were identified and paid to defendant, any unclaimed portion of the Indemnity Escrow Fund was to be paid to plaintiff and Zantaz's former stockholders (collectively "escrow participants"). *Id.* at 10. The parties agreed that if defendant believed a breach had taken place and it was entitled to indemnity, it must send

a Notice of Claim to plaintiff and to U.S. Bank, the appointed escrow agent and manager of the escrow fund. *Id.* at 67. Plaintiff could object to the claim in writing within an "Objection Period" of ten business days. Escrow Agreement, Doll. Decl. Ex. 64, at 3. If U.S. Bank received an objection within the Objection Period, it was required to hold the disputed portion of the indemnity funds pending resolution of the dispute; if, however, the objection period passed without any objection, U.S. Bank was required to immediately disburse the requested amount to defendant. *Id.* at 3-4.

On September 11, 2007, defendant sent plaintiff and U.S. Bank a "Notice of Claim and Payment Request" for approximately $8 million in losses based on claimed misstatements in Zantaz's financial statements. Kanter Decl. ¶ 3; *see also* Sept. 11, 2007 Letter, Farano Decl. Ex. 3. Defendant stated in the letter that Zantaz (1) "has material liabilities for fixed assets in the amount of approximately $2,000,000 which were not disclosed to [defendant]"; (2) "did not properly reflect additional accounts payable in its financial statements in the amount of approximately $2,000,000"; (3) "made inadequate provision for uncollectible accounts receivable in an amount equaling approximately $2,000,000"; and (4) "made inadequate provision for accrued liabilities in its financial statements in an amount equaling approximately $2,000,000." Sept. 11, 2007 Letter at 2.

Plaintiff did not respond to the Notice by the close of the Objection Period on September 25, 2007. According to plaintiff's representative, Christopher Lanning,[1] he did not object to the Notice because he "relied on [defendant's] representation that it was making claims for known and substantiated breaches of representations and warranties." Lanning Decl. ¶ 6.[2] U.S. Bank released the requested funds to defendant. Thereafter, Mr. Lanning participated in a conference call with plaintiff's outside counsel and with Steve Klei, the former CFO of Zantaz. According to Mr. Lanning, "During that conference call, Mr. Klei for the first time indicated to me that the indemnification claims identified in the Notice did not make sense to him. He told me that he did not believe they were accurate, but he wanted to see additional information supporting the alleged claims before reaching a final decision."

---

[1] Mr. Lanning is also GA's Managing Director and General Counsel. Lanning Decl. ¶ 1. According to Mr. Lanning, he was not involved in negotiating and drafting the merger and escrow agreements, which were handled by outside counsel. *Id.* ¶ 3.

[2] Defendant's objection to this statement is overruled.

2

*Id.* ¶ 10. Thereafter, on October 2, 2007, plaintiff wrote to defendant, seeking further detail regarding the basis for the claims. *Id.* ¶ 11. When the parties were unable to resolve their dispute, plaintiff instituted this action. The claims stated in the operative version of the complaint allege fraudulent misrepresentation, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. Plaintiff also seeks an accounting of defendant's exact losses in order to obtain a proper disbursement of funds.

Now before the Court is defendant's motion for summary judgment.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

3

genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I.  Fraudulent and Negligent Misrepresentation

Plaintiff's first two causes of action allege that defendant's September 11, 2007 Notice of Claim contained fraudulent and negligent misrepresentations as to the basis for the indemnity claims. FAC ¶¶ 36, 42. Defendant moves for summary judgment on these causes of action on two grounds: (1) that plaintiff cannot prove the element of justifiable reliance on defendant's representations; and (2) that the claims are barred by California's litigation privilege. The Court will address each argument in turn.

#### A.  Actual and Justifiable Reliance

Defendant contends that it is entitled to summary judgment on plaintiff's misrepresentation claims because plaintiff cannot prove that it actually and justifiably relied on any false representations by defendant. *See Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal. Rptr. 2d 650, 655 (Cal. Ct. App. 1996) (justifiable reliance an element of fraudulent misrepresentation claim); *Charnay v. Cobert*, 51 Cal. Rptr. 3d 471, 482 (Cal. Ct. App. 2006) (same for negligent misrepresentation). Defendant assumes for these purposes that there are material disputes of fact with respect to the remaining elements of both the fraudulent and negligent misrepresentation claims.[3]

The Court finds that disputed issues of fact preclude summary judgment on the issue of whether plaintiff actually and justifiably relied on the alleged misrepresentations. First, with respect to actual reliance, defendant states that plaintiff can only show such reliance by demonstrating: "(a) it believed in the truth of the fact asserted in the Notice of Claim such that it did not question its validity, and (b) because of its belief, decided not to timely object." Mot. for SJ at 16. Plaintiff has met its burden of

---

[3] Defense counsel emphasized at oral argument that by choosing to move for summary judgment solely on the element of reliance, defendant is not conceding the remaining elements of plaintiff's fraud claim, including the existence of any false representation. In denying summary judgment due to disputed issues of fact with respect to the issue of reliance, the Court does not hold that plaintiff has the better theory or that plaintiff's reliance on the alleged misrepresentation was in fact reasonable. The Court denies summary judgment on the sole ground that the issue of the reasonableness of plaintiff's actions is better determined by a jury.

4

putting forth evidence sufficient to defeat summary judgment. Mr. Lanning has specifically averred that "[h]ad [he] known that the claims were not in any way based in fact[,] [he] would not have relied on the Notice and these representations and would have objected to the claims immediately." Lanning Decl. ¶ 6. The fact that Mr. Lanning testified at his deposition that he later sought to "verify" the specific claims in the Notice of Claim, *see* Lanning Depo., Doll Decl. Ex. D, at 53:5-54:10, does not, as defendant claims, "completely negate any notion" of actual reliance with respect to plaintiff's decision not to object within the Objection Period.

Under California law, the key question in assessing the issue of justifiable reliance is "whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." *Gray v. Don Miller & Assocs., Inc.*, 674 P.2d 253, 255 (Cal. 1984). Plaintiff has persuasively argued, both in its papers and at oral argument, that its knowledge and experience have led it to believe that representations made by a large, publicly-traded company working with a reputable and prominent law firm will generally be truthful and have an adequate factual basis. Lanning Decl. ¶ 5; Lanning Depo. at 26:4-6 ("When I receive a letter from a public company signed by a senior officer, I assume that it has some basis in fact."). Plaintiff states that although it was willing to bear the risk that there were "line-item" errors in defendant's claim and/or small discrepancies in the amount of the claim, the parties' relationship was premised on plaintiff's reasonable and justifiable assumption that defendant would not submit a claim that was wholly untruthful. The Court finds that, in view of plaintiff's submissions, it would be inappropriate to hold as a matter of law that plaintiff's reliance on the allegedly false representations was not justified.

### B. Litigation Privilege

Defendant also contends that plaintiff's misrepresentation claims are barred by California's litigation privilege. The litigation privilege, codified at California Civil Code § 47, "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Jacob B. v. County of Shasta*, 154 P.3d 1003, 1007 (Cal. 2007) (citation omitted). The privilege bars all tort causes of action other than malicious prosecution and applies to any

communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 786 P.2d 365, 368-69 (Cal. 1990).

Defendant argues that plaintiff's claims of misrepresentation are barred by the litigation privilege because the Notice of Claim essentially amounted to a protected pre-litigation "demand letter." Defendant is correct that, in general, the privilege extends to any pre-litigation communications that have "some relation" to the action, including demand letters. *Rubin v. Green*, 847 P.2d 1044, 1047 (Cal. 1993); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1069 (N.D. Cal. 2005) (applying California law). The Court disagrees with defendant, however, that the Notice of Claim sent by defendant is entitled to protection.

The California Court of Appeal has held that the litigation privilege "cannot logically be extended to communications made *prior* to or *in anticipation* of litigation until the prospect of litigation has gone from being a mere possibility to becoming a contemplated *reality*." *Edwards v. Cent. Real Estate Corp.*, 61 Cal. Rptr. 2d 518, 530 (Cal. Ct. App. 1997) (original emphasis). Additionally, "it is not the mere *threat* of litigation that brings the privilege into play, but rather the actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute." *Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 818-19 (Cal. Ct. App. 1999) (original emphasis).

Here, the Court cannot conclude as a matter of law that the Notice of Claim was sent in good faith contemplation of actual, "imminent" litigation concerning the scope or amount of the indemnification claims. Rather, if plaintiff's theory is ultimately proved correct, the letter was sent precisely for the opposite purpose: in order to head off litigation. The letter cannot be protected under such circumstances. *See id.* at 820 (privilege does not apply where communication was sent in order to "*avoid* litigation") (original emphasis); *Edwards*, 61 Cal. Rptr. 2d at 529 (privilege should not be applied so as to "effectively permit a person or corporation to lie or make fraudulent miscommunications any time a claim is made, on the theory that the claim might ripen into an actual lawsuit").

Additionally, even leaving aside plaintiff's allegations of overarching fraud, the letter was not, as defendant claims, an unequivocal trigger of a process leading to litigation. Rather, the letter was

simply an exercise of defendant's contractual right to claim against the Indemnity Escrow Fund. Pursuant to the provisions of the parties' contract, it was not defendant's indemnity claim, but rather plaintiff's objection to that claim, which set the parties off on the road to litigation. *See* Escrow Agreement at 3. The Court must therefore conclude that defendant is not entitled to assert the litigation privilege in connection with the Notice of Claim.

Defendant's motion for summary judgment on plaintiff's misrepresentation claims is DENIED.

## II. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's Third Cause of Action alleges a breach of the covenant of good faith and fair dealing. California law implies a covenant of good faith and fair dealing in every contract. *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 639 (Cal. 1995). "The implied covenant imposes certain obligations on contracting parties as a matter of law – specifically, that they will discharge their contractual obligations fairly and in good faith." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir.1989) (applying California law). A key purpose of the covenant is "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement." *Guz v. Bechtel Nat'l, Inc.,* 8 P.3d 1089, 1110 (Cal. 2000).

Plaintiff claims that defendant breached the implied covenant and interfered with performance of the contract by "knowingly and falsely putting forth claims for Losses without having any reasonable basis to support such Losses." FAC ¶ 47. In moving for summary judgment on this claim, defendant points out that the contract required plaintiff to object to any Notice of Claim within the ten-day contractual period, or risk having the factual basis for the claimed losses deemed conclusively established. *See* Merger Agreement at 67 (stating that if plaintiff "does not give timely notice to [defendant] and [U.S. Bank] in accordance with the terms of the Escrow Agreement that it disputes the claim for indemnity that is subject to the Notice of Claim, the Losses specified in such Notice of Claim will be conclusively deemed Losses subject to indemnification"). Defendant asserts that plaintiff cannot use the implied covenant to circumvent this express contractual term. Defendant further argues that plaintiff cannot show that it was deprived of any contractual benefit as a result of defendant's actions.

The Court agrees with defendant that the benefit for which plaintiff bargained under the contract

7

was the right to object to an indemnification claim within the contractual Objection Period. The Court does not agree, however, that it is true as a matter of law that defendant's actions did not interfere with plaintiff's right to receive this benefit. In the Court's view, a misrepresentation going to the existence of any factual basis for an indemnity claim is a key example of an action which "unfairly frustrates" the opposing party's ability to enjoy the benefits of the agreement. *Guz,* 8 P.3d at 1110. Plaintiff has presented evidence that the very nature of the parties' relationship contemplated that defendant would not submit baseless claims. Lanning Decl. ¶¶ 5-6. In light of this expectation, defendant's obligation to discharge its end of the relationship fairly and in good faith necessarily included a duty not to engage in misrepresentation. Defendant has conceded in connection with plaintiff's First and Second Causes of Action that there are material disputes of fact regarding whether it made a false representation.

Defendant's motion for summary judgment on the good faith and fair dealing claim is DENIED.

### III. Accounting

Plaintiff's Fifth Cause of Action, which seeks an accounting of any actual losses in connection with defendant's indemnification claim, is dependent on the viability of its other claims. *See Janis v. Cal. State Lottery Comm'n*, 80 Cal. Rptr. 2d 549, 554-55 (Cal. Ct. App. 1998) ("A right to an accounting is derivative; it must be based on other claims. Here, because all of [plaintiff's] other claims fail, so too does the one for an accounting."). Defendant does not independently challenge the accounting claim, but simply argues that it must fail because the other claims fail. Having concluded that defendant is not entitled to summary judgment on plaintiff's misrepresentation and good faith and fair dealing claims, the Court also DENIES defendant's motion for summary judgment as to the claim for an accounting.

### CONCLUSION

For the foregoing reasons, and for good cause shown, defendant's motion for summary judgment is DENIED. (Docket No. 87).

**IT IS SO ORDERED.**

Dated: July 8, 2010

SUSAN ILLSTON
United States District Judge

8